Timebase Pty Ltd v. Thomson Corporation, The

Doc. 16 Att. 3

# Exhibit 4

Dockets.Justia.com

LEXSEE 2003 US DIST LEXIS 1824



Positive
As of: May 07, 2008

**PRAGMATIC C SOFTWARE CORP., a Minnesota corporation, Plaintiff, v. ANTRIM DESIGN SYSTEMS, INC., a California corporation, Defendant.**

**Civil No. 02-2595 (JRT/FLN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

*2003 U.S. Dist. LEXIS 1824*

**January 28, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to stay, dismiss, or transfer DENIED; Temporary Restraining Order dated December 19, 2002 DISSOLVED; Plaintiff's motion for a preliminary injunction GRANTED.

**COUNSEL:** Donald W. Niles and Casey A. Kniser, PATTERSON, THUENTE, SKAAR & CHRISTENSEN, P.A., Minneapolis, MN, for plaintiff.

Edward W. Smithers, SMITHERS LAW FIRM, San Jose, CA, and Michael D. O'Neill, O'NEILL GRILLS & O'NEILL, St. Paul, MN, for defendant.

**JUDGES:** JOHN R. TUNHEIM, United States District Judge.

**OPINION BY:** JOHN R. TUNHEIM

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pragmatic C Software Corporation ("Pragmatic C") filed this copyright infringement and breach of contract claim, [1] alleging that defendant Antrim Design Systems, Inc.'s ("Antrim") continued use of plaintiff's software after plaintiff terminated the parties' license agreement amounts to a copyright infringement.

Plaintiff also alleges that defendant owes significant amounts in past-due royalties. Defendant counters that plaintiff's purported termination of the license was ineffective, and that therefore defendant is entitled to continue using the software. Both parties have motions pending before this court. Defendant has moved to dismiss [*2] or stay in favor of a pending California state court action that defendant argues involves substantially the same parties and issues. [2] In the alternative, defendant moves to transfer pursuant to *28 U.S.C. § 1404(a)*. Plaintiff has moved for a preliminary injunction. For the reasons discussed below, the Court denies defendant's motion to dismiss, stay or transfer, and grants plaintiff's motion for injunctive relief.

1 Plaintiff also asserts a count of deceptive trade practices, under *Minn. Stat. § 325D.44*.
2 Antrim filed suit in the Superior Court of the State of California in the County of Santa Cruz. The case is styled, *Antrim Design Systems, Inc. v. Pragmatic C Software Corp.*, Case No. CV 143575.

**BACKGROUND**

Plaintiff is a Minnesota company [3] that designs Verilog logic verification software, called Cver, which is used to design integrated circuits. In 1998, plaintiff licensed its software to defendant, a California corporation. The licensing agreement allowed defendant

2003 U.S. Dist. LEXIS 1824, *3

[*3] to sublicense plaintiff's software to end-users, and then pay plaintiff royalties based on those sublicenses. According to the licensing agreement, defendant had a "worldwide, non-exclusive, and non-transferable license." The licensing agreement also provided that plaintiff was to provide certain technical improvements and support for defendant.

> 3     Pragmatic C was initially a California corporation. In 2001, Pragmatic C moved its operations to Minnesota and incorporated here. The California corporation disappeared by merger effective January 1, 2002.

Plaintiff alleges that cash-flow problems caused defendant to default on several scheduled payments. Although the parties attempted to negotiate a solution, plaintiff notified defendant that it was terminating the license effective April 23, 2002. Defendant counters that the purported license termination was ineffective because plaintiff lost the right to terminate the license when plaintiff failed to provide adequate technical support and improvements. Defendant [*4] claims that the failure to provide technical support allows it to continue using the software, and excuses any obligation to pay royalties to plaintiff.

On May 22, 2002, defendant filed the action in Santa Cruz County Superior Court ("state court") requesting a declaratory judgment and alleging breach of contract, and breach of the implied covenant of good faith and fair dealing. On June 19, 2002, Pragmatic C, as the state court defendant, removed the case to federal court based on diversity jurisdiction. Pragmatic C then counterclaimed in federal court in California, and asserted the copyright infringement claim. However, because Pragmatic C was a California corporation when Antrim instituted the state lawsuit, there was no diversity of citizenship, and the case was remanded to state court on September 17, 2002. The parties agree that the state court does not have jurisdiction over the copyright claim. Plaintiff filed this action on July 31, 2002, about six weeks after Antrim filed the California case. On December 13, 2002 plaintiff moved for a temporary restraining order. The Court discussed the motion with the parties in a telephone conference on December 18, 2002, and the Court [*5] granted a temporary restraining order on December 19, 2002.

