Timebase Pty Ltd v. Thomson Corporation, The — Doc. 16 Att. 6

# Exhibit 7

Dockets.Justia.com

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 1

**H**
Ahlstrom v. Clarent Corp.
D.Minn.,2002.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota, Sixth Division.
Bjorn and Diane AHLSTROM, et al., Plaintiffs,
v.
CLARENT CORPORATION, et al., Defendants.
No. Civ. 02-780RHKSRN.

Dec. 19, 2002.

Jerome B. Simon, Geoffrey P. Jarpe, Michael C. McCarthy, and Laura E. Walvoord, Maslon Edelman Boorman & Brand, L.L.P., Minneapolis, Minnesota, for Plaintiffs.
Wendy J. Wildung, Faegre & Benson, L.L.P., Minneapolis, Minnesota, for Defendant Clarent Corporation.
Terence M. Fruth and Douglas L. Elsass, Fruth, Jamison & Elsass, P.A., Minneapolis, Minnesota, for Defendant Jerry Shaw-Yau Chang.
Timothy D. Kelly and Jennifer L. Frisch, Kelly & Berens, P.A., Minneapolis, Minnesota, and Zesara Chan, Shartis, Friese & Ginsburg L.L.P., San Francisco, California, for Defendants William R. Pape and Michael F. Vargo.
William F. Alderman and Peter E. Root, Orrick, Herrington & Sutcliffe L.L.P., San Francisco, California, for Defendant Simon Wong.

MEMORANDUM OPINION AND ORDER

KYLE, J.

Introduction

*1 Thirty-nine shareholders of Defendant Clarent Corporation ("Clarent") brought suit against Clarent and several of the corporation's former officers and directors after Clarent disclosed that it had discovered financial irregularities indicating that its financial statements for fiscal year 2000 and the first two quarters of fiscal year 2001 would have to be restated. The NASDAQ later suspended all trading in Clarent stock. Presently before the Court are several motions brought by various defendants. All of the defendants who have appeared in the above-captioned matter have moved pursuant to 28 U.S.C. § 1404(a) for an order transferring this matter to the United States District Court for the Northern District of California ("the California District Court").[FN1] Defendants William Pape and Michael Vargo have also moved the Court for an order dismissing with prejudice as to them the Amended Complaint in the above-captioned matter.[FN2] In addition, Defendant Simon Wong has moved to dismiss the Amended Complaint as to him pursuant to Rules 12(b)(6) and 9(b). For the reasons set forth below, the Court will grant the motion to transfer and allow the transferee court to resolve the motions to dismiss.

> FN1. The Plaintiffs dropped two defendants who were named in their original Complaint from the Amended Complaint: Arthur Rubinfeld and Kevin Chang. Matthew Chiang has never appeared in this action. Within two weeks of filing their Amended Complaint, the Plaintiffs voluntarily dismissed defendant William Barker without prejudice. (Stipulation of Dismissal Without Prejudice (Doc. No. 15).)

> FN2. Defendant Barry Forman was a party both to this motion to dismiss and to the motion to transfer venue. After those motions had been taken under advisement, however, the parties and the Court signed a Stipulation and Order dismissing Forman from the action with prejudice. (Stipulation and Order Dismissing Action Against Barry Forman (Doc. No. 44).)

Background

I. The Parties

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d											Page 2
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)**

A. The Plaintiffs

The thirty-nine Plaintiffs in this action purchased over 6,450,000 shares of common stock in Clarent Corporation between April and August 2001, at a total cost of approximately $47 million. (Am. Compl. Ex. A; *see also* Bhalla Aff. Ex. B (Notice of Motion and Motion to be Named Lead Plaintiff) at 3.) Plaintiff Irwin L. Jacobs ("Jacobs") is a businessman and investor who resides in Minneapolis, Minnesota. (Am. Comp. ¶¶ 11-12; Bhalla Aff. Ex. B at 2.) All of the Plaintiffs allegedly invested in Clarent stock after relying directly or indirectly on Clarent's public disclosures and Jacobs' investigation, investment analysis, and recommendation. (Am.Compl.¶¶ 11-19.)

