UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., <br><br>          Plaintiff, <br><br> vs. <br><br> THE THOMSON CORPORATION, <br> WEST PUBLISHING CORPORATION, <br> and WEST SERVICES, INC., <br><br>          Defendants. | Civil No. 07-CV-1687 (JNE/JJG) <br><br><br> **DEFENDANTS' MEMORANDUM <br> IN SUPPORT OF MOTION TO <br> STAY LITIGATION PENDING <br> REEXAMINATION PROCEEDINGS** |

## I. INTRODUCTION

On April 3, 2007, the United States Patent and Trademark Office ("PTO") granted a third-party Request for Reexamination of the only patent asserted in this litigation – U.S. Patent No. 6,223,592, entitled a "System for Electronic Publishing" ("the '592 patent"). In granting the reexamination, the PTO relied on three prior art references that had not been disclosed in the original prosecution. These same prior art references have been the basis for repeated rejections of an application for a European counterpart to the '592 patent with original claims virtually identical to those of the '592 patent. Based on the pending reexamination of the '592 patent, the Court should stay this litigation.

*A Stay Is Routine Where No Discovery Has Occurred*. In this District (and in district courts across the country), a "stay pending reexamination is **routinely ordered**, particularly where discovery has not progressed past the early stages." *VData LLC v. Aetna, Inc.*, No. 06-1701, 2006 WL 3392889, at *8 (D. Minn. Nov. 21, 2006) (Ericksen,

J., adopting report and recommendation) (emphasis added and citation omitted); *accord CNS, Inc. v. Silver Eagle Labs, Inc.*, No. 04-968, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004); *Card Tech. Corp. v. Datacard Corp.*, No. 05-2546, 2007 WL 551615, at *2, 7 (D. Minn. Feb. 21, 2007). This case is at the earliest possible stage of litigation. No pretrial schedule or trial date has been set, and no discovery has commenced.

***A Stay Will Eliminate Needless Litigation of Claims that Are Likely to Change.***
"[C]ommon sense counsels that it is usually prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents." *Card Tech. Corp.*, 2007 WL 551615, at *3. According to published statistics, three out of four reexamined patents incur some changes to the claims, and one of out ten results in the PTO canceling all of the claims. (Ex. 1, *USPTO Ex Parte Reexamination Filing Data* (June 30, 2006).)[1] Thus, as Judge Ericksen and Magistrate Judge Nelson have recognized, "[n]ot only does a stay have the potential to narrow or dispatch claims altogether, it also may minimize the attendant financial costs of litigation to the parties and the courts." *VData LLC*, 2006 WL 3392889, at *7. Furthermore, even in the unlikely scenario that the claims emerge unchanged from the reexam, "input of the Patent Office will assist in shaping, refining, and guiding this case through the issues that will remain after reexamination." *CNS*, 2004 WL 3631121, at *2; *accord, e.g.*, *Card Tech.*, 2007 WL 551615, at *4.

---

[1] All exhibits are attached to the declaration of Chad Drown, submitted herewith.

*A Stay Will Not Prejudice TimeBase.*  TimeBase will not be prejudiced by the stay.  TimeBase is an Australian company that does not sell any products in the United States that are covered by the '592 patent.  Therefore, "any prejudice to the party opposing the stay could be ultimately remedied through an injunction and money damages."  *VData LLC*, 2006 WL 3392889, at *5 (Ericksen, J.); *see also Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (finding no prejudice from a stay and that money damages would be an adequate remedy where patentee was not selling goods or services relating to the patent-in-suit).

Accordingly, defendants request that the Court stay this case pending the results of the reexamination of the '592 patent by the PTO, including all appeals.

## II.   BACKGROUND

This is a patent infringement action.  The plaintiff, TimeBase Pty Ltd, is an Australian corporation with no presence in the United States.  TimeBase does not sell any products or services in the United States, let alone a product covered by the '592 patent, and it has no offices or employees in the United States.

TimeBase has accused The Thomson Corporation and two of its subsidiaries, West Publishing Corporation and West Services, Inc. (referred to collectively as "West"), of infringing the '592 patent, which claims a computer-based system for electronic publishing.  TimeBase asserts that West's PastStat Locator, RegulationsPlus and Graphical Statutes services offered through Westlaw.com infringe the '592 patent. (Amended Compl., ¶ 10.)

