IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., ) | |
| ) | File No. 07-CV-1687 (JNE/JJG) |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| THE THOMSON CORPORATION, WEST ) | **TIMEBASE'S RESPONSE TO** |
| PUBLISHING CORPORATION, AND WEST ) | **THOMSON'S MOTION FOR A** |
| SERVICES, INC. ) | **STAY** |
| ) | |
| Defendants. ) | |

## I.   INTRODUCTION

Thomson's motion for stay ignores the meet and confer between counsel for Timebase and Thomson's lawyers leading up to the present motion. Specifically, Timebase's counsel did not indicate that Timebase was opposed to a stay. Rather, in order to maximize the efficacy of such a procedure associated with the reexamination proceedings (and to minimize the prejudice to Timebase and the waste of judicial resources), Timebase indicated that it would agree to a stay under certain provisions:

1)   that Thomson agree to file its own reexamination request (if any) within a short timeframe (say, 60 days) in order to minimize the delay from any reexamination;

2)   that Thomson agree to provide any printed publications that it presently possessed which it believed to be prior art to the '592 patent (again, to minimize the duplication of proceedings); and

3)   that Thomson agree to be bound as to the Patent Office's decision with respect to the patentability of any of the '592 patent claims versus any prior art allegation based upon any printed publication submitted to the Patent Office.

In response, counsel for Thomson (Mr. Litsey) indicated that the defendants likely would not proceed with their own reexamination request, but refused to produce any alleged printed

publications in its possession, much less agree to be bound as to any Patent Office decisions about such publications. Furthermore, insofar as Thomson (through its present motion) fails to make any offering to agree to avoid filing any delayed or untimely reexamination request of its own, Timebase is left to conclude that Thomson has rejected all three of the terms that Timebase has requested. Thus, while Timebase does not oppose any kind of stay *per se*, it is forced to file the present opposition to address the terms of the stay which Thomson has rejected.

## II.   THE LEGAL STANDARD

The decision to grant or deny a stay pending the outcome of a PTO proceeding rests with the sound discretion of the Court. *VData LLC et al. v. Aetna, Inc. et al.*, Civ. Action No. 06 cv 1701 slip op. at 8 (October 31, 2006) (Nelson, M.J.) (Exhibit A) (citing *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp.1378, 1380 (N.D. Cal. 1994), see also, *Grayling Ind., Inc., et al. v. GPAC, Inc.*, No. 1:89-cv-451-ODE, 1991 U.S. Dist. LEXIS 16750, at*3 (N.D. Ga. Mar. 25, 1991) (Exhibit B). One of the seminal cases addressing the Court's scope of discretion to stay proceedings is the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936). In his opinion for the Court, Mr. Justice Cardozo wrote:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. * * * [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else .

*Id.* at 254-55 (citations omitted; emphasis supplied). As at least one district court has observed three significant points from the *Landis* case in determining whether a stay pending patent office proceedings is appropriate:

> First and foremost is the burden on the party seeking the stay to make out a clear case of hardship or inequity in being required to go forward if the imposition of a stay might harm the opposing party. Second is that the court may consider, but

> <u>need not regard as dispositive, the extent of participation of the non-moving party in the proceeding in favor of which a stay is sought, as well as the extent to which the non-moving party will be bound by the result of that other proceeding.</u> Finally, it is an abuse of discretion to grant a stay for an indefinite period of time, even in a case of great public moment like Landis, absent a showing of "pressing need."

*Unidisco, Inc. v. Schattner*, 1981 U.S. Dist LEXIS 14890 at *16 (D. Md. 1981) (Exhibit C). Thus, the Court has the power to compel a defendant to be bound by the result of patent proceedings that are used to justify a stay of litigation in the district court. *See, e.g., Slimfold Mfg. Co. Inc. v. Kinkead Indus. Inc.*, 600 F. Supp. 1015, 1020 (N.D. Ga. 1984); *see also Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 WL 6314 at *2, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) (Exhibit D). In other words, while the Court may exercise its discretion to issue a stay in this case, it is equally within the Court's discretion to tailor any such stay "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1  As shown below, each of the proposals that Timebase has proposed ensures just such a just, speedy and inexpensive result.

**III.   THE DEFENDANTS SHOULD FILE THEIR OWN REEXAMINATION OF THE '592 PATENT (IF ANY) PROMPTLY**

Too often, as in these examples, reexaminations are simply a basis to delay -- a strategic use of the reexamination process disapproved by the Federal Circuit. *In re Recreative Technologies Corp.*, 83 F.3d 1394, 1397 (Fed. Cir. 1996). While reexamination was enacted into law "to provide an expeditious and low cost alternative to patent litigation," it "*is frequently neither quick nor inexpensive*. Instead, it has become *a tactical weapon frequently deployed by defendants in patent infringement actions*." (Exhibit E, James L. Wamsley, "A view of Proposed Amendments to Patent Reexamination Through the Eyes of a Litigator," IDEA: THE JOURNAL OF LAW AND TECHNOLOGY (1996)) (emphasis added).

