# Exhibit E

to

## TIMEBASE'S RESPONSE TO THOMSON'S MOTION FOR A STAY

*589

Copyright © 1996 by the PTC Research Foundation of Franklin Pierce Law Center
IDEA: The Journal of Law and Technology
1996

# A VIEW OF PROPOSED AMENDMENTS TO PATENT REEXAMINATION THROUGH THE EYES OF A LITIGATOR

James L. Wamsley [na1]

## I. INTRODUCTION

There are a number of problems with the current patent reexamination procedure which are addressed by bills now pending in Congress. [n1] Enacted into law in 1980 to provide an expeditious and low cost alternative to patent litigation, reexamination today is frequently neither quick nor inexpensive. Instead, it has become a tactical weapon frequently deployed by defendants in patent infringement actions. Even Judge Nies has charged that Federal Circuit decisions have "made reexamination into a proceeding which affords advantages to an infringer over his position in court." [n2] District courts are often eager to enhance those advantages by entering stays of proceedings pending resolution of a reexamination. [n3] A patent infringement defendant who has been unsuccessful in invalidating a patent in court may nonetheless prevail in a *590 reexamination. [n4] Also commonplace are second or third requests for reexamination, even when the first request has not yet been resolved.

Under the pending bills, the reexamination statute would:
  . Be broadened to permit the patent office to reexamine patents for compliance with 35 U.S.C. § 112, except for the best mode requirements;
  . Permit third-party requesters to submit comments in reply to the patent owner's submissions in response to office actions;
  . Permit third-party requesters the right to appeal from final decisions favorable to the patentability of any claim, or to participate in an appeal taken by the patent owner;
  . Estop third-party requesters who file or participate in such an appeal from later challenging the validity of any claim found patentable on appeal on any ground that was or could have been raised during the reexamination;
  . Prohibit a party from filing a subsequent request for reexamination of a patent until their prior request has been resolved by issuance of a reexamination certificate;
  . Prohibit a party who failed to prove a patent invalid in litigation from filing a subsequent reexamination request; and
  . Permit the patent office to consolidate its action on a request for reexamination with a first office action.

In August, 1995, the PTO took the unusual step of issuing proposed rules intended to implement these changes before they were enacted into law. [n5] This article addresses a number of glaring omissions and questions raised and left unanswered by these legislative and rulemaking proposals.

*591 II. UNANSWERED ISSUES

A. § 112 Issues as a Basis for Reexamination

The pending bills would retain the standard that reexamination is to be initiated if it is determined that a "substantial new question of patentability affecting any claim" of a patent is raised by the request for reexamination. [n6] However, every patent application is examined for compliance with the provisions of § 112. Unlike the new questions of novelty and obviousness which can arise when new prior art is presented, issues such as whether the patent claims are enabled or indefinite do not change. To reexamine an issued patent on that basis is therefore to challenge the correctness of the PTO's determination in the first instance. It is difficult to see how any issue of compliance with § 112 could ever present a "substantial new question of patentability," except perhaps for a question regarding the disclosure of the "best mode," which, oddly enough, is the one issue the bills would exclude from reexamination.

B. Expanded Participation Rights for Third Parties

By expanding the rights of a third party requester to participate in reexaminations, reexaminations will become more like opposition proceedings. If the current bills are enacted into law, the examiner will receive a reply from the third party requester after the patent owner has responded to an office action. [n7] The examiner will therefore be handed a tailor-made script which could be used in rejecting the patent claims. How will examiners--who would otherwise have the sole responsibility for developing each of their office actions and articulating the basis for them--respond to these third party submissions? The proposed legislation provides no guidance on what burden of proof, if any, applies to the requesters or in what circumstances examiners would be entitled to rely on their submissions. Moreover, the current bills favor the requester, rather than the patent owner, with the right to have the last word in response to an examiner's office action. This raises substantial questions of fairness.

*592 C. The Presumption of Validity

The Federal Circuit ruled en banc in 1985 that the statutory presumption of validity [n8] has no application in reexamination proceedings, although the statute is silent on the question. [n9] The court reasoned that the presumption was:

[A] rule of procedure placing the burden of persuasion on him who attacks a patent's validity. There is no such attacker in a reexamination, and hence no one on whom that burden may be placed. [n10]

With expanded participation rights for third party requesters under the proposed legislation, the Federal Circuit's rationale will no longer apply. The third party requester will be an "attacker" in the proceedings. There is nothing in the bills which would overrule the Etter decision, however. Reexamination would become an inter partes procedure in which the patentee does not have the benefit of the presumption of validity, even in those instances in which the references being debated are the same ones over which the examiner allowed the claims originally. This would permit requesters to sidestep the "clear and convincing evidence" burden of proof which is imposed in district court proceedings on those who seek to invalidate U.S. patents.


