UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., ) | Case No. 07-CV-4551 (JNE/JJG) |
| ) | Case No. 07-CV-1687 (JNE/JJG) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **DEFENDANTS' MEMORANDUM** |
| ) | **ADDRESSING ISSUES RELATED** |
| THE THOMSON CORPORATION, ) | **TO THE RECONSIDERATION OF** |
| WEST PUBLISHING CORPORATION, ) | **THE ORDERS DENYING A STAY** |
| and WEST SERVICES, INC., ) | **OF THE '228 CASE (NO. 07-4551)** |
| ) | **AND LIFTING THE STAY OF THE** |
| Defendants. ) | **'592 CASE (NO. 07-1687)** |
| ) | |

## INTRODUCTION

Just last month, the United States Patent and Trademark Office ("PTO") issued an office action in its reexamination of the '592 patent in which the PTO rejected each and every claim of the '592 patent. As a result of this action, the claims of the rejected '592 patent and the consolidated case involving the related '228 patent are completely in flux. TimeBase may respond to this office action by amending the rejected claims. It may write new claims. It may make specific arguments regarding the scope of the prior art or the scope of its claims, including arguments that would apply to both patents in suit because of their significant overlap. No matter how TimeBase responds or what the outcome of the reexamination is, however, to proceed with litigation when the status of the rejected '592 patent is uncertain would impose a substantial burden on both the Court and the parties and result in an inefficient use of their time and resources.

It is now virtually certain that the reexamination will impact the scope of discovery, deposition strategy, claim construction, infringement and invalidity positions and contentions, expert reports, and nearly all other aspects of the case. As the reexamination continues, the parties will need to alter and modify their positions over the course of the litigation as claim language is changed or stricken and the intrinsic record evolves. The Court, too, will be faced with this ever-changing record, in which the time it spends may be for naught as the reexamination alters the claim language and intrinsic record. All of these problems can be avoided by staying this two-patent case until the reexamination proceedings have concluded.

Accordingly, in view of the PTO's rejection of the '592 patent, and for the reasons previously explained by defendants in their appeal papers, defendants respectfully request that the Court reconsider and vacate the Magistrate Judge's order lifting the stay of the '592 case and declining to stay the '228 case and instead issue an order staying the consolidated cases until the PTO completes its reexamination of the '592 patent.

## **BACKGROUND**[1]

TimeBase brought suit against defendants The Thomson Corporation, West Publishing Corporation, and West Services, Inc. ("defendants") on the '592 patent in

---

[1] Defendants provided a detailed background of the facts and procedural history of this litigation in their Memorandum of Law in support of their Appeal of and Objections to the Orders Denying a Stay of the '228 Case (No. 07-4551) and Lifting the Stay of the '592 Case (No. 07-1687) ("Defendants Appeal Brief"). (Ex. 1.) The Exhibits to this Memorandum are numbered and referred to as "Ex. __." An index of the Exhibits has been filed along with this Memorandum.

January of 2007. (Ex. 2 at 2.) Magistrate Judge Graham stayed the '592 case in June of 2007 after the PTO granted a third party's request for reexamination of the '592 patent. (*Id.* at 3.)

In November of 2007, the '228 patent issued as a continuation-in-part of the '592 patent. (*Id.* at 2.) TimeBase immediately sued defendants on the '228 patent and listed the case as a related case to the '592 action. (*Id.*) Defendants moved to consolidate the two cases and to stay the consolidated lawsuit pending reexamination of the '592 patent. (*Id.* at 1.) Magistrate Judge Graham consolidated the two cases, but declined to stay the '228 case and *sua sponte* lifted the stay of the '592 case. (*Id.*) Defendants appealed the portions of Magistrate Judge Graham's Order declining to stay the '228 case and lifting the stay of the '592 case. (Ex. 1.)

