# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

# <u>EXHIBIT B</u>

Dockets.Justia.com

# AIPLA's Model Patent Jury Instructions

© 2008, American Intellectual Property Law Association

Disclaimer

The Model Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been and will be made to ensure that the Model Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent that the information contained in the Model Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

# Table of Contents

Introduction
**Preliminary Jury Instructions**
I.   The Nature of the Action and the Parties
   A.  United States Patents
   B.  Patent Litigation
II.  Contentions of the Parties
III. Trial Procedure
Glossary of Patent Terms
Glossary of Technical Terms
**Post-Trial Instructions**
1.  Summary of Patent Issues
Claim Construction
   2.0   Claim Construction – Generally
   2.1   Claim Construction for the Case

   2.2   Construction of Means-Plus-Function Claims for the Case Infringement
   3.0   Infringement – Generally
   3.1   Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial
   3.2   Direct Infringement – Literal Infringement
   3.3   Inducing Patent Infringement
   3.4   Contributory Infringement
   3.5   Infringement of Means-Plus-Function Claims
   3.6   Infringement of Dependent Claims
   3.7   Infringement of Open Ended or "Comprising" Claims
   3.8   Infringement by supply of all or a substantial portion of the components of a patented invention to another country (271(f)(1))
   3.9   Infringement by supply of components especially made or adopted for use in the patented invention to another country (271(f)(2))
   3.10  Infringement by Import, Sale, Offer for Sale or Use of Product Made Outside United States by Patented Process (infringement under 271(g))
   3.11  Direct Infringement – Infringement Under The Doctrine Of Equivalents
   3.12  Limitations on the Doctrine of Equivalents – Prior Art
   3.13  Limitations on the Doctrine of Equivalents – Prosecution History Estoppel
   3.14  Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public
4.  Summary of Invalidity Defense
5.  Prior Art Defined
Anticipation
   6.0   Anticipation

6.1   Prior Public Knowledge
6.2   Prior Public Use
6.3   On Sale Bar
6.4   Experimental Use
6.5   Printed Publication
6.6   Prior Invention
6.7   Prior Patent
6.8   Prior U.S. Application

Obviousness

7.0   Obviousness
7.1   Scope and Content of the Prior Art
7.2   Differences Between the Claimed Invention and the Prior Art
7.3   Level of Ordinary Skill
7.4   Factors Indicating Nonobviousness
8.   Enablement
9.   Written Description Requirement
10. Best Mode

Unenforceability (Inequitable Conduct)

11.0   Inequitable Conduct - Generally
11.1   Materiality
11.2   Intent to Deceive or Mislead
11.3   Balancing of Materiality and Intent

Damages

12.0   Damages – Generally
12.1   Date Damages Begin
        Alternate A [When the date of the notice of infringement is stipulated]
        Alternate B [When the date of the notice of infringement is disputed]
        Alternate C [When the date damages begin is the date the lawsuit was filed]
12.2   Two Types of Damages – Lost Profits and Reasonable Royalty
12.3   Lost Profits – "But-For" Test
12.4   Lost Profits – Panduit Factors
12.5   Lost Profits – Panduit Factors— Demand
12.6   Lost Profits – Panduit Factors— Acceptable Non-Infringing Substitutes

12.7   Lost Profits – Panduit Factors— Capacity
12.8   Lost Profits – Panduit Factors— Amount of Profit Incremental Income Approach
12.9   Lost Profits – Market Share
12.10 Lost Profits – Price Erosion
12.11 Lost Profits – Cost Escalation
12.12 Lost Profits – Collateral Sales
12.13 Lost Profits – Doubts Resolved Against Infringer
12.14 Reasonable Royalty – Generally
12.15 Reasonable Royalty – Definition
12.16 Reasonable Royalty – Relevant Factors
12.17 Reasonable Royalty – Timing
13. Willful Infringement
Acknowledgments

# Introduction

### 1. The 2007 Version

In the Winter of 2007, the Patent Litigation Committee of the American Intellectual Property Law Association undertook the task of updating the AIPLA Model Patent Jury Instructions ("Instructions") to take into account changes to the law since the previous version of the Instructions were published.  The Instructions were originally created in 1997 and were updated previously in 2005.  A Subcommittee was formed to review recent case law and make any necessary changes to the Instructions.  These changes included not only revising the Instructions to take into account recent case law, but to also revise the Instructions to make them simpler and more easily understandable to jurors.  The current revision includes case law through December 31, 2007.

One of the fundamental goals of the Instructions is to provide a model set of jury instructions that would not be biased in

Defendant]'s actions.  [The Plaintiff] must prove that it was more probable than not that its costs went up because of [the Defendant]'s actions, and not for some other reason.

*Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-1325 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1120 (Fed. Cir. 1996).

### 12.12  Lost Profits – Collateral Sales

In this case, [the Plaintiff] contends that the patented product is ordinarily sold along with [collateral products].  To recover lost profits on sales of such collateral products, [the Plaintiff] must prove two things.  First, that it is more likely than not that [the Plaintiff] would have sold the collateral products but for the infringement.  Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit.  Damages for lost profits on lost collateral sales, if any, are calculated in the same manner as I just described for calculating lost profits on the patented product.

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984).

### 12.13  Lost Profits – Doubts Resolved Against Infringer

All doubts resulting from [the Defendant]'s failure to keep proper records are to be resolved in favor of [the Plaintiff].  Any incorrectness or confusion in [the Defendant]'s records should be held against [the Defendant], not [the Plaintiff].

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 12.14  Reasonable Royalty - Generally

If you find that [the Plaintiff] has not proven its claim for lost profits, or if you find that [the Plaintiff] has proven its claim for lost profits for only a portion of the infringing sales, you must then determine what a reasonable royalty would be for that portion of [the Plaintiff]'s sales for which you have not awarded lost profit damages. The patent law specifically provides that the amount of damages that [the Defendant] must pay [the Plaintiff] for infringing [the Plaintiff]'s patent may not be less than a reasonable royalty for the use that [the Defendant] made of [the Plaintiff]'s invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. [The Plaintiff] is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits damages.

2007 Model Patent Jury Instructions

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

### 12.15  Reasonable Royalty – Definition

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a [[person] [company]] in the position of [the Defendant] taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971).

### 12.16  Reasonable Royalty – Relevant Factors

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

2007 Model Patent Jury Instructions