*P U B L I C* **S T R A T E G I E S** *I N C*

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

INCLUDING ATTORNEY-CLIENT PRIVILEGED INFORMATION

AND ATTORNEY WORK PRODUCT

This Confidentiality and Non-Disclosure Agreement (this "Agreement") is made and entered into effective April 3, 2008 (the "Effective Date") by and between Public Strategies, Inc., a Texas Corporation and Gass Weber Mullins LLC with offices located at 309 North Water Street, Milwaukee, WI 53202. **Gass Weber Mullins is retaining Public Strategies in anticipation of litigation with Greg Lemond and Lemond Cycling, Inc. Public Strategies will assist Gass Weber Mullins so that strategic internal and external communications are consistent with and in furtherance of Trek's litigation goals and strategies.**

    1.    Purpose. Public Strategies, Inc. and Gass Weber Mullins LLC wish to pursue, investigate, and, if mutually agreed in writing, enter into a mutual business transaction and relationship. In this regard, the parties desire to disclose certain confidential business information to each other that the disclosing party desires the receiving party to treat as strictly confidential under the terms of this Agreement. In addition, Public Strategies will have access to Gass Weber Mullins' mental impressions, legal strategies and other attorney work product

    2.    Definition. The parties agree that any and all information, in whatever format, provided by the disclosing party to the receiving party, whether verbally or in writing, is proprietary, attorney work product or otherwise confidential to the disclosing party, and is confidential information subject to the provisions hereof (the "Confidential Information"). Confidential Information does not include: (a) information that is or becomes publicly known other than through a breach of this agreement, or (b) is already known to the receiving party on a non-confidential basis at the time of the disclosure as evidenced by written documentation. Notwithstanding anything to the contrary in this Agreement, it is expressly agreed by the parties that nothing herein obligates a party to disclose any Confidential Information to the other party.

    3.    Non-Disclosure of Confidential Information. The receiving party agrees to hold such Confidential Information in strict confidence and: (a) use such information only for the purpose of pursuing and investigating a possible mutual business transaction and relationship and for no other purpose; (b) reproduce such information only to the extent necessary for such purpose; (c) to not disclose such Confidential Information to the receiving party's employees, except to those employees and to the receiving party's attorneys, accountants and lenders who are required to have the information in order to carry out the investigation of the contemplated transaction; and (d) not disclose such Confidential Information to any party other than the disclosing party, including the fact that the receiving party entered into this Agreement and any associated discussions with the disclosing party, without the prior written consent of the disclosing party, unless required by legal process. In the event that the receiving party receives a request to disclose all or any part of the Confidential Information under a subpoena, or inquiry issued by a court of competent jurisdiction or by a judicial or administrative agency or legislative body or committee, the receiving party shall (a) immediately inform the disclosing party of all relevant information concerning said request or inquiry so that the disclosing party and its clients may take appropriate actions to maintain confidentiality and protection of said information; and (b) cooperate with the disclosing party and its clients to reasonably protect the confidentiality and protection of said information. The receiving party agrees that it shall take all reasonable steps to protect the secrecy of and avoid disclosure or use of Confidential Information by unauthorized persons. The receiving party agrees to immediately

Weber Decl., Exhibit E

notify the disclosing party in writing of any misuse or misappropriation of such Confidential Information, which may come to the receiving party's attention. For the benefit of the disclosing party the receiving party shall obtain from its employees having access to the Confidential Information, a confidentiality agreement consistent with the terms hereof. The receiving party shall be responsible for any breach of this Agreement by any party receiving Confidential Information from the receiving party.

4.  Standard of Care. The receiving party agrees to use the same degree of care and discretion, but no less than a reasonable degree of care and discretion, to prevent unauthorized disclosure, publication, or dissemination of the Confidential Information as it employs with similar information of its own. Disclosure of the Confidential Information may only be made to employees of the receiving party who are directly involved in the transaction that is the subject matter of this Agreement, who are informed of its confidential nature, and who have executed confidentiality agreements substantially similar to this Agreement prior to the receiving the Confidential Information. The receiving party shall implement and provide reasonable security mechanisms (including but not limited to passwords and other security measures) designed to prevent accidental disclosure of any Confidential Information in violation of the terms hereof. The receiving party will segregate all Confidential Information from other files in its offices. The receiving party agrees promptly to notify the disclosing party immediately in writing of any actual or suspected misuse or misappropriation of such Confidential Information which may come to its attention

5.  Return of Materials. Immediately after the business possibility contemplated under this Agreement has been terminated, or at any time upon written request by the disclosing party, the receiving party shall return to the disclosing party all copies of documents, papers or other material, in any format, relating to the disclosing party obtained or developed in the course of the discussions, or containing or derived from Confidential Information which are in the receiving party's possession, together, if requested by the disclosing party, with a certificate signed by the receiving party, in form and substance satisfactory to the disclosing party, to the effect that all such Confidential Information has been returned or destroyed.

