Timebase Pty Ltd v. Thomson Corporation, The Doc. 108 Att. 13





C

United States District Court,
D. Minnesota.
Gail BREDEMUS, Patricia Anderson, Nancy Benjamin, Donna Budreau, Carol Glidden, Phyllis Hagen, Kenneth Howard, Yvonne Littlewolf, Donna Morgan, Donna Oachs, Simone Pemberton, Brenda Smith, Sharon Villier, Linda Herrera, Lashelle Masten, Larry Swanson, Leonard Swanson, Lonnie Swanson, Loren Swanson, and Luther Swanson, Plaintiffs,
v.
INTERNATIONAL PAPER COMPANY, a New York corporation, f/k/a Champion International Corporation, f/k/a St. Regis Paper Company, f/k/a Wheeler Lumber Bridge and Supply Company; Burlington Northern and Santa Fe Railway Company, a Delaware corporation, f/k/a Great Northern Pacific & Burlington Lines, f/k/a Great Northern Railway Company; Dow Chemical Company, a Delaware corporation; and Pharmacia Corporation, f/k/a Monsanto Company, a Delaware corporation, Defendants.
**Civ. No. 06-1274 (PJS/RLE).**

Sept. 10, 2008.

**Background:** Individuals allegedly injured due to their exposure to pentachlorophenol and other chemical agents that were produced by chemical manufacturers and released during operations of wood treatment plant belatedly moved to compel discovery from chemical manufacturers five months after receiving manufacturers' responses to their discovery requests.

**Holding:** The District Court, Raymond L. Erickson, Chief United States Magistrate Judge, held that plaintiffs were not entitled to discovery from these manufacturers of information regarding "Agent Orange" and other products that manufacturers had produced, but that were not shown to have been involved in operations of wood treatment plant, based solely on possibility that documents relating to these other chemicals might be relevant to health effects of pentachlorophenol, especially given plaintiffs' delay in filing motion to compel.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure 170A ⚷1262.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1262 Nature and Purpose
170Ak1262.1 k. In General. Most Cited Cases

Overriding purpose of federal discovery rules is to promote full disclosure of all facts to aid in the fair, prompt and inexpensive disposition of lawsuits.

**[2] Federal Civil Procedure 170A ⚷1272.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1272 Scope
170Ak1272.1 k. In General. Most Cited Cases

While standard of what is "relevant" information, for discovery purposes, is liberal one, relevancy under discovery rule is not without bounds. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⚷1272.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1272 Scope
170Ak1272.1 k. In General. Most Cited Cases

Discovery rules do not allow fishing expeditions; some threshold showing of relevance must be made before parties are required to open wide the doors

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Dockets.Justia.com

of discovery, and to produce variety of information which does not reasonably bear on issues in case. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⚷1272.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1272 Scope
170Ak1272.1 k. In General. Most Cited Cases

Despite the liberality of discovery, court will remain reluctant to allow any party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on theory that it might conceivably become so. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⚷1267.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1267 Discretion of Court
170Ak1267.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⚷1271**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1271 k. Proceedings to Obtain. Most Cited Cases

Trial court generally has considerable discretion in granting or denying discovery requests, and it is no abuse of discretion for court to deny discovery request that is untimely.

**[6] Federal Civil Procedure 170A ⚷1271**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1271 k. Proceedings to Obtain. Most Cited Cases

**Federal Civil Procedure 170A ⚷1272.1**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1272 Scope
170Ak1272.1 k. In General. Most Cited Cases

Individuals allegedly injured due to their exposure to pentachlorophenol and other chemical agents that were produced by chemical manufacturers and released during operations of wood treatment plant were not entitled to discovery from these manufacturers of information regarding “Agent Orange” and other products that manufacturers had produced, but that were not shown to have been involved in operations of wood treatment plant, based solely on possibility that documents relating to these other chemicals might be relevant to health effects of pentachlorophenol, especially where motion to compel was untimely filed five months after plaintiffs' receipt of chemical manufacturers' responses to discovery requests, two months after close of discovery; timeliness and relevancy concerns warranted denial of motion to compel.

***530** Don Russo, Miami, FL, Gary M. Hazelton, Bemidji, MN, James P. Carey, Sieben Grose Von Holtum & Carey, Ltd., Minneapolis, MN, Mark L. Rodgers, Bemidji, MN, Thomas V. Girardi, Girardi Keese, Los Angeles, ***531** CA, Thomas J. Johnston, Los Angeles, CA, William J. Delmore, Kelsch Kelsch Ruff & Kranda, Mandan, ND, Shannon C. Keil, Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, MN, for Plaintiffs.

