Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2003 WL 21998674 (S.D.N.Y.), 92 Fair Empl.Prac.Cas. (BNA) 1043
**(Cite as: 2003 WL 21998674 (S.D.N.Y.))**



United States District Court,
S.D. New York.
Sharon HAUGH, Plaintiff,
v.
SCHRODER INVESTMENT MANAGEMENT NORTH AMERICA INC., Schroders PLC, Schroder Investments (Bermuda) Limited, Schroders Inc., and Michael Dobson, Defendants.
No. 02 Civ.7955 DLC.

Aug. 25, 2003.

Former employee sued former employer, alleging unlawful age discrimination. On the employer's motion to compel production of documents, the District Court, Cote, J., held that: (1) attorney-client privilege did not extend to a public relations consultant, but (2) the work product doctrine protected from discovery 15 communications sent to the consultant by counsel, and a single communication from the consultant to counsel.

Motion denied.

West Headnotes

**[1] Privileged Communications and Confidentiality 311H €═>160**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk157 Communications Through or in Presence or Hearing of Others; Communications with Third Parties
            311Hk160 k. Experts and Professionals in General. Most Cited Cases
   (Formerly 410k206)
Attorney-client privilege did not extend to a public relations consultant engaged by plaintiff's former counsel, so as to protect from discovery 15 communications sent to the consultant by counsel, and a single communication from the consultant to counsel; the plaintiff failed to show that the consultant performed anything other than standard public relations services, and more importantly, she failed to show that the communications were necessary so that counsel could provide legal advice.

**[2] Federal Civil Procedure 170A €═>1604(1)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1604 Work Product Privilege; Trial Preparation Materials
                    170Ak1604(1) k. In General. Most Cited Cases
   (Formerly 170Ak1600(3))
Work product doctrine protected from discovery 15 communications sent to a consultant by plaintiff's counsel, and a single communication from the consultant to counsel; the documents were all prepared in anticipation of litigation, defendants articulated a substantial need that was potentially addressed by only one document, and that document, a letter drafted by counsel, was entitled to the heightened protection available to documents that reflect the opinion work product of attorneys. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.(b)(3).

Marc E. Kasowitz, Aaron H. Marks, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Plaintiff.

Christine N. Kearns, Julia Judish, Shaw Pittman LLP, Washington, D.C., Christopher P. Reynolds, Morgan, Lewis & Bockius, LLP, New York, NY, for Defendants.

*OPINION AND ORDER*

COTE, J.

**\*1** Defendants bring a motion to compel production

of sixteen documents for which plaintiff claims protection under the attorney-client or work product privileges. Fifteen of the documents are communications sent to a public relations consultant engaged by plaintiff's former counsel; the sixteenth was sent by the consultant to the attorney. The asserted attorney-client privilege cannot extend to a public relations consultant on the facts of this case. Defendants are unable, however, to overcome work product protection for these documents. The motion is denied.

### BACKGROUND

Until her employment was terminated on May 9, 2002, plaintiff Sharon Haugh ("Haugh") was Chairman of defendant Schroder Investment Management North America, Inc. ("SIMNA"). At the time her employment ended, Haugh was presented with a draft press release and a separation agreement, which she refused to sign. In the weeks following, articles discussing her departure from SIMNA appeared in industry publications. Believing that her former employers had engaged in unlawful age discrimination, Haugh filed a charge with the Equal Employment Opportunity Commission on June 26. After the EEOC issued a right to sue letter on September 23, Haugh commenced this action on October 7. In her complaint, Haugh alleges, *inter alia,* that defendants engaged in unlawful age discrimination in deciding to terminate her employment.

This motion concerns the involvement of Laura J. Murray ("Murray"), a public relations consultant who is also a lawyer licensed to practice in the state of Texas. Plaintiff's former counsel, Arkin Kaplan LLC ("Arkin"), retained Murray in September 2002, and sent Murray a formal retention letter on October 3, 2002.[FN1] The retention letter states that Murray will "provide us advice to assist us in providing legal services to Ms. Haugh." The letter provided that Murray would look only to Haugh for payment. It included the following statement regarding confidentiality: "You further understand that our communications with you are confidential and privileged."

> [FN1]. Arkin Kaplan withdrew as counsel in December 2002.

According to the affidavit of Stanley S. Arkin, he hired Murray to help defend Haugh from further attacks in the media which he anticipated would occur once she filed her lawsuit. Mr. Arkin expected that Murray's role in the case "would include media strategy as it impacted on our litigation and the consequent support and handling of media communications." Mr. Arkin's affidavit identifies, as tasks performed by Murray, assisting in the preparation of a press release issued at the time this action was filed, participating in strategy sessions with Arkin and Haugh, reviewing materials sent by Haugh "for impact on our litigation strategy," advising Arkin as to possible "public reactions," handling media communications and preparing a "detailed agenda" for a meeting held with Arkin and Haugh "on one occasion." Mr. Arkin further affirms that "Murray attended meetings at my office with Ms. Haugh and lawyers at my firm. The purpose of these meetings was to discuss Ms. Haugh's claims and to develop a litigation and media strategy...." Murray's affidavit largely echoes the statements made in the affidavit submitted by Mr. Arkin, although she notes that she "always considered the legal ramifications and potential adverse use of press releases." Murray affirms:

**\*2** My responsibilities in connection with this matter included media strategy as it impacted on Ms. Haugh's litigation and the consequent support and handling of media communications. To this end, I participated in strategy sessions with lawyers from the Arkin Firm and Ms. Haugh and offered advice. For example, at the direction of lawyers at the Arkin Firm, I reviewed materials received from Ms. Haugh not only from the standpoint of public relations but, most importantly, for impact on litigation strategy. Further, I was to advise as to possible public reactions at various stages of the litigation and to handle media communica-

tions, including the issuance of a press release at the time the complaint was filed.

Haugh has not submitted an affidavit in conjunction with this motion. In the days immediately after the lawsuit was filed, press reports were published that appear to reflect the plaintiff's press release. Mr. Arkin is quoted in at least one of the reports.

None of the documents at issue on this motion, which were submitted for *in camera* review, originated with Arkin. With one exception, they were sent from plaintiff to Murray; many were sent simultaneously to Arkin. They appear to have been sent between the dates of September 23 and October 15, 2002.[FN2] Among the documents which were sent to Murray is a draft of a letter addressed to the CEO of defendant Schroders, Michael Dobson, apparently prepared months earlier by an attorney who represented Haugh before she retained Arkin. Several documents contain background information on Haugh's position and SIMNA and her industry generally, as well as Haugh's notes on the market data she is transmitting.[FN3] Included also are a marked-up (presumably by Haugh) press release relating to Haugh's departure from SIMNA, seven pages of handwritten notes presumably created by Haugh, and a handwritten note from Haugh to Murray and Arkin, although not explained in the privilege log or otherwise, that may describe Haugh's contacts with three potential witnesses. There are no requests for legal advice. The single document from Murray is a nine point list of topics for a discussion scheduled to occur on September 23. This document was apparently sent to plaintiff's counsel.

> FN2. The plaintiff has not supplied the dates for some of the documents.

> FN3. It should be noted that some of the documents (excluding Haugh's annotations), including job descriptions for plaintiff's position, or industry data, would likely be available to defendants without discovery.

DISCUSSION

*Attorney-Client Privilege*

The broad outlines of the attorney-client privilege are clear: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *U.S. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO,* 119 F.3d 210, 214 (2d Cir.1997) (citation omitted). The burden of establishing all of the necessary elements of the privilege is on the party asserting it, here the plaintiff. *Id.*

**\*3** [1] Plaintiff accurately points out that there is precedent for expanding the attorney-client privilege to those assisting a lawyer in representing a client. Where the communications from the client to a consultant are made in confidence and "for the purpose of obtaining legal advice" from the attorney, the communication is privileged. *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961). The privilege, however, "should be narrowly construed and expansions cautiously extended." *United States v. Weissman,* 195 F.3d 96, 100 (2d Cir.1999) (per curiam); *see also Int'l Broth.,* 199 F.3d at 214. As the Second Circuit observed in endorsing the extension of the extension of the privilege to cover the work of an accountant aiding an attorney in understanding the financial aspects of the client's case, "if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Kovel,* 296 F.2d at 922. In other words, it is crucial that the party asserting the privilege show that the communication is made so that the client may obtain *legal* advice *from her attorney.* Given this requirement, it is not surprising that there is limited precedent dealing specifically with the application of the attorney-client privilege to public relations consultants.

Plaintiff has not shown that Murray performed anything other than standard public relations services for Haugh, and more importantly, she has not shown that her communications with Murray or Murray's with Arkin were necessary so that Arkin could provide Haugh with legal advice. The conclusory descriptions of Murray's role supplied by plaintiff fail to bring the sixteen documents within the ambit of the attorney-client privilege. The documents transmitted from plaintiff to Murray and the one document from Murray to Arkin are consistent with the design of a public relations campaign. Plaintiff has not shown that Murray was "performing functions materially different from those that any ordinary public relations" advisor would perform. *Calvin Klein Trademark Trust v. Wachner et al.,* 198 F.R.D. 53, 55 (S.D.N.Y.2000). As such, Haugh's transmission of documents to Murray, even simultaneously with disclosure to former counsel, and Murray's transmission of a meeting agenda to Arkin, vitiates the application of the attorney-client privilege to these documents.