**ANALYSIS**

**I. Motion to Dismiss, Stay, or Transfer**

Defendant argues, that because the parties are litigating this dispute in a prior pending lawsuit, the Court should dismiss or stay this action pursuant to the first-filed rule, so that the California state court may adjudicate the breach of contract claim that is the basis for the copyright infringement claim. Defendant admits that the state court does not have jurisdiction to decide the copyright claim, but argues that the issues in the state court breach of contract action will moot plaintiff's copyright claim. Alternatively, defendant moves to transfer.

Plaintiff counters that it has a right to a federal forum for its copyright claim. Plaintiff argues that the first-filed cases are not controlling here, and that *Colorado River* abstention is the relevant inquiry. *See  Colorado River Water Conservation District v. United States, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)* (describing the doctrine that has come to be known as "*Colorado River* abstention"). Finally, plaintiff argues that transferring the case to California merely shifts the burden to plaintiff.

[*6] **A. "First to file" cases**

The well-established first-filed rule "gives priority, for purposes of choosing among possible venues when **parallel** litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993)* (citations omitted) (emphasis added); *Med-Tec Iowa, Inc. v. Nomos Corp., 76 F. Supp. 2d 962, 967 (N.D. Iowa 1999)*. The rule is intended to conserve judicial resources and avoid conflicting rulings, and is intended to "be applied in a manner best serving the interests of justice." *Id.* Although the first-to-file rule is a "relatively firm rule" it "yields to the interests of justice." *See  Terra Int'l Inc. v. Mississippi Chem. Corp., 922 F. Supp. 1334, 1348 (N.D. Iowa 1996)* (citing *Northwest Airlines, 989 F.2d at 1005*); *see also Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Retirement Sys., 57 F.3d 638, 641 (8th Cir. 1995)* (citing exceptions to the rule).

**1. Parallel litigation**

A prerequisite to application of the first-filed rule [*7] is that the litigation be "parallel." *See  Central States Indus. Supply, Inc. v. McCullough, 218 F. Supp. 2d*

*1073, 1091-92* (N.D. Iowa) (citing *Keymer v. Management Recruiters Int'l, Inc., 169 F.3d. 501, 503 n.2 (8th Cir. 1999))*. There is little guidance in the Eighth Circuit as to what constitutes "parallel" litigation. *See Kingland Sys. Corp. v. Colonial Direct Fin. Group, Inc., 188 F. Supp. 2d 1102, 1111-12 (N.D. Iowa 2002)* (recognizing lack of guidance for "parallel" in the context of *Colorado River* abstention). In addition, most district court cases in this circuit discussing "parallel" do so in terms of *Colorado River* abstention. Such analysis is nonetheless useful to the Court's determination in this case as is an examination of established law in other circuits. *See Weitz Co. v. Travelers Cas. & Sur. Co. of America, 2002 U.S. Dist. LEXIS 20350, 2002 WL 31371969* at *4-5 (S.D. Iowa October 18, 2002).

"In defining parallel litigation within the context of the first-filed rule, courts have held that a district court has the power to enjoin proceedings involving the same parties and the same issues brought in another forum." *Terra Int'l Inc. v. Mississippi Chem. Corp., 896 F. Supp. 1468, 1476 (N.D. Iowa 1995)* [*8] (citation omitted); *see also Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988)* ("A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum."). Although the two cases technically involve different parties, the California action involves Pragmatic C, a California corporation, while this action involves Pragmatic C, a Minnesota corporation, substantial similarity of parties can satisfy the "same party" requirement. *See Marshak v. Reed, 2000 U.S. Dist. LEXIS 19577*, No. 96 CV 2292, 2000 WL 33152076, at *3 (E.D. N.Y. 2000) (invoking the first-to-file rule when the second action involved additional parties since "parties whose interests are clearly aligned may be treated as if they were the same parties").