Of the thirty-nine Plaintiffs in this matter, twenty-eight are individuals and the other eleven are investment funds, partnerships, corporations, or other business entities. Of the twenty-eight individual plaintiffs, seventeen reside in Minnesota: Jacobs, Alexandra Jacobs, Trisha Jacobs Blake, Mark Jacobs, Rose Jacobs, Howard Grodnick, Roger Cloutier, Michael Esboldt, Lori Licht, Daniel T. Lindsay, David Mahler, Grant Oppegaard, Rodney Burwell, Mark J. Freidson, Robert M. Levine, Mark L. Haynes, and Lawrence M. Saliterman.[FN3](Am.Compl.¶¶ 12, 14, 15.)

> FN3. Robert Levine provides the "Minnesota connection" for Plaintiffs Jeffrey Siegel and Lauren Associates. (Am.Compl.¶ 15.) The Amended Complaint does not indicate where Siegel or Lauren Associates reside.

Randi Jacobs Lebowitz resides in Texas and is a daughter of Jacobs and his wife, Alexandra. (*Id.* ¶ 12.)Several individual plaintiffs who are not Jacobs' family members and do not reside in Minnesota nevertheless have a business and/or personal connection to Jacobs. For example, Bjorn Ahlstrom, who is married to Plaintiff Diane Ahlstrom, is a "long-time business associate [ ] and colleague[ ]" of Jacobs.[FN4](*Id.* ¶ 14.)Arkansas resident Peter Carr, who is married to plaintiff Rebecca Carr, is a "friend and business colleague" of Jacobs,[FN5](*id.* ¶ 17), as is Kevin Dann, a resident of Connecticut.FN6(*Id.* ¶ 18.)

> FN4. The Ahlstroms' place of residence is not alleged in the Amended Complaint.

> FN5. Carr's relationship with Jacobs in turn provides the "Minnesota connection" for additional plaintiffs, as Carr recommended to Plaintiffs Guss Blass, George Davis, Ron Craft, Brian Kahn and Atlantic Beach Associates that they invest in Clarent. (*Id.* ¶ 17.)The place of residence for Blass, Davis, Craft, Kahn, and Atlantic Beach Associates is not alleged in the Amended Complaint.

> FN6. Dann's relationship with Jacobs in turn provides the "Minnesota connection" for additional plaintiffs, as Dann recommended to Plaintiffs Cascoh, Inc. and Sands Partnership No. 2, both of which are located in Kansas City, Missouri, that they invest in Clarent. (*Id.* ¶ 18.)

*2 Two of the eleven business entity plaintiffs reside in Minnesota. IPI, Inc. is a Minnesota corporation with its principal place of business in Eden Prairie, Minnesota. (*Id.* ¶ 13.)Morriss Point Investment Group, LLC is a Minnesota limited liability company in which Grant Oppegaard is an owner.(*Id.* ¶ 14.)Plaintiffs Cascoh, Inc. and Sands Partnership No. 2 are located in Kansas City, Missouri. (*Id.* ¶ 18.)Plaintiff Alpart Trading Company is located in Chicago, Illinois. (*Id.* ¶ 19.)Finally, Plaintiffs GAM North America Growth Fund, GAM International Management Limited, GAM Star Fund plc, and GAMerica Inc. are investment funds affiliated with Global Asset Management Limited, based in London, England.[FN7](*Id.* ¶ 16.)

> FN7. One of the funds' managers is Gordon Grender, a personal friend of Jacobs.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 3

(Am.Compl.¶ 16.)