### A. The Reexamination Process

With the grant of the request for reexamination, the '592 patent enters an *ex parte* prosecution process similar to the prosecution process for a newly filed patent application. Reexaminations, however, move to the front of the line and are to be handled with "special dispatch." 35 U.S.C. § 305; 37 CFR § 1.550(a).

During the reexamination process, TimeBase will presumably argue that the '592 patent remains valid despite the newly-disclosed prior art references. Given what has transpired in the prosecution of the European counterpart to the '592 patent, however, TimeBase will likely be required to amend the claims so that they read more narrowly or, at a minimum, make additional arguments that tend to narrow the scope of the patent claims. Therefore, the scope of the '592 patent will be in flux until it emerges from the reexamination process.

At the conclusion of the reexamination proceedings, some or all of the claims in the '592 patent may be cancelled, some or all of the claims may be amended, new claims may be added, or some of the claims may be unchanged. 35 U.S.C. §§ 305, 307. As noted above, three out of four reexamined patents incur some changes to the claims, and one of out every ten reexamined patents results in the PTO canceling all of the claims in the patent. (Ex. 1.) The median time for reexamination (measured from filing date of the request to certificate issue date) is 17.6 months or 1.3 years. (*Id.*) In this case, the request for reexamination of the '592 patent was filed on January 29, 2007. (Ex. 2.)

### B. Summary of the '592 Patent

The '592 patent is directed to a computer-implemented system, a computer-implemented method, and a computer readable recording medium for publishing an electronic publication using text-based data. (Ex. 3, '592 patent, 3:44-66, 4:1-12.) In this case, TimeBase has asserted ten of the 58 claims in the patent, all of which relate to the claimed computer-implemented system. (Amended Compl., ¶ 10.)

According to the inventors, the electronic publishing system claimed by the '592 patent is intended to improve connectivity between pieces of information, provide improved analysis of the type of information, and locate information for a particular point in time. (Ex. 3, '592 patent, 4:38-49.) The claims require that the system organize text using "predefined portions," which, in the case of a legislative statute, for example, might be a "section" of the statute. (*Id.*, 7:10-12.) Each of these predefined portions is stored in the system, together with portions of the text that have been modified (*e.g.,* a section of a statute that has been amended through subsequent legislation). Each of these predefined portions is also encoded with "a linking means of a markup language," such as SGML or XML. (*Id.*, Abstract.) These predefined portions are also organized in the system using "attributes," where each attribute is a point on an axis or "pathway" of a multidimensional space. (*Id.*) In the context of legal information, the patent gives as examples of attributes such things as the location or address of the information, the type of information (case, legislation, or journal), the jurisdiction, the subject or content, the depth or the extent of the content, and the point in time at which the information is viewed. (*Id.*, 8:13-18.) According to the '592 patent, each predefined portion of text-

based data and modified predefined portion of text-based data can be located in the multidimensional space. (*Id.*, 7:61-64.)

### C. The Reexamination Prior Art and Related European Proceedings

A third-party – not the defendants – filed a Request for Reexamination of the '592 patent on January 29, 2007 and it was granted by the PTO on April 3, 2007. (Exs. 2 & 4.) Reexamination was sought in view of three prior art references alleged to anticipate the '592 patent and render it invalid – the ELF reference, the STEPS reference, and the OOHS reference.[2] In granting reexamination, the PTO found that each of the references, standing alone, presented a substantial new question of patentability as to all claims of the '592 patent. (Ex. 4.)

The European Patent Office ("EPO") relied on these same prior art references to reject claims virtually identical to those contained in the '592 patent. (Exs. 6 & 8.) In a rejection filed on January 28, 2005, the EPO found that the claims filed in the European application were not new (*i.e.*, they were anticipated) in view of the ELF reference and/or

---

[2] The Request for Reexamination of the '592 patent was based on the following prior art references: (**1**) Arnold-Moore T et al.: "The ELF data model and SGQL query language for structured databases", Sixth Australasian Database Conference, ADC '95, Adelaide, AU, vol. 17, no. 2, 30 January 1995, – 31 January 1995, pages 17-26 XP002204886 Australian Computer Science Communications ISSN: 0157 -3055 (the "ELF reference"); (**2**) George Promenschenkel, "STEPS toward a new era in electronic publishing," OCLC Newsletter No. 216, published by OCLC, MC104, 6565 Frantz Road, Dublin, Ohio 43107-3395. July/August 1995 (the "STEPS reference"); and (**3**) Kim H, et al.: "OOHS: An Object-Oriented Hypermedia System" 20th Annual International Computer Software and Applications Conference (Compsac), Seoul, Korea, 21 August 1996 – 23 August 1996, pages 496-501, XP000684382 IEEE Comp. Soc., Los Alamitos, CA US ISBN: 0-8186-7579-9 (the "OOHS reference").

the claims were not inventive (*i.e,* they were obvious) in light of the ELF reference and the combined teachings of the ELF and OOHS references. (Ex. 6.)