This is how reexamination is being deployed here. Some supposedly anonymous third party (anonymous at least to Timebase) filed its request for reexamination only after Timebase accused Thomson as well as several other parties of infringement. The reexamination request apparently is not even based on the allegedly invalidating prior art that is in Thomson's possession. This sort of conduct indicates that the request for reexamination is a litigation tactic developed by Thomson in concert with other infringers to delay the final resolution of this case, rather than an expeditious and low cost alternative to litigation. Furthermore, the delays we can expect in a reexamination proceeding – 20 months or more (see Exhibit 1 to the Drown Dec. at 3) – hardly serves the goal of providing an "expeditious and low cost alternative" to litigation, especially if there is the risk that Thomson could file a further reexamination request with additional prior art months or even years from now. Following are just a couple of recent examples of the inefficiencies of the reexamination process that we have experienced:

● *Hewlett-Packard v. J. Carl Cooper, et al.*, Civil Action No. C98-01129SI (N.D. Cal. 1998): A reexamination began on September 9, 1999, and concluded nearly three years later in July 2002. Immediately after the reexamination concluded, Hewlett-Packard brought a motion for summary judgment of invalidity that could have been resolved three years earlier. The case settled.

● *TechSearch v. Internet Entertainment Group, Inc., et al.*, Civil Action No. 00 C 4623 (N.D. Ill. 2000). A reexamination request was made on June 9, 2000. While the plaintiffs will finally get their reexamination certificate in the next couple of months, it is still pending despite the fact that the patent infringement suit has been stayed for more than six years.

Too often, as in these three examples, reexaminations are simply a basis to delay – a strategy that defendants use to delay an adjudication of meritorious infringement claims. The Federal Circuit has rejected this brand of "strategic" use of the reexamination process in words

4

that are germane here: "The legislative record and the record of the interested public reflect a serious concern that reexamination not create new opportunities for abusive tactics and burdensome procedures." *In re Creative Technologies Corp.*, 83 F.3d at 1397.

In order to address the potential harm from such unreasonable delays, Courts have the ability to lift or limit stays of litigation where the defendants "file multiple requests for reexamination for the purpose of delay[.]" *Ingro v. Tyco Indus., Inc.*, 1985 U.S. Dist. LEXIS 19300 at *6, 227 U.S.P.Q. 69 (N.D. Ill. 1985) (Exhibit G); *Sulzer Inc. v. Black Clawson Co.*, 1995 U.S. Dist. LEXIS 8328, 1995 WL 363440 (S.D.N.Y. 1995) (Exhibit H). In the present case, Timebase has requested that <u>if</u> Thomson decides to file its own request for reexamination to go along with the pending, anonymous request, that Thomson do so promptly (e.g., within the next 60 days) in order to avoid the abuses proscribed by *Ingro* and *Sulzer*. Thomson, for its part, indicated in the "meet and confer" leading up to the present motion that it would probably not file its own request for reexamination. However, its present motion is silent, just as that motion is likewise silent about why it could not agree to this condition to a stay. Requiring Thomson to comply with this condition is not unreasonable.

**IV.   THE DEFENDANTS SHOULD PROVIDE ANY ALLEGED
        PRIOR ART PUBLICATIONS IN THEIR POSSESSION PROMPTLY**

The defendants' answer and affirmative defenses to Timebase's complaint as well as its response in the "meet and confer" to the present motion make clear that the defendants have alleged prior art references that they intend to rely upon to invalidate the '592 patent. The defendants, however, have refused to produce such references to Timebase, thus preventing those references from being placed before the Patent Office for an independent expert review by an Examiner. Unless the defendants produce any such alleged prior art, a stay would be

5

inappropriate because the reexamination, would not resolve all issues related to invalidity in this litigation:

> As a result, this court is the only forum for a complete consideration of [defendant's] evidence of invalidity. Unless all claims of the patent were cancelled as a result of the reexamination, validity would remain a contested issue in this action, as not all the prior references material to a determination of validity would have been considered by the PTO.... Accordingly, issuance of a stay pending reexamination would not serve Congress' intent of simplifying the issues and reducing the complexity of the trial.... After the reexamination, the parties would be right back in this court.