D. Resolving Factual Disputes

If the bills become law, the enhanced rights of participation provided third parties will ensure that there will be frequent factual disputes during contested reexaminations. For example, is there any real objective evidence of nonobviousness? Was there a "long-felt need" for the invention? Is there a nexus between the invention and a commercially successful product? What was the level of skill in the art? Was the patent disclosure sufficient to enable its practice without undue experimentation? Conflicting evidence may be offered on these and many other issues.

The examiners who consider reexaminations are neither trained nor experienced in the practice of fact-finding. The bills provide no guidance for an examiner who will confronted by a voluminous paper *593 record full of factual disputes. How should an examiner decide the facts? What standard should be employed?

In addition, one may justifiably question whether it is appropriate for examiners to be made into fact-finders, as the proposed legislation contemplates. Although examiners are responsible for making patentability determinations, their traditional role is to ensure that patent applications meet the statutory requirements through one or more adversarial exchanges with the applicant. To charge examiners with responsibility for resolving factual disputes between a patent owner and a third party requester raises a substantial question of procedural fairness. The Administrative Procedure Act establishes explicit restrictions in adjudicatory proceedings which are intended to ensure that a hearing examiner's decisionmaking is independent of those individuals engaged in investigative or prosecutorial functions. [n11] By saddling patent examiners with both investigative and fact-finding responsibilities in reexaminations, the pending bills contemplate a flawed procedure which deviates from the administrative norm.


E. Rules of Evidence

The PTO does not regard itself as bound by rules of evidence such as the hearsay rule in the ex parte examination of patent applications. [n12] Will the PTO continue to adhere to this approach in the proposed new inter partes reexamination procedures? To do so would be inconsistent with the PTO's approach in other types of inter partes proceedings, such as trademark oppositions. The proposed legislation provides no guidance on this issue. The following simple hypothetical demonstrates the potential for problems arising from that omission.

Suppose one of the prior art references on which reexamination is ordered was published three months before the patent's filing date. The patent owner submits a Rule 131 affidavit swearing behind the reference, but the requester responds with another affidavit. The requester's affidavit, sworn to by one of their employees, claims that the inventor told him two years ago that the invention was made on a later date. The second affidavit is of course hearsay when offered to prove the date of invention, but apparently would nonetheless be considered and could be relied on by the examiner in resolving that issue.


*594 F. Duty of Candor

The pending bills do not mention the duty of candor, which applies to reexamination under current PTO rules. [n13] However, the rules proposed by the PTO to implement the legislation would make the duty of candor apply only to the patent owner and to "every other individual who is substantively involved on behalf of the patent owner in a reexamination proceeding." [n14] In view of the proposed expansion of the rights of third parties to participate in reexaminations, there is no apparent reason to limit application of the duty of candor solely to the patent owner. Why should a requester be permitted to mislead the examiner and withhold material information supporting patentability with impunity?

The third party requester's right of participation in the reexamination process should carry with it a companion obligation under the duty of candor. For example, assume under the above hypothetical that the requester knew that their employee was lying about the purported conversation with the inventor in his affidavit. Should the requester's violation of the duty of candor be ignored?


G. Issue Preclusion

The proposed legislation attempts to address the current problem of  "double-dipping," whereby a third party requester who is unsuccessful in persuading the PTO that the claims are unpatentable may still challenge their validity in court. The pending bills provide that the third party requester will be precluded from doing so if it participates in an appeal from the examiner's decision. Because preclusion would attach only upon the exercise of appeal rights, the proposal suffers from the same defect as the current law. A

third party requester who wants to avoid being foreclosed from challenging the validity of the patent in court may do so by simply declining to participate in an appeal.


*595 H. Participation in Interviews

   The proposed legislation is silent on the question of participation in interviews by third parties, but the proposed PTO rules would supply that right when the patent owner requests an interview. [n15] The likely result of such a rule would be that fewer interviews would be requested, and those which actually take place would be more like oral arguments than interviews. The PTO's legal authority to authorize third party participation in interviews is questionable, since the proposed legislation is totally silent on the matter and such participation is not permitted under the current PTO rules.