On March 28, 2008, while defendants' appeal was pending, the PTO issued an office action rejecting all fifty-eight claims in the '592 patent as unpatentable over one of the references included in the request for reexamination. (Ex. 3.) TimeBase has two months in which to respond to this rejection (Ex. 3 at 3), unless it seeks and receives an extension (*see* 37 C.F.R. § 1.550(b)-(c) (2008)). In its response, TimeBase is likely to propose amendments to the rejected claims, suggest new claims, and/or make arguments in support of patentability. *See id.*

Defendants notified the Court by letter of April 1, 2008 of the PTO's rejection of all of the '592 claims. (Docket No. 35.) On April 17, 2008, TimeBase sent the Court a letter in which TimeBase characterized the PTO's rejection and made a number of arguments regarding the impact of the PTO's rejection on defendants' appeal ("April 17

letter"). (*See* Ex. 4.) On April 18, 2008, the Court issued an Order indicating that it was reconsidering the decisions to lift the stay of the '592 case, to consolidate the '592 and '228 cases, and to decline to stay the '228 case, and allowing the parties to submit memoranda addressing these issues. (Docket No. 38.)

## ARGUMENT

**I.     The Relevant Factors Support a Stay of this Lawsuit**

Courts consider the following three factors when determining whether to grant a stay pending reexamination:

1. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;

2. whether a stay will simplify the issues in question; and

3. whether discovery is complete and whether a trial date has been set.

*See VData LLC v. Aetna, Inc.,* No. 06-1701, 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006) (Ericksen, J., adopting report and recommendation).

Staying this lawsuit pending the outcome of the '592 reexamination will simplify and focus the issues related to the '592 patent and the consolidated case.[2] The PTO's rejection of all the claims in the '592 patent means that those claims effectively no longer

---

[2] Because the "prejudice or tactical disadvantage" and "stage of discovery" factors favoring a stay have not significantly changed as a result of the PTO's rejection of the '592 patent, defendants refer the Court to Defendants Appeal Brief (Ex. 1) for defendants' previous arguments on these issues. If anything, as discussed below, the PTO's office action further weakens any alleged risk of prejudice to TimeBase from delaying the lawsuit during reexamination. *See, e.g., Ricoh Co. Ltd. v. Aeroflex Inc.,* Nos. 03-4669, 03-2289, 2006 WL 3708069, at *2 (N.D. Cal. Dec. 14, 2006).

-4-

exist. TimeBase must now amend the '592 claims, submit entirely new claims, or argue that the original claims are valid. *See* 37 C.F.R. § 1.550(b); *see also Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 WL 3104794, *5 (E.D. Mich. Oct. 22, 2007) ("The statistics recited by both parties indicated that patent claims are invalidated or modified in over 70% of reexamination proceedings conducted.").

Magistrate Judge Graham's decision to lift the stay of the '592 patent may have been partially based on a belief that this rejection was unlikely to occur because the same art that was the subject of the reexamination had not precluded the '228 patent from issuing. When discussing the reason for lifting the stay of the '592 case, the Order states:

> The Court stayed the '592 litigation on June 29, 2007, before the '228 patent issued and before the instant lawsuit commenced. While the circumstances existing at that time made that stay appropriate, things have changed. **A PTO examiner has now indicated that the prior art references at issue in the reexamination did not preclude issuance of the '228 patent. While the '592 examiner could conclude otherwise**, **the record now before the Court supports moving forward with the litigation**.

(Ex. 2 at 10 (emphasis added).) The PTO's office action in which it rejected each of the '592 patent claims constitutes a significant change in the record, as one court concluded under similar circumstances:

> [T]he circumstances surrounding the PTO's reexamination of the '432 patent have changed since Defendants' previous request for stay. The Court's primary concern regarding this factor in denying Defendants' previous request was the unpredictability of the PTO's reexamination proceedings. However, that is no longer an issue for concern. As explained above, the PTO has *specifically rejected each of the '432 patent claims* and has done so in a relatively expeditious manner. As a result the likelihood that the PTO's reexamination and expertise would assist the Court in determining patent validity, or potentially eliminating the need to try the action, has increased significantly.

*Ricoh Co. Ltd. v. Aeroflex Inc.*, Nos. 03-4669, 03-2289, 2006 WL 3708069, at *4 (N.D. Cal. Dec. 14, 2006) (emphasis original).