6.  Indemnity. THE RECEIVING PARTY SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS THE DISCLOSING PARTY AGAINST ANY AND ALL LOSSES, DAMAGES OR CLAIMS (INCLUDING REASONABLE LEGAL FEES) INCURRED BY THE DISCLOSING PARTY AS A RESULT OF THE RECEIVING PARTY'S BREACH OR ALLEGED BREACH OF THIS AGREEMENT.

7.  Term. This Agreement will continue in full force and effect for so long as the disclosing party continues to provide Confidential Information to the receiving party and for a period of three (3) years thereafter. Notwithstanding the return or destruction of any Confidential Information, the receiving party shall continue to be bound by its obligations of confidentiality and other obligations hereunder.

8.  No Warranty. All Confidential Information provided under this Agreement is delivered "AS IS" without any express or implied representation or warranty as to quality or accuracy. Each party specifically disclaims the warranties of fitness for a particular purpose, merchantability, and non-infringement.

9.  **No Rights or License.** Nothing contained in this Agreement may be construed as giving any rights in (express or implied) or license to use the Confidential Information made available hereunder other than as contemplated by this Agreement.

10. **Miscellaneous.** This Agreement shall be binding upon and for the benefit of the undersigned parties, their successors and assigns, provided that Confidential Information may not be assigned. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement contains the entire agreement between the parties with respect to the subject matter contained herein and supersedes any previous understandings, commitments or agreements, oral or written.

11. **Remedies.** Each party agrees that its obligations hereunder are necessary and reasonable in order to protect the other party and the other party's business, and expressly agrees that monetary damages would be inadequate to compensate the other party for any breach of any covenant or agreement set forth herein. Accordingly, each party agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to the other party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the other party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach.

12. **Representations.** Each party represents that it has full power and authority to enter into and perform under this Agreement.

13. **Status of Parties.** Nothing in this Agreement shall be construed to place the parties in the relationship of joint venturers, partners, associates, or principal and agent without a separate agreement to that effect.

14. **Severability.** If any provision of this Agreement is held by final judgment of a court of competent jurisdiction to be invalid, illegal or unenforceable, such invalid, illegal or unenforceable provision shall be severed from the remainder of this Agreement, and the remainder of this Agreement shall be enforced. In addition, the invalid, illegal or unenforceable provision shall be deemed to be automatically modified, and, as so modified, to be included in this Agreement, such modification being made to the minimum extent necessary to render the provision valid, legal and enforceable.

15. **Governing Law.** This Agreement shall be governed by, construed and interpreted in accordance with the laws of the State of Texas without regard to any applicable choice of law rules.

16. **Survival.** The receiving party's foregoing obligations under this Agreement shall survive the expiration or termination of this Agreement for any reason whatsoever.

17. **Conflict.** It is agreed that in the event the parties enter into a mutual business transaction that Public Strategies will not perform services for Lance Armstrong or any of his affiliated companies while under contract to perform services for Gass Weber Mullins LLC or Trek Bicycles.

THE PARTIES AGREE THAT THE OBLIGATIONS SET FORTH HEREIN ARE BINDING COMMITMENTS OF THE PARTIES TO THE EXTENT SET FORTH HEREIN; HOWEVER, THESE COMMITMENTS DO NOT BIND ANY PARTY TO PROCEED WITH ANY OTHER COOPERATIVE ACTIVITIES OR AGREEMENTS.

Weber Decl., Exhibit E

The parties have executed this Agreement as of the Effective Date.

| Public Strategies, Inc. | Gass Weber Mullins LLC |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Bill Coletti | Name: Ralph Weber |
| Title: Managing Director | Title: Member |
| Date: 4/3/08 | Date: 4/3/08 |