Cory D. Olson, Joseph W. Anthony, Steven M. Phillips, Cheryl A. Stanton, Courtland C. Merrill, Anthony Ostlund Baer Louwagie & Ross P.A., Minneapolis, MN, John F. Cermak, Jr., Ryan D. Fischbach, Sonja A. Inglin, Baker & Hostetler, LLP, Los Angeles, CA, Patrick W. Dennis, Gibson Dunn & Crutcher LLP, Los Angeles, CA, R. Raymond Rothman, Bingham McCutchen LLP, Los Angeles, CA, Robin Caneff Gipson, Timothy R. Thornton, Matthew R. Brodin, Timothy G. Gelin-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ske, Briggs & Morgan, PA, Minneapolis, MN, Gabrielle Sigel, Joanne Hannaway Sweeney, Lise T. Spacapan, Stacy S. Jakobe, Traci M. Braun, Zachary V. Moen, Jenner & Block, LLP, Chicago, IL, James A. Sherer, Lynn S. Looby, Midland, MI, Monte A. Mills, Sarah L. Brew, Greene Espel, Minneapolis, MN, C. Ron Hobbs, II, J. Eric Berry, Jerry K. Ronecker, Justin A. Relihan, Kenneth R. Heineman, Joseph Orlet, Husch Blackwell Sanders LLP, St. Louis, MO, George W. Flynn, Jennifer Flynn Rosemark, Robert W. Vaccaro, Flynn Gaskins & Bennett, LLP, Minneapolis, MN, for Defendants.

ORDER

RAYMOND L. ERICKSON, Chief United States Magistrate Judge.

I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Plaintiffs to Compel the Production of Documents from the Defendants Pharmacia Company f/k/a Monsanto Company ("Pharmacia"), and Dow Chemical Company ("Dow"). A telephonic Hearing on the Motion was conducted on August 28, 2008, at which time, the Plaintiffs appeared by Gary M. Hazelton, Esq.; Pharmacia appeared by C. Ron Hobbs II and Kenneth R. Heineman, Esqs.; and Dow appeared by Lise T. Spacapan and Traci M. Braun, Esqs.[FN1] For reasons expressed below, we deny the Plaintiffs' Motion.

FN1. No formal appearance was made by, or on behalf of, the remaining parties.

II. *Factual Background*

In this personal injury action, twenty (20) individual Plaintiffs assert that they were harmed from exposure to five (5) chemical agents which were released from a former wood treatment plant in Cass Lake, Minnesota (the "Cass Lake facility," or the "Superfund site"). The Plaintiffs have claimed several distinct injuries comprising eleven (11) forms of cancer, as well as neuropsychological impairments. Two (2) of the Defendants, International Paper Company, and its predecessor-in-interest, Burlington Northern Santa Fe Railway Company, are alleged to have caused the release of the chemicals at the Cass Lake facility. The other two (2) Defendants, Dow and Pharmacia, are each accused of negligently manufacturing and distributing a chemical used at the Cass Lake facility. This case has been designated as a related case to *Bennett v. International Paper Company* ("*Bennett Litigation* "), Civ. No. 05-0038 (PJS/RLE), for purposes of pre-Trial discovery. See, *Docket No. 98.*

As is pertinent here, the Second Amended Complaint makes the following allegations:

15. The Cass Lake Plant used two, and later three, distinct chemical mixtures to treat the wood products. One mixture was creosote. Another mixture consisted of pentachlorophenol ("PEN") in powder or flake form, purchased from Defendants Dow Chemical Company ("Dow") and Pharmacia Corporation ("Pharmacia"), to which No. 2 fuel oil was added. Later a premixed PEN compound replaced use of the dry chemical. In later years a third method called the "chemnite," which used ammonia and other chemicals, was used. From the inception of the chemnite process until the plant closed in late 1985, all three timber treatment methods were used. * * *

16. In its operations, the Cass Lake Plant released hazardous substances and hazardous waste contaminated with toxic chemicals, including, but not limited to dioxin, ***532** creosote, PEN, arsenic, polyaromatic hydrocarbons ("PAH"), fuel oil and their hazardous by-products, into the soil, groundwater and the air.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

* * *

19. The wood treatment process created a variety of waste; polluted land and water from chemicals dripping from the tanks and treated wood, sludge cleaned from the cylinders, waste and trash from the "tee pee" burners, and other fumes emanating from the routine and ordinary operation of the plant. These waste products include, but are not limited to, various congeners of dioxins, dibenzo furans, benzo (a) anthracene, benzo (a) pyrene, dibenz(ah)anthracene, unreacted PEN, and other noxious and poisonous substances.