Plaintiff places great reliance on the recent decision of the Honorable Lewis A. Kaplan in *In re Grand Jury Subpoenas,* 2003 WL 21262645 (S.D.N.Y. June 2, 2003). That decision does not assist Haugh. Judge Kaplan held that the privilege applied to a public relations consulting firm hired to assist counsel to create a climate in which prosecutors might feel freer not to indict the client. *Id.* at ----3, 6. He concluded that this was an area in which counsel were presumably unskilled and that the task constituted "legal advice." There is no need here to determine whether *In re Grand Jury Subpoenas* was correctly decided. Haugh has not identified any legal advice that required the assistance of a public relations consultant. For example, she has not identified any nexus between the consultant's work and the attorney's role in preparing Haugh's complaint or Haugh's case for court. A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice. *See,e.g., Calvin Klein,* 198 F.R.D. at 55.Since Haugh has failed to show that the communications were made for the purpose of obtaining legal advice from her attorney as opposed to public relations advice from Murray, the communications are not protected by the attorney-client privilege.

*Work Product*

**\*4** [2] The work product doctrine is codified in Rule 26(b)(3), Fed.R.Civ.P., which states in relevant part:

a party may obtain discovery of documents ... otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Rule 26(b)(3), Fed.R.Civ.P. This privilege is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 383 (2003). As the Second Circuit has held, "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." *United States v. Adlman,* 134 F.3d 1194, 1195 (2d Cir.1998); *seealso United States v. Jacques Dessange, Inc.,* 2000 WL 310345, at \*1 (S.D.N.Y. March 27, 2000)

(DLC).*Adlman* rejects the view that a document must be created "primarily" or "exclusively" for the litigation in order to qualify for protection. *Adlman,* 134 F.3d at 1198.The doctrine extends to notes, memoranda, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. *See United States v. Nobles,* 422 U.S. 225, 238-39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Carter v. Cornell Univ.,* 173 F.R.D. 92, 95 (S.D.N.Y.1997)."Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects 'documents prepared by or for a representative of a party, including his or her agent.' " *In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 221 (S.D.N.Y.2001) (citation omitted).

The core goal of the doctrine is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman,* 134 F.3d at 1196 (quoting *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The doctrine protects a lawyer's ability to prepare his client's case, protects against the disclosure of the attorney's mental impressions, conclusions, strategies, or theories, and also avoids the unfairness that would occur if one party were allowed to appropriate the work of another. *See id.* at 1197.Both the Supreme Court and this Circuit have repeatedly reaffirmed the "strong public policy" underlying the work product privilege, finding that

**\*5** it is essential that a lawyer work with a certain degree of privacy.... [I]f discovery of [attorney work product] were permitted much of what is now put down in writing would remain unwritten.... And the interests of the clients and the cause of justice would be poorly served.

*Upjohn Co. v. United States,* 449 U.S. 383, 397-98, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (citation omitted).*See also Adlman,* 134 F.3d at 1197; *In re Six Grand Jury Witnesses,* 979 F.2d 939, 944 (2d Cir.1992).

A finding that a document falls within the work product doctrine does not, however, end the inquiry. Indeed, the Second Circuit has explained that

> although a finding under this test that a document is prepared because of the prospect of litigation warrants application of Rule 26(b)(3), this does not necessarily mean that the document will be protected against discovery. Rather, it means that a document is *eligible* for work-product privilege. The district court can then assess whether the party seeking discovery has made an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship.

*Adlman,* 134 F.3d at 1202-03 (emphasis in original). As noted above, Rule 26(b)(3) goes on to state, however, that even upon this showing of "substantial need" and "undue hardship," "mental impressions ... opinions, or legal theories" of an attorney receive heightened protection. Attorney work product can thus conceptually be divided into two classes: that which recites factual matters and that which reflects the attorney's opinions, conclusions, mental impressions or legal theories. A heightened standard of protection must be accorded "opinion" work product that reveals an attorney's mental impressions and legal theories. *See Upjohn Co.,* 449 U.S. at 401.*See also Adlman,* 134 F.3d at 1197; *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234 (2d Cir.1993) ("An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information.")

All of the documents submitted in conjunction with this motion are covered by the work product privilege, as they were all prepared by a party, her agent, attorney or consultant in anticipation of litigation. Defendants have articulated a substantial need only for documents that would tend to contradict Haugh's statement that her termination on May 9, 2002 came as a surprise. This need is potentially addressed by only one document, Document # 40, which is described in the privilege log as a "[n]ote

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

to public relations person attaching draft letter by counsel ...," and is dated in the log, May 6, 2002. As plaintiff points out in her brief, however, this date is misleading. Document # 40 is actually two documents: a handwritten cover letter, presumably from Haugh, and an annotated letter addressed to Schroder's CEO Dobson prepared by Haugh's former counsel. It is the annotated letter that is dated May 6, and there is no reason to believe that these documents were transmitted to Murray any earlier than September. The letter drafted by counsel is entitled to the heightened protection available to documents that reflect the opinion work product of attorneys, which defendants cannot overcome. The work product doctrine therefore shields the entirety of the documents submitted with this motion.

## CONCLUSION

**\*6** For the reasons stated above, defendants' motion to compel is denied.

SO ORDERED:

S.D.N.Y.,2003.
Haugh v. Schroder Investment Management North America Inc.
Not Reported in F.Supp.2d, 2003 WL 21998674 (S.D.N.Y.), 92 Fair Empl.Prac.Cas. (BNA) 1043

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.