However, it cannot be said that the two actions involve the same issues. The state court action does not involve, in fact, cannot involve, the copyright claim. While a determination that proceedings are "parallel" does not require a "precise identity of issues," *Horn & Hardart Co. v. Burger King Corp., 476 F. Supp. 1058, 1059 (S.D.N.Y. 1979)*, where, as here, [*9] "the state court could not afford some of the relief available in the federal forum," the proceedings cannot be considered parallel. *Baskin v. Bath Township Bd. of Zoning Appeals, 15 F.3d 569, 569 (6th Cir. 1994)* (discussing *Colorado River* abstention). Although the Court is aware that some

duplication of judicial proceedings is possible, there can be no duplication on the copyright claim, since federal courts have exclusive jurisdiction over federal copyright disputes. *See 17 U.S.C. § 501; see also Weitz Co., 2002 U.S. Dist. LEXIS 20350, 2002 WL 31371969* at *5 (determination of "parallel" should "focus . . . on whether there is a danger of inconsistent results and a duplication of judicial proceedings.").

## 2. Parallel litigation in state and federal court

There is contrary authority among district courts in the Eighth Circuit as to whether the first-to-file rule applies when the parallel actions are in federal and state court, as opposed to two federal court actions. *Compare Commercial Union Ins. Co. v. Torbaty, 955 F. Supp. 1162, 1163 n.1 (E.D. Mo. 1997)* (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982)* [*10] ("Typically, the first-filed rule is applied when an action is filed in two federal courts. However, the rule is applied with equal force when an action is filed in federal court and state court."), *with Wells' Dairy, Inc. v. Estate of J.P. Richardson, Jr., 89 F. Supp. 2d 1042, 1058-58 (N.D. Iowa 2000)* (construing the phrase "separate courts" as meaning only federal courts of concurrent jurisdiction and declining to apply the rule where one suit was a federal declaratory judgment action and the other a state court action). *See also, Haydu, 675 F.2d at 1174* (applying rule to concurrent state and federal cases); *O'Hara Int'l Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972)* (applying rule to concurrent federal cases, but not explicitly addressing the issue); *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3rd Cir. 1941)* (same).

A recent "examination of legal precedent among the federal courts reveals overwhelming support for the application of the first-filed rule to concurrent actions only as between federal courts." *Central States Indus. Supply, 218 F. Supp. 2d at 1087* (collecting cases). The [*11] majority view has much to commend it. The alternate view would allow federal courts to bypass the more stringent *Colorado River* abstention, and it therefore does not adequately recognize federal courts' "virtually unflagging" obligation to exercise their jurisdiction. *See Central States Indus. Supply, 218 F. Supp. 2d at 1084* (explaining the difference in general approach between state-federal concurrent jurisdiction "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them")

2003 U.S. Dist. LEXIS 1824, *11

(citations omitted); *United States Fidelity and Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobras, 2000 U.S. Dist. LEXIS 452, 2000 WL 48830, *2 (S.D.N.Y. Jan. 21, 2000)* (the first-filed rule is a rule of deference between federal courts, whereas whether a federal court should defer to a concurrent action pending in state court raises an issue of abstention). When the concurrent actions involve a state court and federal court, the better view is that district courts should apply the *Colorado River* abstention doctrine.

The Court therefore finds dismissal under the first-to-file cases inappropriate. As noted, the Court questions the application of [*12] the rule where the concurrent litigation is in state, as opposed to federal court. However, even assuming the first-filed rule is applicable in state-federal concurrent litigation, the matter before this Court is not parallel to that in the state court because the copyright claim cannot be resolved by the California state court. Because a prerequisite to application of the first-filed rule is not met, the Court will not dismiss or stay on the basis of the first-filed rule.

### B. Abstention

When the concurrent litigation is in state court, the more appropriate inquiry is whether the federal case should be dismissed or stayed pursuant to *Colorado River* abstention. *See Colorado River Water Conservation District v. United States, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). Colorado River* abstention recognizes that a federal court has the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. *See Colorado River, 424 U.S. at 800; Beavers v. Arkansas State Bd. of Dental Exam'rs, 151 F.3d 838, 840 (8th Cir. 1998).* The policies of wise judicial administration underlie the doctrine [*13] and include consideration of judicial resources and comprehensive disposition of litigation. *Federated Rural Elec. Corp. v. Arkansas Elec. Coops., Inc., 48 F.3d 294, 297-98 (8th Cir. 1995).* When considering a motion to abstain, the Court is mindful of its "virtually unflagging obligation" to exercise its jurisdiction. *Beavers, 151 F.3d at 840* (internal citations omitted). The Court is also aware that "'the potential for conflict' between a federal action and a parallel state action, standing alone, does not 'justify staying of the exercise of federal jurisdiction.'" *Central States Indus. Supply, 218 F. Supp. 2d at 1084* (quoting *Federated Rural Elec. Corp., 48 F.3d at 297*). Indeed, this Court

"may abstain in order to conserve federal judicial resources only in **exceptional** circumstances." *Id.* (emphasis added).