B. The Defendants

Clarent is a Delaware corporation having its principal place of business in Redwood City, California, in the Northern District of California. (Am. Compl. ¶ 21; Hogan Aff. ¶ 3.) Michael Vargo, a resident of California, was an officer of Clarent and a member of its Board of Directors from approximately July 2, 1996 to January 8, 2002. (Vargo Aff. ¶¶ 2, 3.) William Pape, a resident of New Mexico, was a member of Clarent's Board of Directors from approximately October 1999 to June 2002. (Pape Aff. ¶¶ 2, 3.) Simon Wong, a resident of California, was an officer of the corporation from March 2001 to January 2002, working at Clarent's offices in Redwood City. (Wong Aff. ¶¶ 2, 3.)

Jerry Shaw-Yau Chang, a California resident, was a member of Clarent's Board of Directors from July 1996 to September 2001. (J. Chang Aff. ¶¶ 2, 3.) Throughout that time period, he also held several officer-level positions in the corporation. He was Clarent's Chief Executive Officer from July 1996 to July 2001. (Id. ¶ 3.) He was also the corporation's president from July 1996 until April 2001, at which time he became one of the company's two co-presidents, serving in that capacity until July 2001. (Id.) Chang thereafter was the corporation's Chief Strategist from July 2001 to September 2001.(Id.)

II. Clarent's Disclosures Regarding Fiscal 2000 and 2001 Financial Statements

The Plaintiffs allege that on May 8, 2001, Clarent admitted in a press release that it had overstated its revenues by approximately $130 million as a result of unauthorized transfers of funds by employees to third parties in the Asia Pacific region who used these funds to purchase the Company's products and services, and circular transactions between Clarent and businesses that were owned and controlled by officers of the corporation. (Am.Compl.¶¶ 4-8.) On September 4, 2001, Clarent issued a press release stating it had discovered and was investigating irregularities indicating that its financial statements for the first and second quarter of 2001 might have to be restated. (Id. ¶ 72.)On October 23, 2001, Clarent announced that its was extending its investigation into potential irregularities back into fiscal year 2000 and that the financial statements for fiscal year 2000 should not be relied upon. (Id. ¶ 76.)

III. Litigation Against Clarent in California and Minnesota

*3 Within a day of Clarent's September 4, 2001, announcement about accounting irregularities, several persons brought federal class action lawsuits in the Northern District of California against the corporation and several of its current and former officers and directors. (Id. ¶ 74.)On November 6, 2001, the California District Court consolidated seven class actions for pre-trial proceedings into a single matter captioned *In re Clarent Corporation Securities Litigation,* Master File No. C-01-3361 CRB ("the Consolidated Action"). On November 21, 2001, a number of the Plaintiffs here, including Jacobs and several of his family members ("the Jacobs group"), moved the California District Court to appoint them as the lead plaintiffs in the Consolidated Action.[FN8](Bhalla Aff. Ex. B.) United States District Judge Charles Breyer concluded, however that the Jacobs group had brought their motion too late. (*Id.* Ex. C (Order Appointing Lead Plaintiff, *Carson v. Clarent Corp. et al.,* Master File No. C-01-03361 CRB (N.D.Cal. Dec. 14, 2001) at 2-3.) Accordingly, the California District Court denied the Jacobs group's motion and appointed Otter Creek Partners, with a $3.1 million interest, as lead plaintiff. (*Id.*) The lead plaintiff in the Consolidated Action has the authority to speak for, and enter into agreements on behalf of, the plaintiffs in all of the consolidated cases regarding pretrial procedures, discovery, and settlement negotiations. (*See id.*Ex. D (Order and Stipulation for Consolidation, *Carson v. Clarent Corp. et al.,* Master File No. C-01-03361 (N.D.Cal. Apr. 9, 2002) at 2.) On April 9, 2002, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)  
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)**

Page 4

California District Court consolidated four additional federal actions into the Consolidated Action for pre-trial proceedings.