In response to these rejections, TimeBase submitted a response in which TimeBase amended the claims and argued that its invention was novel despite the prior art references. (Ex. 7.) After considering TimeBase's arguments, the EPO entered a second rejection on January 25, 2007, relying on these same references and an additional reference. (Ex. 8.) In April 2007, TimeBase reiterated its previous arguments to the EPO and made minor amendments responsive to certain EPO objections. (Ex. 9.) The matter remains under submission before the EPO.

### III.   ARGUMENT

#### A.   Legal Standards

This Court has the inherent power to stay proceedings pending the reexamination of a patent by the PTO. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Card Tech. Corp. v. Datacard Corp.*, No. 05-2546, 2007 WL 551615, at *2 (D. Minn. Feb. 21, 2007). Given the value that reexamination proceedings have in addressing patent scope and validity issues, courts have "adopted a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *VData LLC v. Aetna, Inc.*, No. 06-1701, 2006 WL 3392889, at *4 (D. Minn. Nov. 21, 2006) (Ericksen, J., adopting report and recommendation); *accord ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). As a result, courts "routinely" stay infringement actions pending the outcome of reexamination proceedings. *CNS, Inc. v.*

*Silver Eagle Labs, Inc.*, No. 04-968, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004); *accord VData LLC*, 2006 WL 3392889, at *8 (D. Minn. Nov. 21, 2006) (Ericksen, J.); *Card Tech. Corp.*, 2007 WL 551615, at *2 (D. Minn. Feb. 21, 2007); *see also Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000) (collecting cases).

In deciding to stay litigation pending reexamination, many courts cite to the PTO's expertise and the potential of eliminating a trial altogether:

> One purpose of the reexamination procedure is to eliminate trial of that issue [invalidity] (when the claim is canceled) or to facilitate trial of that issue [invalidity] by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).

*Gould*, 705 F.2d at 1342. The statutory reexamination procedure permits "the reexamination of patent validity in an impartial forum at almost 100 times less cost to the parties by people trained to understand the technologies described in patents." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 68 (D.D.C. 2002) (citation omitted). What is more, in the "likely scenario" that the claims are changed in reexam, *CNS*, 2004 WL 3631121, at *2, it will "result in a clarification of the infringement issues for trial." *VData LLC*, 2006 WL 3392889, at *6 (Ericksen, J.). Essentially, "the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims" or changed claims. *Id.* (quoting *Softview Computer Prods.*, 56 U.S.P.Q.2d at 1636).

In determining whether to stay litigation pending reexamination, courts generally consider the following factors:

    (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;

    (2) whether a stay will simplify the issues in question; and

    (3) whether discovery is complete and whether a trial date has been set.

*VData LLC*, 2006 WL 3392889, at *5 (Ericksen, J.); *accord Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2003 WL 23303473, at *2 (D. Minn. Nov. 19, 2003). Each of the three factors supports a stay of this litigation.

    **B.**    **The Court Should Stay this Case Pending Completion of the Reexamination Proceeding**

        **1.**    **A Stay Will Not Unduly Prejudice TimeBase or Create a Clear Tactical Disadvantage**

A stay will not impose undue prejudice or a clear tactical disadvantage on TimeBase. TimeBase has long known of the prior art references upon which reexamination was sought and granted. It also has known that claims virtually identical to those in the '592 patent have been rejected in Europe based on the prior art references. Indeed, TimeBase for years has been trying without success to obtain claims in Europe over the same prior art references. TimeBase presumably weighed its options and decided to commence litigation against defendants fully aware that the '592 patent was a ripe candidate for reexamination. Now that reexamination has been granted, a stay should follow.

TimeBase cannot accuse defendants of engaging in dilatory tactics by seeking a stay. Defendants did not seek reexamination. The request was filed by a third party. This fact alone negates any such claim by TimeBase. *See Guthy-Renker Fitness, L.L.C.*

*v. Icon Health and Fitness, Inc.*, 48 U.S.P.Q.2d 1058, 1061 (C.D. Cal. 1998) (noting that because the party seeking the stay did not request the reexamination, there was no reason to believe that it was "utilizing any dilatory tactics by requesting a stay pending the outcome of the PTO's examination").