*Gladish v. Tyco Toys, Inc.*, 29 USPQ.2d 1718, 1720 (E.D. Cal. Sept. 16, 1993) (Exhibit I). See also *Emprotech Corp. v. Autotech Corp.*, 15 USPQ.2d 1319, 1320 (N.D. Ill. Mar. 15, 1990 (Exhibit J).

Of course, Thomson will likely cite the statistics of the Patent Office and argue that it is probable that all of the '592 patent claims will be amended. Thomson, however, mischaracterizes the statistical data regarding reexamination when it suggests "three out of four reexamined patents incur some change to the claims" (Thomson Mem. at 4). Where, as here, a third party requests reexamination, the PTO statistics show that ***all*** claims of a patent are confirmed in 30% of the cases and in 58% ***some*** of the claims of a patent are changed. 86 J. Pat. & Trademark Off. Soc'y 441 at *461 (Exhibit K). Thus, there is an 88% chance that at least one claim will remain unchanged, and a patent is considered infringed if only a single claim is infringed. *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1562 n.8 (Fed. Cir. 1996) ("Infringement of one valid and enforceable patent claim is all that is required for liability to arise."); *Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed."). Thus, the proper statistical analysis actually proves the opposite of what Thomson contends. The <u>only</u> way to support the

efficiency of what Thomson proposes is to make sure that Thomson produces all of the alleged prior art in its possession so that the validity of the '592 patent is addressed in <u>one</u> proceeding.

## V. THE DEFENDANTS HAVE NOT AGREED TO BE BOUND BY ANY REEXAMINATION

There is more proof of the defendants' use of a stay purely for their own benefit, and with disregard for the ultimate burden on the Court and Timebase. The defendants have argued that one of the benefits of stay based upon reexamination is that such a stay will allow the parties and the Court to take advantage of the PTO's conclusions regarding prior art. (Defs. Brf. at Page 2).

But the defendants have avoided saying that they will be bound by, or that they will defer to, or even that they will give any consideration to the views of the patent examiner after the completion of the reexamination of the '592 patent. Thus, it is quite likely that the defendants will continue to contest the validity of the '592 patent despite any favorable review by the Patent Office.

The defendants want to have it both ways. They want Timebase to go through the reexamination while they sit on the sidelines. Then, if the reexamination results in a decision by the examiner that is not to their liking, they have reserved for themselves the right to re-argue every decision by the patent examiner in the original prosecution and in the reexamination. They have reserved for themselves the right to argue that every piece of prior art considered by the examiner during the original prosecution or reexamination must be considered again by this Court and by a jury. Litigation is not supposed to be immortal. Rule 1 of the Federal Rules of Civil Procedure says that the goals of litigation include speed and simplicity. Yet, the defendants are not willing to allow the reexamination to simplify this litigation in any way unless it turns out in their favor.

In *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 WL 6314 at *2, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) (Exhibit D), the court agreed to stay an infringement suit <u>but only</u> on the condition that the defendant would be bound by the result:

> Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality.

(Exhibit D, 1987 U.S. Dist. LEXIS 15033 at #11). If the defendants now want a stay as to the '592, they should be required to agree to be bound by the reexamination as a condition of that stay. Otherwise, the defendants will be seeking to multiply the proceedings.

## VI.  <u>CONCLUSION</u>

Timebase recognizes that – under certain conditions – the expert review of the Patent Office can benefit the litigation process. However, certain common sense conditions for that review should be incorporated: 1) the reexaminations should not be multiplied through piecemeal or serial reexamination requests; 2) <u>all</u> the purportedly relevant prior art should be before the Examiner; and 3) the reexamination should not be a dress rehearsal for Thomson to reargue issues which are ultimately rejected by the Examiner. Thus, Timebase respectfully requests that this Court issue a stay <u>only</u> under the three conditions set forth above.

Respectfully submitted,

 /s/ Arthur A. Gasey
Joseph N. Hosteny
Arthur A. Gasey
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733

Michael R. Cunningham
Gray, Plant & Mooty
500 IDS Center
80 South Eighth Street

Minneapolis, Minnesota 55402
Phone: 612/632-3000
Fax: 612/632-4444
[michael.cunningham@gpmlaw.com](mailto:michael.cunningham@gpmlaw.com)
Attorneys for TimeBase Pty Ltd.

Case 0:07-cv-01687-JNE-JJG   Document 43   Filed 06/21/2007   Page 9 of 10

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **TIMEBASE'S RESPONSE TO THOMSON'S MOTION FOR A STAY** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their email address on file with the Court on June 21, 2007.

*Attorneys For Thomson*

David J.F. Gross
Calvin L. Litsey
Chad Drown
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Phone:  612-766-7000
Fax:  612-766-1600
clitsey@faegre.com
dgross@faegre.com
cdrown@faegre.com


/s/  Arthur A. Gasey