I. Delay and Dollars

   Unfortunately, the net effect of many of the proposed amendments would be to take one step forward and two steps backwards. The reexamination procedure will not be accelerated, but delayed. Problems will multiply rather than disappear. The PTO will be left to fend for itself without the kind of clear legislative guidance that Congress could and should provide.

   On average, a reexamination proceeding under current law lasts more than a year and a half. If H.R. 3460 and S. 1070 were enacted, it would increase that pendency time further because the examiners would be required to consider questions under § 112 in addition to prior art issues, together with the comments of third party requesters on each office action. Opening up appeal rights to third party requesters would delay even further the final resolution of reexaminations.

   Delay in reexaminations increases costs, both for the patent owner and for the PTO. More examiner time would be required to handle reexaminations and resulting appeals under the proposed law. The patent owner would also have to devote more time and resources to the reexamination proceeding. A lengthened reexamination pendency also decreases the value of a patent since courts are often unwilling to proceed with infringement cases while the patent is undergoing reexamination.

   Under the proposed legislation, reexamination--originally intended by Congress to be a streamlined, inexpensive alternative to district court litigation--would be transformed into a more burdensome administrative proceeding. Moreover, reexamination will continue to *596 permit a defendant to delay infringement litigation yet still challenge patent validity in district court if patentability is confirmed by the PTO.


III. CONCLUSION

The current reexamination procedure is far from perfect. However, the proposals now before Congress, coupled with the PTO's proposed regulations appear to substitute even more substantial problems for those they seek to solve. Congress needs to start from scratch if the reexamination process is to be improved.

[na1]. Mr. Wamsley is a Partner at Jones, Day, Reavis & Pogue in Cleveland, Ohio. He received his J.D. from the University of Michigan in 1975; and B.S.E.E. from the University of Virginia in 1972. This article is adapted from a speech delivered at the January, 1996 meeting of the Association of Corporate Patent Counsel. The article reflects the views of the author and does not necessarily reflect the views of the Association.

[n1]. H.R. 1732, S. 1070, 104th Cong., 1st Sess. (1995). The text of H.R. 1732 was combined with that of other bills to make up a new bill. H.R. 3460, 104th Cong., 2nd Sess. (1996). H.R. 3460 was approved by the House Judiciary Committee on June 11, 1996.

[n2]. In re Etter, 756 F.2d 852, 862, 225 U.S.P.Q. (BNA) 1, 8 (Fed. Cir. 1985), cert. denied, 474 U.S. 828 (1985) (concurring opinion).

[n3]. See Steven M. Auvil, Note, Staying Patent Validity Litigation Pending Reexamination: When Should Courts Endeavor To Do So?, 41 CLEV. ST. L. REV. 315 (1993).

[n4]. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 7 U.S.P.Q.2d (BNA) 1152 (Fed. Cir. 1988).

[n5]. 60 Fed. Reg. 41,035 (1995) (to be codified in 37 C.F.R. § § 901 et seq.) (proposed Aug. 11, 1995).

[n6]. The bills--like the current statute--do not define what constitutes a "substantial new question of patentability." 35 U.S.C. § 303(a) (1994).

[n7]. The Federal Circuit has held that the courts lack authority under the current law to compel a patentee to permit others to participate in a reexamination. Emerson Elec. Co. v. Davoil, Inc., No. 96-1202 (Fed. Cir. July 9, 1996).

[n8]. 35 U.S.C. § 282 (1994).

[n9]. In re Etter, 756 F.2d 852, 225 U.S.P.Q. (BNA) 1 (Fed. Cir.), cert. denied, 474 U.S. 828 (1985).

[n10]. Id. at 858-59, 225 U.S.P.Q. (BNA) at 5.

[n11]. 5 U.S.C. § 554(d) (1994).

[n12]. In re Epstein, 32 F.3d 1559, 31 U.S.P.Q.2d (BNA) 1817 (Fed. Cir. 1994).

[n13]. 37 C.F.R. § 1.555 (1995).

[n14]. See 60 Fed. Reg. 41,045 (1995) (to be codified at 37 C.F.R. § 1.933) (proposed Aug. 11, 1995).

[n15]. See 60 Fed. Reg. 41,046 (1995) (to be codified at 37 C.F.R. § 1.955) (proposed Aug. 11, 1995).