Not only are the benefits recognized by the *Ricoh* court more likely now, but to proceed with litigation when the status of the rejected '592 patent is uncertain would be a significant burden to both the Court and the parties and a substantial waste of their time and resources. For example, any amendments to the '592 claims or submissions of new claims in the '592 patent could change the inventorship on the '592 patent, mooting discovery of persons now named as inventors of the '592 patent who may be eliminated, as well as requiring additional discovery into any newly named inventors. Similarly, the scope and content of the relevant prior art could change if TimeBase amends the claims and/or makes statements about the claims or prior art in response to the rejection. The futility of proceeding at this point is demonstrated by TimeBase's requests for production of documents, many of which defendants already have had to object to on the grounds that the '592 patent's claims have been rejected and so "the scope of those claims cannot be determined at this time." (Ex. 5 at 5.) It would greatly benefit the parties and the Court to stay the case so that "the bulk of the discovery will be sought or pursued after, and with the benefit of, the reexamination." *See CNS Inc. v. Silver Labs, Inc.*, No. 04-968, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004).

The uncertain status of the '592 claims affects not only fact discovery, but virtually every aspect of the case. The Court's construction of the claims, for example, may be significantly affected as a result of modifications to the claims or statements

made about their scope or their relationship to the prior art. *See Alza Corp. v. Wyeth*, No. 06-156, 2006 WL 3500015, *2 (E.D. Tex. Nov. 24, 2006) ("Furthermore, the issue of claim construction will be simplified if a stay is granted. Because statements made during the reexamination proceedings become part of the prosecution history, a stay will allow the intrinsic evidence to be fully developed before this court begins the claim construction process.") (granting stay pending reexamination); *Donnelly*, 2007 WL 3104794, at *6 ("[A]ll of the expensive activity for experts and *Markman* has not yet begun, and it does not make sense to begin it with a reexamination pending. 'It would be a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.'") (quoting *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000)) (granting stay pending reexamination). Just as this Court concluded in *VData*, a stay of the '592 case pending the result of the reexamination would simplify issues relating to (1) fact discovery, (2) expert discovery, (3) discovery motions, (4) *Markman* hearings, (5) dispositive motion practice, and (6) the trial itself. 2006 WL 3392889 at *6. To move forward with the '592 case based on the now-rejected '592 claims would be a "serious waste of both the parties' and the Court's resources." (*Id.* at *8 (citation omitted).)

In an attempt to downplay the impact of the PTO's office action on the stay analysis, TimeBase asserts in its April 17 letter that the rejection makes the scope of the '592 reexamination "narrower than was the case when Judge Graham made her decision"

because the PTO relied on only one of the three references cited in the third party request for reexamination. (Ex. 4, p. 1.) The fact that the office action relied on one reference is irrelevant to the stay analysis. Before the PTO's rejection, when Magistrate Graham made her decision, there was only the possibility that some or all of the '592 claims would be rejected. Now, all of the claims in the '592 patent *have been* rejected, and TimeBase must respond to that rejection. This development plainly favors staying the current litigation, regardless of the number of references relied upon by the PTO or the "narrowness" of the rejection.

The PTO's rejection of the '592 claims also moots the purported changes in circumstances that TimeBase asserts justifies lifting the stay of the '592 case. (Ex. 6 at 7.) Any concerns about the lack of an office action in the reexamination proceedings and the duration of the reexamination have been eliminated or minimized now that the PTO has acted to reject the '592 claims, especially in view of the statutory mandate that reexaminations proceed "with special dispatch." *See* 35 U.S.C. 305 (2008); *see also Ricoh*, 2006 WL 3708069, at *5. Furthermore, because the '592 patent is involved in litigation, the reexamination will "have priority over all other cases." *See* Manual of Patent Examining Procedure § 2261 (2007); *Donnelly*, 2007 WL 3104794, at *2; *Alza*, 2006 WL 3500015, at *1.

Given the PTO's rejection of every claim in the '592 patent, a stay of the '592 case is plainly warranted.

## II. The Court Should Not Permit Piecemeal Litigation of the Patents-in-Suit

It is possible that TimeBase may argue that, even with a stay of the '592 case, the Court nonetheless should move forward with litigation over the '228 case because the '228 patent is not part of the reexamination proceedings. Such an approach would be unwarranted for two reasons. First, the close relationship between the '592 patent and the '228 patent means that the reexamination proceedings may directly impact the construction of the '228 patent's claims and their relationship to the prior art. Second, because the same parties, accused products, and technology are involved in both cases, and because the cases share overlapping witnesses, documents and other discovery, proceeding with the cases separately would not be an efficient use of the Court's and the parties' time and resources.