* * *

23. At all times relevant herein, Defendants Dow and Pharmacia manufactured, distributed and sold PEN, a chemical used in treating wood. At all times relevant to this dispute, both Defendants Dow and Pharmacia sold PEN to Defendant International Paper for use as a wood processing and treatment chemical.

*Second Amended Complaint, Docket No. 249,* at ¶¶ 15-16, 19, 23.

The deadline for the completion of discovery was June 12, 2008, while the deadline for non-dispositive Motions was August 29, 2008. See, *Docket No. 182.*

On January 22, 2008, the Plaintiffs served Requests for the Production of Documents on both Pharmacia and Dow. See, *Plaintiffs' Memorandum in Support, Docket No. 291,* at 2. In its requests to Dow, and as pertinent here, the Plaintiffs generally sought documents relating to "2, 4, 5, T/ TCDD/Dioxin/Agent Orange," which were produced by Dow, between 1964 and 1966, particularly relating to a meeting on March 24, 1965, between Dow, Monsanto Company, and others (the "1965 meeting"). *Id.,* Exhibit B. On February 25, 2008, Dow served its responses and objections, in which it asserted, in part, that the requested documents are irrelevant to the issues in this matter, given that 2,4,5-T and Agent Orange are herbicide products, and "were not for use at wood treatment plants such as Cass Lake."*Id.,* Exhibit B at 2. Dow also asserted that the "TCDD/dioxin," which is referenced by the Plaintiffs' requests, "has not been found in Dow pentachlorophenol." *Id.* Lastly, Dow asserted that the requested documents, relating to Agent Orange and TCDD "are publicly available from the Washington National Records Center (WNRC) in Suitland, Maryland * * *." *Id.,* Exhibit B at 3.

In its requests to Pharmacia, the Plaintiffs sought the transcript and exhibits from a case entitled *Kemner v. Monsanto,* 112 Ill.2d 223, 97 Ill.Dec. 454, 492 N.E.2d 1327 (1986), "which involved a spill of orthochlorophenol during a 1979 train derailment in Sturgeon, Missouri." *Id.,* Exhibit A at 2.[FN2] On March 12, 2008, Pharmacia served its responses and objections, in which it asserted, in part, that the requested documents are irrelevant to the issues in this matter, since they relate to orthochlorophenol, rather than pentachlorophenol, which was used to treat wood at the Site. *Id.*

FN2. Unfortunately, we do not have the text of the Document Requests which were served on Pharmacia. Although the Plaintiffs have provided Pharmacia's responses, those responses do not include the text of the Plaintiffs' original requests. See, *Plaintiffs' Memorandum in Support,* supra, Exhibit A; compare, *Local Rule 26.2* ("Parties answering interrogatories under Fed.R.Civ.P. 33, requests for admissions under Fed.R.Civ.P. 36, or requests for documents or other things under Fed.R.Civ.P. 34, shall repeat the interrogatories or requests being answered immediately preceding the answers."); *Local Rule 37.2* ("Any discovery motion filed pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure shall include, in the motion itself or in an attached memorandum, (a) a specification of the discovery in dis-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

pute, and (b) a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion.").

On August 14, 2008, the Plaintiffs filed a Motion to Compel Dow and Pharmacia to produce the requested documents. See, *Plaintiffs' Motion to Compel, Docket No. 289.* In support of their Motion, and with respect to Dow, the Plaintiffs contend that "the requested documents will show what discussions were had and what was known by ***533** Dow (and Pharmacia) at [the time of the 1965 meeting] about the hazards of the dioxins in its chlorinated phenol products (including pentachlorophenol) generally," even if the dioxins in pentachlorophenol did not include 2,3,7,8-TCDD, which is found in trichlorophenol. See, *Plaintiffs' Memorandum in Support,* supra at 5, citing, in part, *Affidavit of William R. Sawyer, Ph.D. ("Sawyer Aff."), Docket No. 292,* Exhibit E at ¶ 7 (citing studies which found "the presence of highly toxic dioxins within pentachlorophenol chemically treated wood").[FN3]

FN3. At the time of the Hearing, we advised the Plaintiffs that Dr. Sawyer's Affidavit had not been properly executed, as it was not notarized. See, *Plaintiffs' Memorandum in Support,* supra, Exhibit E. We also advised Pharmacia that the Affidavit of James J. Collins, Ph.D., had not been properly executed, because it was not notarized. See, *Affidavit of James J. Collins, Ph.D. ("Collins Aff."), Docket No. 294,* Exhibit 3. Nonetheless, the parties have consented to our consideration of the substance of both Affidavits, notwithstanding their procedural anomalies.