A prerequisite for *Colorado River* abstention is that the litigation in the state court be parallel to that in the federal court. *In re Burns & Wilcox, Ltd., 54 F.3d 475, 477 (8th Cir. 1995).* As discussed, because the copyright claim is not before the state court, the litigation here [*14] cannot be considered parallel.

Even if the litigation were parallel, the *Colorado River* factors are not met here. The factors include: (1) whether either action involves *in rem* jurisdiction; (2) whether the federal forum is convenient; (3) whether piecemeal litigation can be avoided; (4) whether the state or federal court first obtained jurisdiction; (5) whether the claims are governed by state or federal law; and (6) whether the state forum will adequately protect the parties' rights. *Colorado River, 424 U.S. at 818* (factors one through four); *Moses H. Cone Mem. Hosp. v. Mercury Constr., 460 U.S. 1, 13-26, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)* (adding factors five and six).

The Court has considered each factor, and finds that factors three and six mandate this Court's retention of this case. Piecemeal litigation cannot be avoided by abstention, because, assuming defendant is not totally successful on its breach of contract claim, the state court will be unable to resolve the copyright issue. The state court's lack of jurisdiction over plaintiff's copyright claims also prevents the state forum from adequately protecting plaintiff's rights. *See Richard Feiner & Co., Inc. v. Polygram Corp., 610 F. Supp. 250 (S.D.N.Y. 1985)* [*15] (in copyright infringement case, holding that it would be "serious abuse of discretion" to abstain in favor of state court that did not have jurisdiction over the copyright claim); *see also Life-Link Int'l v. Lalla, 902 F.2d 1493 (10th Cir. 1990)* (reversing district court's decision to abstain and holding that plaintiff's assertion of the same claims as counterclaims in the state court action did not waive the right to commence a federal court action for, *inter alia*, trademark infringement).

### C. Transfer

Defendant alternatively moves for a transfer pursuant to *28 U.S.C. § 1404(a).* [4] To prevail on a *§ 1404(a)* motion, defendant must overcome the strong judicial preference for permitting a plaintiff to choose its forum. *See Hoppe v. G.D. Searle & Co., 683 F. Supp. 1271,*

*1276 (D. Minn. 1988).* A motion to transfer should be granted only where the defendant makes a clear showing that the action should be transferred, and it must be denied if the effect of a transfer would merely be to shift the inconvenience from one party to the other. *See Norval Indus., Inc. v. Superior Cos., 515 F. Supp. 895, 899 (D. Minn. 1981)*; [*16] *Prestige Hospitality Group, Inc. v. Flagship Services Corp., 2001 U.S. Dist. LEXIS 23719, 2001 WL 228418 at *6 (D. Minn. Feb. 27, 2001).*

> 4   The provision reads, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Transfer analysis requires that the Court weigh a number of factors, including the convenience of the parties and witnesses, and the interests of justice. The Court has considered the relevant factors, and finds transfer inappropriate here. Although defendant points out that more potential witnesses reside in California, defendant specifically identifies by affidavit fewer than ten witnesses who will be called to testify at trial, six of whom are, or were, employees of defendant. Additionally, the sheer number of witnesses is not necessarily dispositive. *See In re Warwick, 70 F.3d 736, 741 (2nd Cir. 1995).* Instead, the Court's analysis should focus on "whether [*17] the forum . . . is so inconvenient as to inhibit the access of one party or the other to necessary witnesses." *Terra Int'l, 922 F. Supp. at 1360.* Defendant has offered no evidence that the nonparty witnesses are unwilling or unable to testify in Minnesota. Although defendant expressed a desire to avoid offering videotaped testimony, no argument was made that such testimony would be inadequate or unavailable. There is no evidence before the Court that the nonparty witnesses would be beyond the reach of discovery.