> FN8. "The Jacobs group" was comprised of fifteen of the thirty-nine Plaintiffs named in this action: Irwin L. Jacobs, Alexandra Jacobs, Trisha Jacobs Blake, Randi Jacobs Lebowitz, Mark Jacobs, Rose Jacobs, Howard Grodnick, David A. Mahler, Lori Licht, Michael Esboldt, Rodney Burwell, Roger Cloutier, Daniel T. Lindsay, Grant Oppegaard, and IPI, Inc. With the exception of Randi Jacobs Lebowitz, all of the members of the Jacobs group were Minnesota residents. According to papers filed with the California District Court in the Consolidated Action, the Jacobs group had collectively purchased interests in 6,286,605 shares of Clarent common stock between April and August 2001. (Bhalla Aff. Ex. B at 2.)

On April 12, 2002, the thirty-nine Plaintiffs in this matter brought suit in Minnesota. In addition to asserting claims against the Defendants under federal securities laws, the Plaintiffs in the above-captioned action have alleged violations of Minnesota securities laws and the Minnesota Consumer Fraud Act. The thirty-nine Plaintiffs are not seeking to maintain this action as a class action.

On May 8, 2002, Clarent released revised financials for fiscal years 2000 and 2001, indicating that it had overstated about $129 million in revenue for fiscal year 2000 and the first two quarters of fiscal year 2001. (Am.Compl.¶ 77.) On June 21, 2002, an amended and consolidated complaint was filed in the Consolidated Action. Less than two weeks later, the Plaintiffs here filed an Amended Complaint. Sixty-nine paragraphs of the Amended Complaint in this action are identical to paragraphs found in the Consolidated Action's amended complaint.

Analysis

Motion to Transfer Venue

Section 1404(a) of Title 28, United States Code, states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a).[FN9]

> FN9. The enactment of 28 U.S.C. § 1404, which controls interstate transfers of cases in federal courts, had the effect of limiting forum non conveniens analyses to cases where the alternative forum is the court of another country. See *American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2 (1994). The language that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" initially appeared in *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508 (1947), a leading Supreme Court decision concerning dismissal on the ground of forum non conveniens. See Charles A. Wright et al., *Federal Practice and Procedure* § 3848 (1986 and 2002 pocket part). Many transfer of venue opinions decided since § 1404(a) was enacted in 1948 continued to use that language as the standard of decision. In 1955, the Supreme Court clearly stated that § 1404 was not simply a codification of the forum non conveniens doctrine:
>
> > Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon *a lesser showing of inconvenience.*This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that *the discretion to be exercised is broader.*
>
> *Norwood v. Kirkpatrick,* 349 U.S. 29, 32

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 5

(1955) (emphasis added). Thus, as this Court has observed, the strict burden of proof enunciated in *Gilbert* is inapposite to a § 1404(a) transfer motion. "In light of the Court's decision in *Norwood*, it is now clear that a plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens, and is simply one factor to be considered."*Medtronic, Inc. v. American Optical Corp.,* 337 F.Supp. 490, 497 (D.Minn.1971) (Larson, J.).

*4 The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors.
*Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir.1997) (internal citations omitted). The parties do not dispute that the above-captioned action against Clarent and the other defendants could have been brought in the proposed transferee court-the Northern District of California. The question, therefore, is whether transfer to that district is permissible under § 1404(a).

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong-however brought in a court-presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."*Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960). The burden is on the moving party-here, the Defendants-to show why a change of forum is warranted. *Stinnett v. Third Nat'l Bank of Hampden County,* 443 F.Supp. 1014, 1017 (D.Minn.1978) (MacLaughlin, J.). The Court begins its analysis with the interests of justice.

A. Interest of Justice

The "interest of justice" is a significant part of a § 1404(a) transfer analysis, and "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result."*Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986). Several elements fall within the scope of the "interest of justice," including (1) the plaintiff's choice of forum, (2) judicial economy, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, and (6) conflict of law issues.*Terra Int'l, Inc.,* 119 F.3d at 696. The Court considers the factors applicable in this case in turn.

1. Plaintiffs' choice of forum

"In general, federal courts give considerable deference to a plaintiff's choice of forum."*Id.* at 695.Where, however, the plaintiff does not reside in the selected forum or where the underlying transaction or facts did not occur in the chosen forum, this Court has concluded that a plaintiff's choice of forum is afforded significantly less deference. *Nelson v. Soo Line R.R. Co.,* 58 F.Supp.2d 1023, 1026 (D.Minn.1999) (Doty, J.) (citing cases). Both issues have relevance here.