Furthermore, a stay will not prejudice any rights that TimeBase may have if it ultimately prevails at trial. TimeBase does not sell, and has not sold, any products in the United States under the '592 patent. Courts have held that, under such circumstances, money damages are adequate to compensate a patentee for any infringing acts that occur during a stay of litigation pending reexamination. *See, e.g.*, *Guthy-Renker*, 48 U.S.P.Q.2d at 1061 (explaining that defendant-patentee "has failed to explain why money damages will not be adequate if it prevails at trial"); *Gioello Enters.*, 2001 WL 125340, at *1 (finding no prejudice from a stay and that money damages would be an adequate remedy where patentee was not selling goods or services relating to the patent-in-suit). Even if TimeBase were selling a product, this Court has previously held that "any prejudice to the party opposing the stay could be ultimately remedied through an injunction and money damages." *VData LLC*, 2006 WL 3392889, at *5 (Ericksen, J.). And in fact, rather than incur prejudice, TimeBase will stand to share in the benefits from awaiting the results of the reexamination. A stay will permit TimeBase to avoid unnecessary litigation costs that might otherwise be incurred by engaging in discovery and other proceedings that may need to be repeated after the reexamination. *See id.* at *8 ("Court finds that a stay would likely conserve discovery resources because it would

potentially enable the parties to focus their discovery efforts on a narrower set of issues.").

Finally, TimeBase cannot argue that any prejudice exists from the fact that the '592 patent will be challenged in the PTO and this Court. First, defendants did not request the reexamination and have no role in the reexamination proceedings. Second, this type of second-bite-at-the-apple argument has been specifically rejected by this Court because in "creating the reexamination process, Congress countenanced a scheme in which a patent's validity may come under attack in both a courtroom and the PTO." *VData LLC*, 2006 WL 3392889, at *5 (Ericksen, J.).

### 2. A Stay Will Simplify the Issues in Question and the Trial of this Case

Staying this litigation pending completion of reexamination will provide a number of benefits. *See, e.g.*, *VData LLC*, 2006 WL 3392889, at *6 (Ericksen, J.). Some of the benefits gained by the Court and the parties include:

1. The new prior art will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

      6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

      7. The cost will likely be reduced both for the parties and the court.

*Id.* Without a stay, neither the parties nor the Court will reap the rewards that come from allowing the PTO reexamination proceedings to take precedence. In short, a stay promotes the most efficient expenditure of judicial resources.

A significant benefit to awaiting the results of the reexamination is that some or all of the claims may be amended, canceled, or invalidated. Under these circumstances, it would be a waste of resources to allow this case to continue while the reexamination process is ongoing. *See VData LLC*, 2006 WL 3392889, at *6 (Ericksen, J.) ("An obvious benefit to a stay in terms of judicial economy is that the PTO could potentially eliminate trial on the issue of infringement."). If the litigation proceeds and the PTO subsequently finds that some or all of the claims in reexamination are invalid, the judiciary and the parties will have wasted resources addressing invalid claims:

> It would be a serious waste of both the parties' and the Court's resources if the Markman and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

*Id.* at *8 (quoting *Softview Computer*, 56 U.S.P.Q.2d at 1636). Similarly, resources would be wasted if the end result of the reexamination proceedings is that the PTO allows new claims or modifies old claims because fact and expert discovery, *Markman* proceedings, and summary judgment would likely need to be revisited. *CNS*, 2004 WL 3631121, at *2 ("[T]he more likely scenario is that the Court will revisit issues, prior art, and claim differences addressed in the reexamination proceedings . . . .").

In this case, there is an especially high probability that the claims in the '592 patent will be changed or canceled.  Historically, when the PTO orders a reexamination, all claims are canceled in approximately 10% of the cases and claims are changed in approximately 64% of the cases; thus, claims in reexamined patents are changed or invalidated in 74% of the cases. (Ex. 1.)  Here, given what has transpired in connection with the European counterpart to the '592 patent, it is even more likely that the claims of the '592 patent will be changed or canceled as a result of reexamination.  It makes little sense to proceed with this litigation when the final form of the claims will remain uncertain until after completion of the reexamination.  *See, e.g.*, *Card Tech. Corp.*, 2007 WL 551615, at *3 (D. Minn. Feb. 21, 2007) ("In short, common sense counsels that it is usually prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents.").