The '592 and '228 patents are closely related. The '228 patent is a continuation-in-part of the '592 patent and includes the entire specification of the '592 patent. Therefore, the prosecution history of the reexamination of the patent is relevant to claim construction of the '228 patent and informs any infringement and invalidity analysis. *See Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) (arguments and amendments regarding claim term made during prosecution of earlier patent relevant to claim construction of same term in subsequent related patent); *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.") (citation omitted).

In view of the law, TimeBase's assertion that the PTO's rejection of the '592 claims "has *no bearing* on the '228 patent" is simply incorrect. (See Ex. 4 at 2 (emphasis added).) So is TimeBase's statement that "there is no chance that '228 claims will be narrowed because some claims of the '592 patent would be changed or invalidated." (See Ex. 7 at 8.) There is no question that statements made by TimeBase during the '592 reexamination can affect the '228 claims. And now that the PTO has rejected the claims of the '592 patent, it is even more likely that the reexamination proceedings will have an impact on the '228 patent. No matter how TimeBase responds to the PTO's rejection, its response may significantly affect the construction of the '228 patent's claims and how they are viewed in relation to the prior art.

Staying both cases also would result in the most efficient use of the Court's and the parties' resources. As Magistrate Judge Graham properly recognized, the '592 and '228 cases involve common questions of both law and fact and therefore "judicial economy dictates litigating the two cases together."[3] (Ex. 2 at 7, 10.) Because the same parties are involved, the patents are closely related, and TimeBase has accused the same products, the cases involve common questions of law and fact and should remain consolidated. *See 3M Co. v. Moldex-Metric, Inc.*, No. 06-4044, 2006 WL 3759758, at *1-2 (D. Minn. Dec. 21, 2006); s*ee also Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No.

---

[3] TimeBase did not appeal the consolidation of the '592 and '228 cases within 10 days of being served with the February 26, 2008 Order, and is now precluded from doing so. *See* D. Minn. LR 72.2(a).

06-514, 2007 WL 2892707, at *4 (D. Del. Sept. 30, 2007) (same parties); Fed. R. Civ. P. 42(a)(2) (2008).

Courts in this district faced with multi-patent suits have determined that the better course is to stay the entire proceeding rather than litigate the patents piecemeal. As the court concluded in *Card Tech. Corp. v. Datacard Corp.*, No. 05-2546, 2007 WL 2156320, at *4-6 (D. Minn. July 23, 2007), "splitting an infringement action so as to proceed with one portion while the rest [is] stayed [is] not the most prudent course." Other cases have taken a similar approach. *See VData*, 2006 WL 3392889, at *8 ("this factor weighs strongly in favor of **staying the entire case** pending reexamination of only the [earlier] patent, even if the PTO does not grant reexamination of the [later] patent" (emphasis added)); *CNS*, 2004 WL 3631121, at *1 ("There are few efficiencies to be found in engaging in discovery and trial on one patent, while staying the case on a second patent, particularly where there is only one accused product and where the patents share some common prosecution history."); *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337, 2003 WL 23303473, at *3 (D. Minn. Nov. 19, 2003) (rejecting alternative of "proceeding ahead with the two patents not under reexamination" as "impracticable, if not impossible"). Given that the '592 case must be stayed, judicial economy also requires a corresponding stay of the '228 case.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request this Court to reinstate the stay of the '592 case and stay the '228 case pending reexamination of the '592 patent.

| | |
|---|---|
| Dated: April 25, 2008 | **FAEGRE & BENSON LLP** |

By: *s/ Calvin L. Litsey*
Calvin L. Litsey #153746
David J.F. Gross, #208772
Shawn T. Gordon, # 336439
Kevin P. Wagner, # 34008X

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Fax: (612) 766-1600
Email: clitsey@faegre.com
Email: dgross@faegre.com
Email: sgordon@faegre.com
Email: kwagner@faegre.com

**Attorneys for Defendants The Thomson Corporation, West Publishing Corporation, and West Services, Inc.**

fb.us.2807728.03