With respect to Pharmacia, the Plaintiffs assert that Pharmacia's pentachlorophenol contained 2,3,7,8-TCDD, and that Pharmacia "was invited to and presumably did attend the [1965 meeting]." *Id.* at 5-6. The Plaintiff also contends that 2,3,7,8-TCDD "was present in all of Pharmacia's chlorinated phenol products," and that the requested documents will generally show what Pharmacia knew about the health hazards associated with its chlorinated phenol products, including pentachlorophenol. *Id.* at 6.

For their part, Dow and Pharmacia oppose the Plaintiffs' Motion. Both Dow and Pharmacia assert that the Plaintiffs' Motion should be denied as untimely, given that discovery closed in this action on June 12, 2008, and since the operative discovery responses are more than five (5) months old. See, *Dow's Memorandum in Opposition, Docket No. 293,* at 1; *Pharmacia's Memorandum in Opposition, Docket No. 296,* at 2. Dow also argues that all of the requested documents "relate to chemicals that are not at issue in this lawsuit," and moreover, that the Plaintiffs "could have retrieved these documents from a publicly available archive at any time." *Id.* at 1. Pharmacia similarly argues that the requested documents are irrelevant, because they do not relate to pentachlorophenol. See, *Pharmacia's Memorandum in Opposition,* supra at 3-4. In addition, Pharmacia contends that the Plaintiffs' assertion, that it had representatives at the 1965 meeting, and that its pentachlorophenol contained 2,3,7,8-TCDD, are baseless, and unsupported by the Record. *Id.* at 4-5 and n. 2.

We address the parties' arguments in turn.

### III. *Discussion*

[1][2][3] A. *Standard of Review.* Under Rule 26(b)(1), Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things * * *." "The overriding purpose of the federal discovery rules is to promote full disclosure of all facts to aid in the fair, prompt and inexpensive disposition of lawsuits." *Woldum v. Roverud Const., Inc.,* 43 F.R.D.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

420, 420 (N.D.Iowa, 1968). The Rule further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1), Federal Rules of Civil Procedure.* While such a standard represents the liberality in which discovery requests must be treated, relevancy under Rule 26 is not without bounds. See, *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota,* 187 F.R.D. 578, 589 (D.Minn.1999). As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

*Hofer v. Mack Trucks,* 981 F.2d 377, 380 (8th Cir.1992).

[4] Therefore, notwithstanding the liberality of discovery, "we will remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter ***534** which does not presently appear germane on the theory that it might conceivably become so.' " *Archer Daniels Midland Co. v. Aon Risk Services Inc. of Minnesota,* supra at 589, quoting *Onwuka v. Federal Express Corp.,* 178 F.R.D. 508, 516 (D.Minn.1997); *Carlson Cos., Inc. v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080, 1080 (D.Minn.1974).

[5] If the party from whom discovery is sought fails to comply with discovery requests, the requesting party may file a Motion to Compel. See, *Rule 37, Federal Rules of Civil Procedure.* A Trial Court generally has considerable discretion in granting or denying discovery requests, and it is no abuse of discretion to deny a discovery request that is untimely. See, *Robinson v. Potter,* 453 F.3d 990, 995 (8th Cir.2006), citing *Firefighters' Inst. for Racial Equal. v. City of St. Louis,* 220 F.3d 898, 903 (8th Cir.2000).

[6] B. *Legal Analysis.* As noted, the deadline for discovery in this case was June 12, 2008. See, *Docket No. 182.* The Plaintiffs' Motion was timely served on August 14, 2008, in accordance with the deadline for non-dispositive Motions. *Id.* However, a review of the Record discloses that the Plaintiffs' dissatisfaction with Dow and Pharmacia's discovery responses lingered for several months, without any discussion between the parties concerning the adequacy of those responses, and without any attempt, by the Plaintiffs, to seek Court intervention. Cf., *Rule 37(a)(1), Federal Rules of Civil Procedure; D. Minn. LR 37.1* ("Except for motions made under LR 16.3, no motion for modification of discovery or disclosure requirements will be entertained unless it is accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the matter without Court action.").