Turning to the convenience of the parties, the Court finds that a transfer would merely shift the inconvenience from defendant to plaintiff. Plaintiff has chosen his home forum to litigate his claim. *See Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 927 (W.D. Mo. 1985)* (holding that plaintiff's choice of forum is entitled to great weight, especially where the plaintiff is a resident of the judicial district in which the suit is brought). Defendant has conducted business in Minnesota in the past; the Court notes that, at least until recently, defendant maintained a "showroom" or office in Minnesota. [5] In addition,

defendant also sent royalty [*18] payments to plaintiff at plaintiff's Minnesota address. Although it would be more convenient to defendants to litigate in their home forum, it is not appropriate for the Court to merely shift the inconvenience of litigating away from home from one party to the other.

> 5   This showroom has apparently been closed.

Finally, the Court considers the "interests of justice." Evaluation of this factor encompasses considerations of judicial economy and conflict of law issues. *Graff v. Qwest Communications Corp., 33 F. Supp. 2d 1117, 1120-23 (D. Minn. 1999); Ahlstrom v. Clarent Corp., 2002 U.S. Dist. LEXIS 25394, 2002 WL 31856386 at *4 (D. Minn. Dec. 19, 2002).* The Court finds that judicial economy is best served by its retention of the lawsuit. This Court is already familiar with the somewhat complex factual history between the parties, and has begun to sort through the copyright and breach of contract claims. Transfer to another court would entail a duplication of those efforts. The Court is especially mindful that [*19] plaintiff's request for injunctive relief is time-sensitive, and transfer would bring about a delay that could result in prejudice and potential irreparable harm to plaintiff. Finally, the Court notes that California law controls the breach of contract claim. Although that is a factor weighing in favor of transfer, it is not enough to justify a transfer, especially where the moving party has made no showing that the law is novel or complex. *See Technical Concepts v. Zurn Industries, 2002 U.S. Dist. LEXIS 21020, 2002 WL 31433408, at *6 (N.D. Ill. 2002)* (holding that "where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts").

The Court has weighed the relevant factors and finds that defendant has not made the requisite "clear showing" that a transfer is warranted. Defendant's motion to stay, dismiss, or transfer is therefore denied.

## II. Preliminary Injunction

### A. Background

Plaintiff requests injunctive relief to prevent defendant from transferring, delivering, or otherwise conveying its Cver software to Cadence Design. [6] Cadence and plaintiff are competitors, and defendant recently sold its assets to Cadence. [*20] Plaintiff expresses concern that Cadence has access to its Cver

software--via defendant's network, and via back-up tapes and hard copies of the software that were transferred to Cadence in the asset sale. Plaintiff fears Cadence has the opportunity to reverse engineer that software, which will result in diminished value of the intellectual property. Although plaintiff's moving papers focus on the Cadence issue, plaintiff's request for injunctive relief is much broader. Plaintiff requests that defendant be enjoined from using plaintiff's Cver software in any way, and that defendant be enjoined from licensing or distributing the software.

> 6 Cadence describes itself as "the world's largest supplier of electronic design technologies, methodology services, and design services." *See* <http://www.cadence.com>.

Defendant claims that Cadence does not have access to the disputed software. As support for this assertion, defendant claims that the "computer permissions" have been turned off, that this was done before the asset sale to Cadence, and that therefore, plaintiff's software was not transferred [*21] to Cadence. Plaintiff argues that merely turning off the "computer permissions" does not suffice to show that Antrim has not turned over the software, or that Cadence does not have access to the software. Although the Court cannot resolve this technical question on the limited evidence before it, defendant's submissions to the Court have not convinced the Court that defendant has eliminated all possible access to Cadence.

## B. Preliminary Injunction Standard

A preliminary injunction may be granted only if the moving party can demonstrate: (1) likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)*. The plaintiff bears the burden on all four factors. *Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)*. "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986)*. [*22] Although no single factor is determinative, the likelihood of success on the merits often predominates in a copyright infringement case, and where the movant establishes that likelihood, irreparable harm is presumed.

*Taylor Corp. v. Four Seasons Greetings LLC, 171 F. Supp. 2d 970, 972 (D. Minn. 2001)* (citing *West Pub. Co., 799 F.2d at 1222*).