Plaintiffs assert that this is not a class action. They have all chosen to pursue their claims against the Defendants in Minnesota. Yet more than half of the thirty-nine Plaintiffs do not reside in Minnesota. The Plaintiffs stress that they all, including the non-resident Plaintiffs, have a "connection" to Minnesota, *either* as a relative, friend, or business associate of Jacobs who relied on Jacobs' assessment of Clarent as an investment opportunity *or* as a friend or business associate of someone who was a friend or business associate of Jacobs who relied on Jacobs' assessment of Clarent as an investment opportunity. While friendship has many attributes, legal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 6

residence is not one of them, and the Court does not find this argument compelling. Thus, for the non-resident Plaintiffs the rule still applies: their choice of forum is accorded much less deference when it is not the forum in which they reside. *Stewart v. Capitol Area Permanente Med. Group, P.C.,* 720 F.Supp. 3, 5 (D.D.C.1989); *see also Interlochen Center for Arts v. Interlocken Int'l Camp,* 2002 WL 31040346 at *5 (N.D.Ill. Sept. 12, 2002) (according less deference to plaintiff's choice of forum when plaintiff does not reside in the forum selected); *Lindley v. Caterpillar, Inc.,* 93 F.Supp.2d 615, 617 (E.D.Pa.2000) (concluding that significance of plaintiff's choice of forum is minimized when plaintiff does not live or work in the forum selected); *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1010-11 (N.D.Ohio 1998) (reasoning that where plaintiff's choice of forum was not its home forum, its choice was entitled to no more weight than the other factors involved in a transfer analysis).

*5 The Plaintiffs argue that there is a "normal" presumption in favor of a plaintiff's choice of forum, particularly where the plaintiff resides in the district that has been chosen. The circumstances surrounding the resident Plaintiffs' choice of forum, however, are not "normal," and the Court is mindful of the Eighth Circuit's admonition that this transfer analysis requires a "case-by-case evaluation of the particular circumstances at hand."*Terra Int'l,* 119 F.3d at 691. In this case, the vast majority of the Minnesota-resident Plaintiffs first sought to pursue their claims against Clarent and the individual defendants *in California*. That is, they were members of "the Jacobs group" that brought a motion in the California District Court to be named lead plaintiff in the Consolidated Action. Having missed the deadline for that motion, and having offered no reasonable explanation why the California District Court should consider their untimely request, the Jacobs group then brought suit in Minnesota, adding the non-Minnesota plaintiffs and a few additional Minnesota residents. Under the circumstances of this case, the Court concludes that the resident Plaintiffs' choice of Minnesota as their forum was, in fact, a second choice.

Finally, it appears that the operative events in this securities fraud litigation occurred elsewhere, not in Minnesota. Plaintiffs argue that some of the stock purchase transactions occurred in Minnesota. For all but a dozen of the Plaintiffs, however, there is no evidence that their stock purchases and investments took place in Minnesota. (*See* Aff. of Lori Licht ¶¶ 5, 9 (regarding location of twelve Plaintiffs' stock transaction documents).) Furthermore, in describing the Defendants' allegedly fraudulent and misleading acts, Plaintiffs acknowledge that "*[w]hile in California,* Defendants materially overstated Clarent's assets and sales revenues and made other fraudulent and misleading statements consistent with this overstatement." (Pls' Mem. in Opp'n to Mot. to Transfer at 4 (citing the Am. Compl. and Answer) (emphasis added).) The revenue statements and SEC filings were prepared in California. The Board of Directors' meetings took place in California. The accounting department, allegedly responsible for the practices that inflated Clarent's financial statements, is located in California. (*See* Hogan Aff. ¶ 6.) The Court finds that the material facts underlying Plaintiffs' claims occurred in California, not in Minnesota. *Compare Burstein v. Applied Extrusion Techs., Inc.,* 829 F.Supp. 106, 110 (D.Del.1992) (rejecting securities fraud plaintiff's choice of Delaware as its forum where most meetings relating to the IPO, all Board of Directors' meetings, the preparation of materials sent to the SEC, all daily financial and accounting functions, and the finalization of all press releases occurred in Massachusetts). For all of the foregoing reasons, the Court gives little deference to the Plaintiffs' choice of forum.