### 3. The Early Stage of this Case Strongly Favors a Stay

Courts routinely grant stays where a case is at the earliest stages of litigation because more of the benefits of a stay will be realized.  *See, e.g.*, *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. 06-2252, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) (granting stay where discovery had just begun); *ASCII Corp.*, 844 F.Supp. at 1381 (granting stay where the parties had undertaken little or no discovery).  In this District, when no discovery has occurred, a "stay pending reexamination is **routinely ordered**." *VData LLC*, 2006 WL 3392889, at *8 (D. Minn. Nov. 21, 2006) (Ericksen, J.) (emphasis added) (quoting *CNS*, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004)); *accord Card Tech. Corp.*, 2007 WL 551615, at *2, 7 (D. Minn. Feb. 21, 2007).

This case is at the earliest stages of litigation. TimeBase commenced this action on January 24, 2007, in the United States District Court for the Northern District of Illinois. Because the allegations in the Complaint centered on activity in Minnesota and had no connection to Illinois, Thomson filed a motion to transfer the action and also for a more definite statement because the Complaint failed to identify the accused products. The federal court in Illinois granted Thomson's motion on March 9, 2007, and transferred the case to this Court. TimeBase then amended its Complaint to add two additional parties and to specifically identify the accused products, but no other significant activity has occurred. A pretrial conference has been scheduled for the same time as the hearing on this motion (June 28, 2007). Accordingly, a pretrial schedule or trial date has not yet been set. In addition, while the parties have met and conferred about discovery issues, they have not yet exchanged initial disclosures or commenced discovery. Under these circumstances, this District's precedent strongly favors a stay. *E.g.*, *VData LLC*, 2006 WL 3392889, at *8 (Ericksen, J.) ("As discovery has not yet begun in the present case, the Court finds that a stay would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues. Therefore, a stay is particularly appropriate.").

Moreover, the policy in favor of staying a lawsuit pending reexamination proceedings is so favored that many courts enter stays even when the litigation has progressed beyond the early stages. *See, e.g.*, *Gould*, 705 F.2d at 1342 (upholding stay

granted by district court several years after commencement of litigation and twenty days before scheduled trial date).[3]  Such courts conclude that the interests underlying the reexamination procedure "are better served by granting a stay at [that] point than by denying it and allowing the trial on the merits to continue parallel to the reexamination procedure."  *Grayling Indus.*, 19 U.S.P.Q.2d at 1874.  Here, where discovery has not even begun, "the stay's benefit to the discovery process is maximized."  *VData LLC*, 2006 WL 3392889, at *8 (Ericksen, J.).

## **CONCLUSION**

If the '592 patent emerges from reexamination, its claims will likely differ from what they are today.  Thus, the outcome of the reexamination proceedings in the PTO will likely affect each and every aspect of this case.  Staying this litigation promotes both judicial economy and fairness and will not prejudice TimeBase, who has long known of the prior art references.  Accordingly, the defendants respectfully request that the Court stay this litigation pending conclusion of the reexamination proceedings before the PTO and all appeals.

---

[3]  *See also Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1892 (N.D. Ill. 1987) (granting stay despite significant discovery); *Softview Computer*, 56 U.S.P.Q.2d at 1636 (same); *Robert H. Harris Co. v. Metal Mfg. Co.*, No. 90-179, 1991 WL 217666, at *3-4 (E.D. Ark. June 21, 1991) (granting stay just one month before trial); *Grayling Indus., Inc. v. GPAC, Inc.*, 19 U.S.P.Q.2d 1872, 1873 (N.D. Ga. 1991) (granting stay despite nearly two years of discovery and entry of final pre-trial order).

| | |
|---|---|
| Dated: June 14, 2007 | **FAEGRE & BENSON LLP** |
| | |
| | *s/ Chad Drown* |
| | Calvin L. Litsey #153746 |
| | David J.F. Gross, #208772 |
| | Chad Drown, #319053 |
| | Timothy E. Grimsrud, #34283X |
| | Elizabeth Wright, #387126 |
| | |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, Minnesota 55402 |
| | Telephone:  (612) 766-7000 |
| | Fax:  (612) 766-1600 |
| | |
| | **Attorneys for Defendants** |

fb.us.2110645.08