Moreover, Dow and Pharmacia underscore that the Plaintiffs failed to raise any concerns, about the sufficiency of their discovery responses, before filing the current Motion more than two (2) months after the close of discovery, and more than five (5) months after receiving Dow and Pharmacia's responses. See, *Dow's Memorandum in Opposition,* supra at 4; *Pharmacia's Memorandum in Opposition,* supra at 2, 6. The Plaintiffs have not provided any explanation for their failure to take any curative action for months, until discovery had closed, and the parties' respective experts were at work. Indeed, Dow and Pharmacia point out that, if we were to grant the Plaintiffs' Motion, discovery in this action would be prolonged by yet another extension, in view of the need for expert reports and testimony to explain the significance of the alleged impurities, as well as the differences between pentachlorophenol, and those other chemicals which are described in the requested documents. See, *Dow's Memorandum in Opposition,* supra at 8; *Pharmacia's Memorandum in Opposition,* supra at 6-7; see also, *Order,*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Docket No. 281* (Plaintiffs' expert disclosures due on August 25, 2008; Defendants' expert disclosures due on November 11, 2008). As we explained at the Hearing, we remain convinced that the discovery, which is now sought to be compelled, was not sufficiently important for the Plaintiffs to take timely action, and we agree that the Plaintiffs should have raised their concerns, about the discovery responses, long ago. In the words of Sir Walter Scott: “Time will rust the sharpest sword.” Sir Walter Scott, *Harold the Dauntless,* Cantos I, Stanza 4 (1817).

However, even if we were to overlook the Plaintiffs' unwarranted delay, we conclude that the Motion fails on its merits, because the Plaintiffs have failed to make any showing that the requested documents are relevant to this action. More specifically, Dow and Pharmacia advise that the requested documents do not relate to pentachlorophenol, which was allegedly manufactured by Dow and Pharmacia, which was employed in the wood treatment process at the Site, and which is alleged to have damaged the Plaintiffs' health. Instead, the documents which were requested from Dow relate to 2,3,5-trichlorophenol, and its contaminant, 2,3,7,8-TCDD. See, *Dow's Memorandum in Opposition,* supra at 11.

Here, Dow has submitted evidence to show that 2,3,7,8-TCDD was never present in its pentachlorophenol. See, *Deposition Transcript of James J. Collins, Ph.D. (“Collins ***535** Tr.”), Docket No. 294,* Exhibit 2 at pp. 18, 38, 50, 57 (testifying that 2,3,7,8-TCDD “is not a contaminant in pentachlorophenol”); *Affidavit of James J. Collins, Ph.D. (“Collins Aff.”), Docket No. 294,* Exhibit 3 at ¶¶ 6-15 (attesting that “2,3,7, 8-TCDD has never been detected in pentachlorophenol (PCP) manufactured by Dow or Monsanto”). Dow also advises that both Agent Orange, and 2,4,5-T, are entirely different chemicals from pentachlorophenol, and likewise, are irrelevant to the issues here, and the Plaintiffs have not made any showing which would connect the issues in this action to any allegedly harmful qualities of trichlorophenol, Agent Orange, 2,4,5-T, or 2,3,7,8-TCDD.

The Plaintiffs argue that the pentachlorophenol, which was manufactured by Dow and Pharmacia, contained other harmful dioxins, even if it did not contain 2,3,7,8-TCDD. See, *Plaintiffs' Memorandum in Support,* supra at 5. Accordingly, they contend that they are entitled to know what information Dow and Pharmacia had about the health effects of 2,3,7,8-TCDD, because similar health effects **may** result from the dioxins in pentachlorophenol. *Id.* However, the Plaintiffs do not cite any evidentiary basis for that assertion, and we decline to adopt this wholly unsupported assumption. In our view, the parties' and their respective experts currently have their hands full in addressing any causative relationship between the known impurities in the past discharges at the Site, and any claimed medical insults to the Plaintiffs. On this Record, we have no reason to believe that even the most attentive Jury could endure hypotheses, as to causation, which are untethered to any of the specific contaminants that, allegedly, were deposited at the Site.