### 1. Likelihood of success on the merits

To prevail on a copyright infringement claim, a plaintiff must prove ownership of a valid copyright, and copying of its copyrighted work by defendant. *Taylor, 171 F. Supp. 2d at 972* (citing *Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992)*). In this case, however, there is no dispute that plaintiff owns the copyrights. The dispute here centers on the licensing agreement, and whether plaintiff's alleged breach of that agreement enabled defendant to continue to license the software while at the same time not paying royalties. Plaintiff must demonstrate that it is likely to prevail on the underlying contract claim in order to show likelihood of success on the merits. Defendant concedes that if its continued use [*23] of the Cver software was unauthorized, that use amounts to an infringement.

Defendant argues that plaintiff's failure to provide technical support for the software amounts to a breach of contract that allows defendant to affirm the contract and sue for damages. Neither the case law nor the licensing agreement support defendant's argument. Defendant may not affirm the contract while at the same time fail to continue to perform its part of the contract. *See S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3rd Cir. 1992)* (a party to a contract who feels the other party has breached may either stop performance and assume the contract is avoided, or continue its performance and sue for damages; non-breaching party may not stop performance and continue to take advantage of the contract's benefits); *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc., 2001 U.S. Dist. LEXIS 22277, 2001 WL 670926 (D. Utah Jan. 19, 2001)* ("it is axiomatic that a licensee may not continue to use a trademark without paying its licensor for that use").

[EDITOR'S NOTE: TEXT WITHIN THESE SYMBOLS [O> <O] IS OVERSTRUCK IN THE SOURCE.]

Defendant points to no language in the licensing agreement that would [*24] allow it to continue using the software without continuing to pay royalties. The agreement requires plaintiff to provide updates, maintenance, and second-level support, [7] and several paragraphs address the parties' rights and obligations in

the event of a termination. Paragraph 34 provides that in the event of termination, "Antrim shall immediately cease use and sublicensing of the Cver-AMS software and will return or destroy all internal copies of the Cver-AMS software within 30 days." Above this paragraph is the handwritten addendum "Antrim development sublicenses immediately terminate." The next paragraph provides that the agreement "may be terminated by either party for cause in the event of (a) a breach or default by the other party of a material obligation . . . ." Paragraph 37 states "In the event of termination of this Agreement [O> with or without cause <O], Antrim shall . . . pay all remaining obligations within 30 days." (Language lined-out in original). Paragraph 39 notes that "If notice of intent to terminate this Agreement without cause is given by either party, Antrim may continue, under the terms of this Agreement, to sell the Linked Software until notice of termination [*25] is given."

> 7   By "second-level support" the parties mean that plaintiff was to provide support to defendant, who in turn provided support to end-users.

Taken together, these clauses undermine defendant's assertion that plaintiff's alleged breach enabled defendant to continue sublicensing without paying royalties. Even if defendant demonstrates that plaintiff's purported termination was ineffective, defendant was not justified in continuing to use the trademarks without paying scheduled royalties. Plaintiff has therefore demonstrated a likelihood of success on the merits.

While the Court finds that plaintiff has demonstrated some likelihood of success on the merits, plaintiff has submitted little evidence regarding its alleged failure to provide technical support to defendant. Such evidence is important because the alleged failure could affect the theory under which plaintiff may recover. That is, if plaintiff effectively terminated the lease, defendant's continued use of the software almost certainly amounts [*26] to an infringement. On the other hand, if the purported termination was ineffective, plaintiff has a likelihood of success on the contract claim, but plaintiff's copyright claim is less certain. Therefore, the Court is unable to determine that plaintiff's have shown a "substantial" likelihood of success on the copyright claim.

This determination, however, does not preclude injunctive relief. "The Eighth Circuit has expressly rejected the argument that in every case, 'the party

seeking preliminary relief prove a greater than fifty percent likelihood that he will prevail on the merits.'" *Swanson v. Greater Metropolitan Hotel Employers-Employees Health and Welfare Fund, 2002 U.S. Dist. LEXIS 11866, 2002 WL 1402536 (D. Minn. June 28, 2002)* (quoting *Dataphase, 640 F.2d at 113*). The circuit has emphasized a flexible approach to such equitable relief, to ensure that the Court takes into account the particular circumstances of each case. *Id.* (citing *Dataphase, 640 F.2d at 113*); *see also Walker v. Lockhart, 678 F.2d 68, 71 (8th Cir. 1982)*; *N.I.S. Corp. v. Swindle, 724 F.2d 707 (8th Cir. 1984)*; *Lynch Corp. v. Omaha Nat'l Bank, 666 F.2d 1208, 1212 (8th Cir. 1981))*. [*27]