2. Judicial economy

*6 "The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions."*Codex Corp. v.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 7

*Milgo Elec. Corp.,* 553 F.2d 735, 739 (1st Cir.1977). As the Supreme Court observed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."*Continental Grain Co.,* 364 U.S. at 26,*quoted in Ferens v. John Deere Co.,* 494 U.S. 516, 531 (1990). As noted above, substantial portions of the Amended Complaint in this action and the Consolidated Action in California District Court are identical. Thus, the two lawsuits, involving the same defendants and the same core allegations, present a significant overlap in factual and legal issues. The impression that the two actions are intimately related is bolstered by Plaintiffs' offer to coordinate their discovery in this action with the discovery in the Consolidated Action so as to ensure no duplication. Plaintiffs have offered either to attend or to obtain transcripts of all depositions that are noticed in the Consolidated Action and to be bound by the contents of those depositions. (Aff. of Geoffrey Jarpe ¶¶ 2-4.)

Plaintiffs have not, however, offered to be bound by any *rulings* of the California District Court on discovery matters. Thus, if the Lead Plaintiff in the Consolidated Action cannot compel certain discovery from the Defendants in California, the Plaintiffs here would be free to litigate that issue again in this Court, causing two courts to consider the same discovery dispute and giving rise to potentially inconsistent rulings.

Plaintiffs assert that there is no guarantee that this action would be consolidated with the Consolidated Action if transferred to the California District Court. "[A] court deciding a motion to transfer to a district in which a similar suit is pending should consider the likelihood that consolidation will actually occur following transfer. There is no requirement, however, that consolidation be certain before this Court can consider the fact that a related action is pending in the proposed transferee court."*Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.,* 645 F.Supp. 89, 92 n. 2 (E.D.N.Y.1986). Given the overlap of material in the pleadings in this action and the California District Court, it seems reasonable to anticipate that this action would be consolidated or, at a minimum, assigned to the same judge as a related case in the transferee district. In any event, retaining this matter in Minnesota would clearly cause two cases involving the same parties and substantially related issues to be pending simultaneously in two district courts, resulting in a duplicative expenditure of resources .[FN10]This factor favors transfer.

> FN10. Presumably, because the Consolidated Action is consolidated for purposes of pre-trial proceedings, a separate jury from the one that hears the consolidated class action could consider the thirty-nine Plaintiffs' claims in their litigation. Thus, whether this action is pending in California or Minnesota, two juries would be implicated.

3. Obstacles to a fair trial and conflict of law issues

Neither party in their briefs focused on these factors by identifying a conflict of law issue or an obstacle to a fair trial. At oral argument, however, Plaintiffs contend that it would be unfair to transfer this matter to California because doing so would effectively compel them to participate in a class action proceeding when they have no desire to be members in any class action against these Defendants. As the Plaintiffs themselves argue, there is no guarantee that this action will be consolidated with the Consolidated Action. It may become nothing more than a related matter in the same district. Nor have the Plaintiffs cited any authority for the proposition that, should this action be transferred to California and should a class be certified in the California District Court, the Plaintiffs will be unable to opt out of the class action and proceed on their own complaint. Finally, the Court notes that the Plaintiffs have already expressed their willingness to participate in the discovery in the Consolidated Action and have not suggested that such participation will pre-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 8
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)**

judice them. The Court finds that these factors do not militate against a transfer.