Similarly, Pharmacia objects to the Plaintiffs' Motion, because the documents, which were requested from Pharmacia, relate to orthochlorophenol, rather than pentachlorophenol. See, *Pharmacia's Memorandum in Opposition,* supra at 3. The Plaintiffs assert that 2,3,7,8-TCDD was present in both of those chemicals, as manufactured by Pharmacia, and that Pharmacia “concealed that information from the purchasers and users of its product and then lied (even to its own plant workers) about the associated health risks.” *Plaintiffs' Memorandum in Support,* supra at 6-7. Again, the Plaintiffs do not cite any evidentiary support for that assertion.[FN4]

FN4. We find the Plaintiffs' citation to the appellees' brief in *Kemner v. Norfolk and Western Railway Co.,* 133 Ill.App.3d 597, 88 Ill.Dec. 709, 479 N.E.2d 322 (1985), rev'd, 112 Ill.2d 223, 97 Ill.Dec. 454, 492 N.E.2d 1327 (1986), to be of little use to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

our analysis here. See, *Plaintiffs' Memorandum in Support*, supra, Exhibit F. As noted above, *Kemner v. Norfolk and Western Railway Co.* involved a spill of orthochlorophenol during a 1979 train derailment in Sturgeon, Missouri. In their brief, the appellees identify a number of other Monsanto products, including chlorophenol, Lysol, Santophen, Agent Orange, 2,4,5-T, 2,4-Di, which contained 2,3,7,8-TCDD, that were sold by Monsanto to consumers, without any notice that those products were “contaminated.” *Id.* at 12-16. In addition, the appellees cite to testimony from a Monsanto employee, who “admitted that Dioxin possibly was in all of Monsanto's products in 1978.” *Id.* at 15. However, the brief is devoid of any mention of pentachlorophenol, nor does it offer any support for the Plaintiffs' claim that 2,3,7,8-TCDD was present in Pharmacia's pentachlorophenol.

Moreover, the exhibits which were submitted by Pharmacia rebut the Plaintiffs' assertion, and disclose that Monsanto's pentachlorophenol did not contain 2,3,7,8-TCDD. See, *Pharmacia's Memorandum in Opposition*, supra at 4; see also, *Collins Aff.*, supra at ¶¶ 6-8 (“2,3,7,8-TCDD has never been detected in pentachlorophenol (PCP) manufactured by Dow or Monsanto,” and “[t]his absence of 2,3,7,8-TCDD in US-manufactured pentachlorophenol is also reported by the United States Environmental Protection Agency * * *.”); cf. *Sawyer Aff.*, supra at ¶ 8 (“2,3,7,8-TCDD (the most toxic dioxin congener) is found only in trace quantities in PCP,” at a pentachlorophenol contamination site in Taiwan). We understand the Plaintiffs to argue that a possibility exists that, with additional testing, perhaps 2,3,7,8-TCDD could be detected, even though not previously found, however, this is not the time for untested hypotheses to be pursued, when fact discovery has closed, and expert discovery has the parties fully engaged.

We conclude that the Plaintiffs have failed to demonstrate any connection between the ***536** requested documents, and the issues in this action. Here, the claims relate to pentachlorophenol and its dioxins, and Dow and Pharmacia have demonstrated that 2,3,7,8-TCDD is not contained in pentachlorophenol. Moreover, the Plaintiffs have not provided a sufficient basis upon which to responsibly conclude that documents relating to other chemicals would be relevant to the health effects of pentachlorophenol. On this Record, we see no basis for injecting new issues into this litigation, particularly at this late stage. The Plaintiffs have had the opportunity to conduct ample discovery on pentachlorophenol, and its effect on human health. Absent some showing of a connection between pentachlorophenol, and 2,3,7,8-TCDD, we will not permit discovery to be expanded in a wholesale manner, to reach unrelated substances.[FN5] Therefore, we deny the Plaintiffs' Motion to Compel, in its entirety.

FN5. Furthermore, our denial of the Plaintiffs' Motion does not preclude their exploration of the same documents at the Washington National Records Center (“WNRC”) in Suitland, Maryland. While counsel for the Plaintiffs acknowledges the existence of those documents, he complains that certain of the records are not legible, and therefore, copies of the Defendants' documents would cure such defects. In response, however, counsel for the Defendants have represented that, upon their review, the documents in the Defendants' possession are of no better quality, and in fact, the WNRC may have the only remaining copies of the Defendants' responsive documents.

NOW, THEREFORE, It is-

ORDERED:

That the Plaintiffs' Motion to Compel the Production of Documents [Docket No. 289] is DENIED.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

D.Minn.,2008.
Bredemus v. International Paper Co.
252 F.R.D. 529

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.