## 2. Irreparable harm

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari, 295 F.3d 206, 214 (2nd Cir. 2002)* (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2nd Cir. 1975))*. The Court finds that plaintiff has made a strong showing of irreparable harm. As discussed, plaintiff has shown a likelihood of success on the merits of the copyright claim, therefore, irreparable harm is presumed. In addition, defendant is "winding down" its business, and will soon no longer exist. This leads to a possibility that any infringement will not be compensable by money damages, because there will be no company from which to collect. Plaintiff is justifiably concerned that absent this injunctive relief, defendant could license the software product to plaintiff's competitors, including Cadence, and plaintiff would have no recourse once defendant completed the "winding down" process.

The Court finds that plaintiff's [*28] delay in seeking injunctive relief does not undermine its argument of irreparable harm. Plaintiff sought injunctive relief approximately seven months after filing this lawsuit. However, plaintiff sought injunctive relief almost immediately upon hearing of the asset sale to its competitor. Given the circumstances in the case, plaintiff's delay was not unreasonable. *See Safety-Kleen Sys. Inc. v. Hennkens, 301 F.3d 931, 936 (8th Cir. 2002)* (holding seven-month delay did not bar preliminary injunction and stating "the issue is whether the length of

the delay was unreasonable.").

### 3. Balance of harms

The balance of harms is typically "regarded as insignificant in a copyright infringement action." *Taylor, 171 F. Supp. 2d at 977* (citing *E.F. Johnson Co. v. Uniden Corp. of Am., 623 F. Supp. 1485, 1491 (D.Minn. 1985))*. However, in this case, the balance of harms tips in plaintiff's favor. It does not appear that defendant will be harmed by the issuance of injunctive relief, because the company is in the process of "winding down." It appears from counsel's argument that defendant has few, or perhaps no, employees, and has no ongoing business [*29] operations apart from this lawsuit. In contrast, plaintiff's business consists almost entirely, if not entirely, of the software at issue here. The balance of harms therefore favors plaintiff in this case.

### 4. Public interest

Finally, "[a] preliminary injunction enjoining copyright infringement serves the public interest by furthering the goals of individual effort and fair competition." *E.F. Johnson Co. v. Uniden Corp. of America, 623 F. Supp. 1485, 1491 (D. Minn. 1985)*. The public interest factor is especially strong here, because relatively few companies compete in this industry, and the alleged infringement threatens to eliminate plaintiff's business, and therefore his participation in the industry.

### C. Conclusion

Having found that all four *Dataphase* factors weigh in favor of granting a limited preliminary injunction, the Court grants the motion. In the Court's view, the balance of equities favors plaintiff and requires the Court to intervene until the merits are determined.

### ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

[*30] 1. Defendant's motion to stay, dismiss, or transfer [Docket No. 2] is **DENIED**;

2. The Temporary Restraining Order dated December 19, 2002 [Docket No. 27] is **DISSOLVED**;

3. Plaintiff's motion for a preliminary injunction

[Docket No. 23] is **GRANTED** as follows:

a. Until further notice of this Court, defendant is hereby restrained and enjoined from the following:

i. Transferring, delivering, allowing access, or otherwise conveying Pragmatic C's Cver software, any portions thereof, or any works derived therefrom to or for the benefit of Cadence Design Systems, Inc.;

ii. Allowing or permitting access to Pragmatic C's Cver software, any portions thereof, or any works derived therefrom, that is stored or is accessible on the Antrim computer network, or on any network that has joined with or has access to the Antrim network;

b. Defendant is further ordered to hold in a secure location, and not access or permit access to, all hard copies of the Cver software, and any and all back-up tapes that might exist, pending the resolution of this dispute;

c. The $ 50,000 bond filed pursuant to the Court's December 19, 2002 Temporary Restraining Order [Docket No. [*31] 27] shall be continued, and this Order shall be effective without the posting of additional security.

DATED: January 28, 2003 at Minneapolis, Minnesota.

JOHN R. TUNHEIM

United States District Judge