4. The comparative costs to the parties of litigating in each forum

*7 All of the Defendants who have appeared in this action are also defendants in the Consolidated Action in California.[FN11] Therefore, the issue for the Defendants is not whether one forum is more expensive than another. If the motion to transfer is denied, Defendants must proceed in two districts and must incur duplicative litigation costs. As for the Plaintiffs, regardless of the outcome of the motion to transfer, they will pursue their claims in only one forum-either Minnesota or California. Nothing before this Court establishes that it is significantly cheaper to litigate in Minnesota than in the Northern District of California. Ultimately, this factor favors a transfer.

> FN11. One of the actions initially consolidated by the California District Court, *Rosenfeld v. Clarent Corporation, et al,* Case No. C-01-3369, names William Pape as a defendant. Therefore, all of the parties here are also before the California District Court.

5. Plaintiffs' ability to enforce a judgment

The ability to enforce a judgment has less significance in a § 1404(a) transfer analysis than in a forum non conveniens analysis, where the enforcement of a judgment issued by a foreign country could present serious problems. *See generally* Moore's *Federal Practice (Third)* § 111.13[1][i] (1997). It appears that none of the defendants has any assets in Plaintiffs' chosen forum, Minnesota. A plaintiff who obtains a money judgment from a federal district court may register that judgment in any other judicial district in which assets of the defendant are located. *See* 28 U.S.C. § 1963. While such a procedure is relatively straight-forward, it seems likely that such a step could be eliminated altogether if

the Plaintiffs obtained a judgment against the Defendants (many of whom reside in the Northern District of California) from the *California District Court* rather than the District of Minnesota. This factor ultimately favors neither the movants nor the Plaintiffs.

6. Relative court congestion

Plaintiffs contend that they would obtain a speedier resolution of this matter in Minnesota, citing statements made by another judge of this Court in June 2002 regarding his own trial schedule. Needless to say, the status of another judge's calendar in June 2002 is not dispositive of the undersigned's calendar. Plaintiffs have acknowledged that "resolution in Minnesota may only be *slightly faster* than California."(Pls.' Mem. in Opp'n to Mot. to Transfer at 11 (emphasis added).) This factor is essentially a "wash," favoring neither side.

7. Summary

In conclusion, the Court determines that the interests of justice favor transfer to the Northern District of California. Judicial economy would clearly be served by the transfer, as the same parties are currently litigating the same or similar issues in two different districts. The Plaintiffs' choice of Minnesota as their forum is entitled to little deference. Continuing an action in Minnesota while litigation also proceeds in California adds to the costs of litigation for the Defendants, whereas the grant or denial of the motion to transfer has little impact on Plaintiffs' litigation costs.

B. Convenience of the Parties

1. Plaintiffs

*8 "The 'logical starting point' for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)

Page 9

*Moore's Federal Practice (Third)* § 111.13[1][e][i] at 111-74 (1997). The Court has incomplete information regarding the residence of one-third of the Plaintiffs. As discussed above, nineteen of the thirty-nine Plaintiffs-seventeen individuals and two business entities-reside in Minnesota. As for the other twenty Plaintiffs, the record indicates the following: Carr and (presumably) his wife reside in Arkansas; Dann resides in Connecticut; Jacobs-Lebowitz resides in Texas; Cascoh, Inc. and Sands Partnership No. 2 are located in Kansas City, Missouri; and Alpart Trading Company is located in Chicago, Illinois. Thus, there is no information regarding thirteen of the Plaintiffs, although four investment funds are alleged to be "affiliated" with a London-based asset management company.

"When the plaintiff has chosen to bring suit in a district that is not his 'home turf,' that the chosen forum is convenient to plaintiff is not presumed."*Burstein,* 829 F.Supp. at 110. There is no evidence that any of the non-resident individual Plaintiffs either work in or travel to Minnesota, such that pursuing their claims in this forum is convenient to them. With the exception of Jacobs' daughter, Randi, there is no evidence that any of the non-resident Plaintiffs have documents in Minnesota relating to their investments in Clarent. The Court cannot find that it is more convenient for the twenty non-resident Plaintiffs to have their claims tried in Minnesota as opposed to California.

Of the nineteen Plaintiffs who reside in Minnesota, fourteen were part of the group that sought in November 2001 to be named Lead Plaintiff in the Consolidated Action and to pursue their claims against Defendants in California. Thus, one year ago, it was convenient for these resident Plaintiffs to try their securities fraud action in California. Averments to the contrary do not ring true. For example, Lori Licht, one of the resident Plaintiffs, has submitted an affidavit in opposition to the transfer motion stating that "[l]itigation in California would be especially inconvenient for me because I need to care for my three minor children, ages five (5), twelve (12), and fifteen (15)." (Licht Aff. ¶ 10.) Those issues were apparently not a concern one year earlier, when her minor children were aged four, eleven, and fourteen, and she sought to pursue her claims against Defendants in the California District Court. Plaintiffs' evidence of inconvenience is not compelling.

2. Defendants

None of the Defendants named in the Amended Complaint resides in Minnesota. With one exception, the individual Defendants who have appeared and remain in this action reside in California. The sole non-California Defendant, William Pape, resides in New Mexico and is thus closer to the Northern District of California than to Minnesota. Defendant Clarent is headquartered in the proposed transferee district. The bulk of Clarent's administrative corporate functions, such as the legal, accounting, financial, and investor relations departments, were conducted during the relevant time frame in California. Thus, those corporate employees who will be called as witnesses reside in California. Finally, Clarent maintains its corporate records in California.

3. Conclusion

*9 The Court finds that transferring this matter from Minnesota to California will not result in simply shifting an inconvenience from one party to another. Over half of the thirty-nine Plaintiffs do not reside in Minnesota, they are not entitled to a presumption that Minnesota is convenient to them, and there is no evidence that these non-resident Plaintiffs would be at all inconvenienced by litigating in California as opposed to Minnesota. As for the Plaintiffs who do reside in Minnesota, the vast majority of them sought to litigate in California one year ago and there is no persuasive evidence of inconvenience to them should they have to litigate in California now. On the other hand, all but one of the Defendants who have appeared in this action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856386)**

Page 10

reside in California, where substantially the same allegations against them are being litigated by other aggrieved shareholders. The convenience of the parties favors transfer.

C. Convenience of the Witnesses

The Defendants contend that third-party witnesses in this matter will include former employees of Clarent, many of whom reside in California.[FN12] Such witnesses are clearly beyond the subpoena power of this District. The Plaintiffs have offered to cooperate in the discovery in the Consolidated Action and be bound by whatever the depositions that are taken in California contain. Looking ahead to trial, however, the presentation of evidence by numerous depositions is clearly not preferable to live testimony. Former employees of Clarent could more likely be subpoenaed by the proposed transferee court. The Plaintiffs have not indicated that any third-party witnesses in this matter are located in Minnesota or in such other places that Minnesota is more convenient than the California District Court. This factor tips mildly in favor of transfer as well.

> FN12. Plaintiffs object that, in support of the motion for change of venue, Defendants should have provided the names of the non-party witnesses they expected would be called and a general statement of their testimony. As this Court long ago observed, however, "this is not a requirement sine qua non" for transfer. *Hill v. Upper Mississippi Towing Corp.,* 141 F.Supp. 692, 696 (D.Minn.1956) (Devitt, J.). In this case, having concluded that the interests of justice weigh heavily in favor of transfer, Defendants' failure to provide information about witnesses does not defeat the motion.

Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, IT IS ORDERED that Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a) (Doc. No. 20) is GRANTED. The Clerk of Court is hereby directed to transfer this matter to the United States District Court for the Northern District of California.

The Court declines to rule on Defendants Pape and Vargo's Motion to Dismiss (Doc. No. 30) and Defendant Simon Y. Wong's Motion to Dismiss (Doc. No. 35); the transferee court should more properly consider the merits of those later-filed motions.

D.Minn.,2002.
Ahlstrom v. Clarent Corp.
Not Reported in F.Supp.2d, 2002 WL 31856386 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.