

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2008 WL 2338552 (D.S.C.)
**(Cite as: 2008 WL 2338552 (D.S.C.))**

Only the Westlaw citation is currently available.

United States District Court,
D. South Carolina.
In re: NEW YORK RENU WITH MOISTURELOC PRODUCT LIABILITY LITIGATION
This Document Applies to All Cases
In re: BAUSCH & LOMB CONTACT LENS SOLUTION PRODUCT LIABILITY LITIGATION
This Document Applies to All Cases
**No. MDL 1785, CA 2:06-MN-77777-DCN.**

May 8, 2008.

MEMORANDUM OPINION AND ORDER ON DOCUMENTS ASSERTED AS PROTECTED BY ATTORNEY-CLIENT PRIVILEGE OR AS WORK PRODUCT

CAPRA, J.

**\*1** In this litigation, Defendant Bausch & Lomb has refused to produce a number of otherwise responsive documents on the ground that they are protected by the attorney-client privilege or the work product doctrine. This order involves the "first wave" of documents that Bausch & Lomb claims are so protected. The parties are currently working through a "second wave" of documents for the Special Master's consideration.

The documents that are subject to this Order have been set forth in exhibits to an affidavit by Robert Bailey, Esq., Vice President and General Counsel for Bausch & Lomb. The Order follows the exhibit form as presented and as argued by the parties.

I have reviewed the pertinent case law and the extensive written submissions by the parties. I also entertained oral argument on some of the more difficult legal questions presented by these exhibits. What follows is a short discussion of the pertinent case law, and a justification for the orders. Because there is a need for expedition, the case law discussion is truncated.

In evaluating the privilege claims, I applied four fundamental legal principles:

1) Defendant, as the party invoking the privilege, has the burden of showing that the requirements of the privilege are met. *See, e.g., United States v. Landof,* 591 F.2d 36 (9th Cir.1978) (as the privilege is in derogation of the search for truth, the party who seeks to invoke it has the burden of establishing it).

2) Intra-corporate communications to counsel may fall within the privilege if the predominant intent is to seek legal advice. *United States v. IBM,* 66 F.R.D. 206, 212-13 (S.D.N.Y.1974) (applying the test of predominant intent).

3) Intra-corporate communications to and from counsel can retain a privilege if disclosure is limited to those who have a "need to know" the advice of counsel; the company's burden "is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, not to justify each determination that a particular employee should have access to the information therein." *Federal Trade Comm'n v. GlaxoSmithKline,* 294 F.3d 141, 147-48 (D.C.Cir.2002).

4) As this case is in diversity, the applicable privilege law is *state* law. See Fed.R.Evid. 501. And of course state privilege law applies to the actions in New York state court. Choice of law principles appear to point to New York privilege law as determinative, as that is the location of defendant's principal place of business. Federal courts have recognized that the New York law of privilege is substantially similar to federal common law. *See, e.g., NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 124 (N.D.N.Y.2007) ("the distinction between New York and federal law on attorney-client

privilege is quite indistinguishable, as the law intersects in all of its facets, and are viewed interchangeably"); *Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd.,* 211 F.Supp.2d 493 (S.D.N.Y.2002) ("New York law governing attorney-client privilege is generally similar to accepted federal doctrine."). This statement is helpful when the federal common law is itself clear and undisputed. But a difficulty arises where the federal courts are in dispute about the federal common law, and there appears to be no clear state law on the subject. Where such a situation arises, I have chosen the result that appears most consistent with the approach to privilege questions undertaken by the New York Court of Appeals; that approach is to use a utilitarian analysis to provide protection to communications to and from counsel that would not be made in absence of the privilege. *See generally* Martin & Capra, New York Evidence Handbook § 5.2 (2d ed.2003).

*Exhibit 1 (BL100370591)*

**\*2** This is an email from Alan Wilson, Director of Vision Care and Special Project Manager for the Fusarium investigation, to corporate counsel and other high-level personnel, concerning a possible presentation to the FDA. It is seeking a combination of business and legal advice, but it is fair to assume that the predominant reason for sending it to corporate counsel is to seek legal advice. The fact that Wilson was probably seeking business advice from the non-legal corporate personnel does not lose the privilege if the reason for communicating *with the lawyer* is to obtain the lawyer's legal viewpoint. *Federal Trade Comm'n v. GlaxoSmithKline,* 294 F.3d 141, 147-48 (D.C.Cir.2002). Moreover, all the recipients were those who had a "need to know" counsel's advice, and so the privilege was not lost by disclosure to these personnel.

It is notable that legal advice may be sought implicitly or explicitly. *See, e.g., In re CV Therapeutics, Inc. Sec. Litig.,* 2006 U.S. Dist. LEXIS 41568 at *12-13, 2006 WL 1699536 (N.D.Cal.):

The Court looks to the context of the communication and content of the document to determine whether a request for legal advice is in fact fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document. The attorney-client privilege protects documents which "involve either client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found." *Jack Winter, Inc. v. Koratron Co. .,* 54 F.R.D. 44, 46 (N.D.Cal.1971).

The email from Wilson, fairly read, implicitly seeks legal advice from Mr. Bailey.

*Privilege claim sustained.*

*Exhibit 2 (BL105793290-318)*

This is a draft of a powerpoint presentation that Bausch & Lomb was preparing in order to make a presentation to the FDA. The final version of the powerpoint presentation has already been produced, as have other drafts. Bausch & Lomb argues that this particular draft is privileged because it was submitted to in-house counsel for his legal advice on whether any changes to the draft should be made before it would be presented to the FDA.

The federal common law on drafts submitted to counsel is in conflict. The split of authority is discussed in *Schenet v. Anderson,* 687 F.Supp. 1280, 1282-4 (E.D.Mich.1988):

A split of authority exists regarding whether information disclosed to an attorney with the intention that the attorney draft a document to be released to third parties is protected by the attorney-client privilege. Plaintiff cites *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th

Cir.1984) as support for its position [that the draft is not privileged]. The Fourth Circuit held, in that case, that the attorney-client privilege did not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be made known to others (e.g., in the form of a stock offering brochure or an income tax return.) *In re Grand Jury* at 1356.

**\*3** "[A] statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged." Nor is the loss of the privilege confined to "the particular words used to express the communication's content" but extends "to the substance of a communication," since the disclosure of " 'any significant part' of a communication waives the privilege" and requires the attorney to disclose "the details underlying the data which was to be published ."

*In re Grand Jury* at 1356.

In *In re Grand Jury,* the government subpoenaed an attorney to testify before a grand jury regarding conversations with his client made in connection with the preparation of a prospectus for a proposed private placement of limited partnership interests. (The proposed prospectus was never issued.). The *In re Grand Jury* court held that the information given to the attorney was to assist in preparing a document to be seen by others, and was not intended to be kept confidential. Thus, the attorney-client privilege was not applicable.

Subsequently, the Fourth Circuit limited its holding in *In re Grand Jury,* in *U.S. v. (Under Seal), 748 F.2d 871, 875 (4th Cir.1984).* The *(Under Seal)* court noted that, while the existence of the attorney-client relationship does not, by itself, lead to a presumption that attorney-client communications are confidential, "a layman does not expect his attorney to routinely reveal all that his client tells him. Rather than look to the existence of the attorney-client relationship or to the existence or absence of a specific request for confidentiality, we must look to the services which the attorney has been employed to provide, and determine if those services would reasonably be expected to entail the publication of the clients' communications." *U.S. v. (Under Seal)* at 875. The court distinguished *In re Grand Jury* from the case before it, because, in *In re Grand Jury,* the client had decided to publish a prospectus before approaching their attorneys, thus indicating that the attorney had been retained to convey information to third parties, not to provide legal advice for the client's guidance. In *(Under Seal),* the client had retained an attorney to investigate the possibility of filing papers, which if filed, would be disclosed to third parties. The court went on to hold that it is only when the client authorizes the attorney to perform services which demonstrate the client's intent to have his communications published that the client will lose the right to assert the privilege as to the subject matter of those communications.

Other courts have extended the attorney-client privilege to cover all information not actually published to third parties, even if the information were disclosed to an attorney in connection with the preparation of a document to be issued to a third party. *U.S. v. Schlegel,* 313 F.Supp. 177, 179 (D.Neb.1970). The *Schlegel* court stated:

**\*4** [A] ... more realistic rule would be that the client intends that only as much of the information will be conveyed to the [third party] as the attorney concludes should be, and ultimately is, sent to the [third party]. In short, whatever is finally sent to the [third party] is what matches the client's intent. The fact that the client has relinquished to his attorney the making of the decision of what needs to be included within the tax return should not enlarge his intent or decrease the scope of the privilege. A different rule would not really support the purpose of the privilege, which is to encourage free disclosure of information by the client to the attorney. If

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the client, not knowing what the attorney would advise be sent or would choose to send to the [third-party], were to think that all information given to his attorney would lose its confidential status by the act of delivery to his attorney, the tendency would be to withhold information which he, without advice of counsel, would suppose was detrimental to him, the client. Thus the attorney, the very one professionally capable of evaluating information, could be of no help in evaluating it, because he would not receive it.

The *Schlegel* rule has been adopted by several other courts: *S.E.C. v. Texas International Airlines, Inc.,* 29 F.R.Serv.2d 408 (D.D.C.1979); *U.S. v. Schmidt,* 360 F.Supp. 339, 350, n. 35 (M.D.Penn.1973); *U.S. v. Willis,* 565 F.Supp. 1186, 1193 (S.D.Iowa 1983).

The *Schenet* court opted for the *Schlegel* rule protecting drafts to the extent that the information in those drafts was not ultimately disclosed:

In the Court's opinion, the *Schlegel* rule encourages clients to disclose information freely to their attorneys, and thus is most consistent with the purpose of the attorney-client privilege. Therefore, the Court declines to follow the Fourth Circuit's opinion in *In re Grand Jury* (as modified by *U.S. v. (Under Seal),* and adopts the holding of the court in *U.S. v. Schlegel,* 313 F.Supp. 177, 179 (D.Neb.1970). Accordingly, the attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, *to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons.*With regard to preliminary drafts of documents intended to be made public, the court holds that preliminary drafts may be protected by the attorney-client privilege. Preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege. *The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties. S.E.C. v. Texas International Airlines, Inc.,* 29 F.R.Serv.2d 408, 410 (D.D.C.1979); *U.S. v. Willis,* 565 F.Supp. 1186, 1193 (S.D.Iowa 1983). (emphases added).

**\*5** At least one court has taken the position that an entire draft remains privileged if it is given to counsel with the proviso that counsel will provide suggestions on the draft. The court in *Macario v. Pratt & Whitney Canada, Inc.,* 1991 U.S. Dist. LEXIS 597, 1991 WL 1004 (E.D.Pa.), held that a draft was protected in its entirety because "[n]o evidence has been presented to indicate that at the time the second draft was submitted to [the lawyer] for his review, Pratt & Whitney had any intention to publish the release *in the form provided.*However, the critical issue in determining whether the document was to remain confidential is whether Pratt & Whitney intended that the draft was to be released *in the form given to [the lawyer] for his review.*Because the release was contingent on [the lawyer's] approval and subject to his revision, it is reasonable to assume that Pratt & Whitney intended the document to remain confidential until a final draft was achieved, and thus the second draft would fall within the attorney-client privilege."(emphases added).

The New York law on drafts is unclear. New York of course accepts the unremarkable proposition that if a client communicates to the lawyer with the intent that the communication is to be released to the public, that communication is not privileged. See Martin & Capra, *supra* at 318.But I have found no cases on the specific question of whether drafts are protected when they are given to counsel with the intent that counsel would provide suggestions on what should be cut from (or added to) the draft before it is released to the public. Weinstein Korn & Miller provide the following cryptic statements at ¶ 4503.18:

A common example of communications which are not privileged because it is intended that they

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

be disclosed to third persons are the communications made in the preparation of legal documents such as contracts, deeds and complaints. Only that information which the client knew or should have known would be disclosed is outside the privilege; other matter remains privileged

But the cases cited do not involve drafts and are more in the nature of general statements that there is no privilege if the client anticipates that the communication will be made public.

The question is which law to apply regarding drafts. Under the Fourth Circuit law, and despite defendant's argument to the contrary, the draft is unprivileged in its entirety, as are any pertinent lawyer notes. This is because defendant made the decision to present the powerpoint to the FDA, in some form, by the time the draft was sent to Mr. Bailey. Defendant certainly has not proved otherwise. But the problem with the Fourth Circuit view is that it appears to look at the client's intent to publish in an undifferentiated way. A client may have decided to publish *some* information in *some* form, yet the precise form and content could well be subject to review by counsel. The Fourth Circuit law does not provide protection in the more nuanced situation in which the client is going to make a public disclosure but submits it to the lawyer in order to determine whether the final form is consistent with the client's legal interest. Yet that is the very situation in which the client ought to be able to seek confidential advice of counsel; the Fourth Circuit rule thus deters the client from communicating with counsel about what should or should not go into a public statement, and therefore undermines the attorney-client privilege. Because the Fourth Circuit view deters communications that are necessary to the free flow of information between client and attorney, it is contrary to the underlying principles of the attorney-client privilege under New York law.

**\*6** On the other hand, the result in *Macario, supra*-that the entire draft is protected by the privilege if given to the lawyer for a legal-advice review-is overprotective. It would mean that the draft would be protected even if the lawyer made no changes, and even as to parts of the draft which were understand by both attorney and the client to be an inevitable part of the public presentation. The *Macario* rule allows the client to shield an unprotected document simply by referring it to the lawyer. As such it is contrary to the limitations inherent in the privilege. *See In re Bekins Record Storage Co.,* 62 N.Y.2d 324, 476 N.Y.S.2d 806, 465 N.E.2d 345 (1984) (preexisting documents compellable if in the hands of the client do not become privileged when referred to an attorney).

The compromise view is that of *Schenet/Schlegel*-if the draft is sent to the lawyer for a legal-advice review, then any statements in the draft are privileged to the extent that they are not ultimately revealed to the public. Put the other way, only the portions of the draft that are ultimately disclosed in the final document are subject to disclosure. The problem with this view is that it requires a line-by-line redaction of the draft. Arguably the costs of a line-by-line redaction might be considerable if the case involves hundreds of drafts. Yet despite its costs, the *Schenet/Schegel* view is the one most consistent with the policy of the privilege. It allows and encourages the client to seek legal advice on the propriety of language in a draft, without overprotecting the draft in such a way that its disclosure is barred even as to portions that are clearly intended for public disclosure. As the *Schenet/Schlegel* view is most consistent with the policies of the privilege, I conclude that it is most consistent with the New York Court of Appeals' approach to privilege (especially the corporate attorney-client privilege) in such cases as *Rossi v. Blue Cross & Blue Shield,* 73 N.Y.2d 588, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989) and *Spectrum Sys. Intl. Corp. v. Chemical Bank,* 78 N.Y.2d 371, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991).

Applying the *Schenet/Schlegel* view, I find first that the draft powerpoint presentation was referred to Mr. Bailey with the implicit request for legal advice. Therefore, the portions of the draft power-

point that were not disclosed in the final draft may be redacted. The portions that were ultimately revealed to the FDA are not privileged. Defendant must therefore produce the draft, but may make redactions in accordance with this opinion and order.

*Privilege claim sustained in part and denied in part.*

*Exhibit 3 (BL100101027)*

This exhibit consists of two-email strings regarding a contact with the FDA about a planned public statement about MoistureLoc. The first email is from Barbara Kelley to Ron Zarella, Bob Bailey, and others, including two public relations consultants from Hill & Knowlton, a public relations firm employed by Bausch & Lomb. Plaintiffs contend that any privilege is lost because of the disclosure to Hill & Knowlton. For the reasons discussed below, I agree with plaintiffs and accordingly find that this email is not privileged and must be produced in its entirety.

**\*7** Communications to non-lawyers can be brought within the privilege under the *Kovel* doctrine-the court in *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961) held that confidential communications to non-lawyers could be protected by the privilege if the non-lawyer's services are necessary to the legal representation. But the *Kovel* protection is applicable only if the services performed by the non-lawyer are necessary to promote the lawyer's effectiveness; it is not enough that the services are beneficial to the client in some way unrelated to the legal services of the lawyer. Id at 922 (the "communication must be made in confidence for the purpose of obtaining legal advice from the lawyer.... If what is sought is not legal advice but only accounting services ... or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").*See generally NXIVM Corp. v. O'Hara,* 241 F.R.D. 109 (S.D.N.Y.2007) ("the extension of the privilege to non-lawyer's communication is to be narrowly construed. If the purpose of the third party's participation is to improve the comprehension of the communication between attorney and client, then the privilege will prevail.").*See also United States v. Ackert,* 169 F.3d 136, 139 (2d Cir.1999) (ruling that the communication "between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client").

Courts are in some dispute on whether public relations firms are "necessary to the representation" so as to fall within the *Kovel* protection. Most courts agree, however, that basic public relations advice, from a consultant hired by the corporate client, is not within the privilege. The court in *NXIVM, supra* at 141, surveys this basic case law:

> This legal notion that even a public relations firm must serve as some sort of "translator," much like the accountant in *Kovel,* was visited in *Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53 (S.D.N.Y.2000). Much like the services being rendered here, the public relations firm in *Calvin Klein* was found to have simply provided ordinary public relations advice and assisted counsel in "assessing the probable public reaction to various strategic alternatives, as opposed to enabling counsel to understand aspects of the client's own communications that could otherwise be appreciated in the rendering of legal advice." 198 F.R.D. at 54-55 (citing *United States v. Ackert,* 169 F.3d at 139). Thus, no attorney client privilege was extended to its communications with either the client or the firm. Id. at 53-55.A similar result occurred in *Haugh v. Schroder Inv. Mgmt. North Am. Inc.,* 2003 U.S. Dist. LEXIS 14586, 2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003), wherein the court found that the record did not show the public relations specialist performed anything other than standard public relations services for the plaintiff, and noting that a media campaign is not a legal strategy. See also *De Beers LV Trademark Ltd. v. De Beers Diamond Syndicate Inc.,* 2006 U.S. Dist. LEXIS 6091,

2006 WL 357825 (S.D.N.Y. Feb.15, 2006).

**\*8** Judge Cote in *Haugh v. Schroder Inv. Mgmt. North Am. Inc.,* 2003 U.S. Dist. LEXIS 14586, 2003 WL 21998674, at \*8 (S.D.N.Y.2003) summed up the basic law, and held that disclosure to a public relations firm lost the privilege, in the following passage:

> Plaintiff has not shown that Murray [the p.r. consultant] performed anything other than standard public relations services for Haugh, and more importantly, she has not shown that her communications with Murray or Murray's with Arkin [the lawyer] were necessary so that Arkin could provide Haugh with legal advice. The conclusory descriptions of Murray's role supplied by plaintiff fail to bring the sixteen documents within the ambit of the attorney-client privilege. The documents transmitted from plaintiff to Murray and the one document from Murray to Arkin are consistent with the design of a public relations campaign. Plaintiff has not shown that Murray was "performing functions materially different from those that any ordinary public relations" advisor would perform. *Calvin Klein Trademark Trust v. Wachner et al.,* 198 F.R.D. 53, 55 (S.D.N.Y.2000). As such, Haugh's transmission of documents to Murray, even simultaneously with disclosure to former counsel, and Murray's transmission of a meeting agenda to Arkin, vitiates the application of the attorney-client privilege to these documents.

Judge Cote relied on the compelling point that "[a] media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice."

It is true that a few cases have found communications to public relations consultants to be within the attorney-client privilege. But those cases arise from unusual and extreme facts and do not involve the basic provision of public relations advice by a company retained by the client, as in the instant case.

For example, in *In re Copper Market Antitrust Litig.,* 200 F.R.D. 13 (S.D.N.Y.2001), a foreign company found itself in the midst of a high profile scandal involving both regulatory and civil litigation aspects, and hired a public relations firm because it lacked experience both in English-speaking and in dealing with Western media. The public relations firm acted as the corporation's spokesperson when dealing with the Western press and conferred with the company's U.S. litigation counsel. Judge Swain upheld the attorney-client privilege claim, reasoning that the public relations firm, in the extreme circumstances of the case, was the functional equivalent of an in-house department of the corporation and thus part of the "client ." Obviously the facts of *Copper Market* do not approach those of this case, in which a public relations consulting firm provides basic consulting advice.

Likewise, the facts of *In re Grand Jury Subpoenas,* 265 F.Supp.2d 321 (S.D.N.Y.2003) are vastly different from the instant case. Judge Kaplan held that the privilege applied to a public relations consulting firm hired to assist counsel to create a climate in which prosecutors might feel freer not to indict the client. He concluded that this was an area in which counsel were presumably unskilled and that the task constituted "legal advice." As Judge Cote stated in *Haugh:* "There is no need here to determine whether *In re Grand Jury Subpoenas* was correctly decided." Bausch & Lomb has not identified with particularity any legal advice that required the assistance of a public relations consultant; Bailey's affidavit simply states, in conclusory fashion, that Hill & Knowlton's presence was "necessary." Bausch & Lomb has not, for example, identified any nexus between the consultant's work and the attorney's role in defending against possible litigation or a regulatory action or proceeding.

**\*9** I am most reluctant to rely on the broad applications in *Copper Market* and *In re Grand Jury Subpoenas* in light of the well-reasoned case law indicating that the privilege is lost when the corporate client communicates to an outside consultant, hired

by the corporation, and providing nothing more than basic public relations advice. *See, e.g.,* Ann M. Murphy, *Spin Control and the High-Profile Client-Should the Attorney-Client Privilege Extend to Communications With Public Relations Consultants?,* 55 Syracuse L.Rev. 545 (2005) (concluding that "expanding the attorney-client privilege to communications with public relations consultants is inadvisable and against the interests of justice"). A conservative approach is, indeed, mandated by New York law, which appears to recognize the *Kovel* doctrine only in narrow circumstances in which the non-lawyer's services are absolutely necessary to effectuate the lawyer's legal services. *See, e.g., People v. Edney,* 39 N.Y.2d 620, 385 N.Y.S.2d 23, 350 N.E.2d 400 (1976).

Accordingly, the email from Barbara Kelley dated May 11, 2006 is not privileged because it was routed to employees of Hill & Knowlton. (If not for that routing, the email would be privileged because it was implicitly seeking Bob Bailey's legal advice on discussions with the FDA).

In contrast, the second email in the string, dated May 11, 2006 at 11:07 p.m., is privileged. It discusses the need to seek legal advice from Bob Bailey, and this email was *not* sent or routed to Hill & Knowlton.

*Privilege claim sustained in part and denied in part.*

*Exhibit 4 (BL105792209)*

Exhibit 4 is an email from Michael Santaluccia to outside counsel and Bob Bailey, as well as others with a "need to know" (*see Federal Trade Comm'n v. GlaxoSmithKline,* 294 F.3d 141, 147-48 (D.C.Cir.2002)), concerning communications with an FDA official about investigations respecting MoistureLoc. It is clear that at the time of the email, Bausch & Lomb faced a situation involving legal liability, and that discussion and interaction with the FDA was critical to Bausch & Lomb's leg- al position. I find that the request for legal advice is implicit in the email. *See Jack Winter, Inc. v. Koratron Co.,* 54 F.R.D. 44, 46 (N.D.Cal.1971) (implicit requests for legal advice in the corporate context can qualify for privilege protection). Accordingly, the email is privileged.

*Privilege claim sustained.*

*Exhibit 5 (BL100879259)*

This is an email string involving the drafting of a response to the Australian counterpart to the FDA, concerning Fusarium keratitis cases in Asia. The three emails in the string reference an attachment, which is the draft on which each of the email writers provides comments. Bausch & Lomb asserts that plaintiffs have not challenged its privilege claim as to the attachment (the draft response), and that the only challenge is to the emails themselves. But plaintiffs' memorandum in opposition to the Bailey affidavit, at 8, specifically contends that "drafts of material meant to be shown to third parties, such as the TGA, are not privileged."I therefore find that plaintiffs have sufficiently raised the issue of whether the draft itself is privileged-and I find, consistently with the discussion of Exhibit 2, that the draft is privileged only as to the statements and information not contained in the published document. The attachment must be produced with any redactions to be made in accordance with this Opinion and Order.

**\*10** As to the emails themselves, there are three. The first, dated February 26, 2006, at 1:20 a.m., is not sent or routed to a lawyer. But this does not necessarily mean that it is unprotected by the privilege. A number of cases hold that communications among non-lawyer corporate personnel are protected if the dominant intent is to prepare the information in order to get legal advice from the lawyer. *See, e.g., AT & T Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 8710, at \*7-8 (N.D.Cal.):

   Communications between non-lawyer employees

about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege. U.S. v. Chevron Texaco Corp., 241 F.Supp.2d 1065 (N.D.Cal.2002). The only question to consider is whether DSP intended to seek legal advice of any kind over the subject matter contained in the memoranda? See *Upjohn v. United States,* 449 U.S. 383, 396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *In re Grand Jury,* 974 F.2d at 1071 fn. 2;*see also United States v. Chevron Corp.,* 1996 U.S. Dist. LEXIS 4154 at *5 (N.D.Cal.)....

Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege. *Upjohn* at 394-95.As long as the legal implications were understood at the beginning at the inquiry and the communications were covered by a veil of confidentiality, then the privilege attaches. *See Upjohn,* at 394-95.

See also *Santrade, LTD. v. General Electric Co.,* 150 F.R.D. 539, 543 (E.D.N.C.1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.").

The question, then, is whether the personnel involved in the first email in the string "intended to seek legal advice of any kind over the subject matter contained in the memoranda."While this is a close question, I find that there is an implicit understanding that a lawyer's review of the response to the Australian regulator will be necessary (as there were obvious legal ramifications to the Australian inquiry) and that the initial review by non-lawyers was appropriate before the lawyer's review. I also note that all the email recipients had a "need to know."

As to the second and third email in the string, these were 1) routed to Bailey, 2) implicitly seek his legal advice, and 3) sent only to those with a "need to know". Accordingly they are privileged. Plaintiffs argue that emails cannot be privileged if the lawyer is only "cc:d" on the email, as opposed to a direct recipient. Such a limitation would be inconsistent with the way that emails are sent. Sending an email by "cc" is usually a question of convenience rather than an expression of some intent to delineate priorities. Moreover, given the law providing than an attorney need not be a recipient *at all* for the privilege to attach, it must surely be the case that a "cc" to an attorney can qualify for the privilege. *See generally Eutectic Corp. v. Metco, Inc.,* 61 F.R.D. 35 (E.D.N.Y.1973) (privilege applied where lawyer indirectly receives copies of confidential documents).

**\*11** *Privilege claim sustained with respect to emails and sustained and denied in part with respect to attachment.*

*Exhibit 6 (BL 100089266-BL100089276; BL 157420111; and BL 157420112-BL157420118)*

The first challenged document is a draft script for investment analyst calls, explaining the decision to voluntarily recall Renu with MoistureLoc. It is dated May 13, 2006. This draft was sent to Bob Bailey and others with a need to know, for comments on the draft. As stated in the discussion of Exhibit 2, this draft is privileged only as to the statements and information not contained in the published document. The attachment must be produced with any redactions to be made in accordance with this Opinion and Order.

The second challenged document is an email dated May 15, 2006, clearly seeking legal advice from Bob Bailey. Other recipients had a "need to know." BL 157420111 is privileged.

The third challenged document is a draft of the script dated May 15, 2006. Once again, this draft is privileged only as to the statements and information not contained in the published document. The attachment must be produced with any redactions to be made in accordance with this Opinion and Order.

*Privilege claim sustained in part and denied in part.*

*Exhibit 7 (BL105792809)*

Exhibit 7 is an email relating to draft q & a's prepared in anticipation of the voluntary recall of ReNu with MoistureLoc. Two of the recipients are public relations consultants with Hill & Knowlton. For reasons discussed under Exhibit 3, this email is not privileged. There is no indication that Hill & Knowlton is providing anything other than ordinary public relations advice. Bausch & Lomb has not satisfied its burden of showing that Hill & Knowlton is necessary to the legal representation under *Kovel.*

*Privilege claim denied.*

*Exhibit 8 (BL122438503-BL122438503A; BL105792872; BL105792873-BL105792878; BL105792879; BL105792880-BL105792881)*

The first challenged document is a redacted email from Brian Levy, referring drafts to Bob Bailey and others, regarding proposed public communications. The redacted part of the email contains an implicit request for legal advice and provides information that would be helpful to Mr. Bailey in reviewing the document. The redacted material is privileged.

The attachments to the email are also challenged. Once again, these drafts are privileged only as to the statements and information not contained in the published documents. The attachments must be produced with any redactions to be made in accordance with this Opinion and Order.

*BL122438503-BL122438503A-Privilege claim as to redaction in email sustained. Privilege claim as to attachments sustained in part and denied in part.*

The remaining challenged documents correspond to the attachments to the Brian Levy email, i.e., the various drafts of planned public responses. For reasons stated immediately above, these drafts are privileged only as to the statements and information not contained in the published documents. The attachments must be produced with any redactions to be made in accordance with this Opinion and Order.

**\*12** *BL105792872; BL105792873-BL105792878; BL105792879; and BL105792880-BL105792881: Privilege claim sustained in part and denied in part.*

*Exhibit 9 (BL134450950-BL134450961)*

Exhibit 9 is an email string relating to Bausch & Lomb's response to patient complaints in Singapore. It has been produced to plaintiffs with multiple redactions.

All of the information in this email string was sent to employees of Hill & Knowlton. There is no indication that Hill & Knowlton was providing anything more than ordinary public relations advice. Bausch & Lomb has not established that communicating to Hill & Knowlton was necessary for the effectiveness of legal representation under *Kovel.* Therefore, this email string must be produced to plaintiffs without redaction.

I note that the redaction on BL 134450952 was not sent to Hill & Knowlton; moreover, it contains an implicit request for legal advice. However, as Bausch & Lomb admits, the response to that email *is* sent to Hill & Knowlton, along with the previous email as part of the email string. Sending the email to Hill & Knowlton destroyed whatever privilege might have previously existed, for the same reason that any initial communication to Hill & Knowlton loses the privilege.

*Privilege claim denied.*

*Exhibit 10 (BL134452241-BL134452245; and BL135539990-BL135539991)*

Exhibit 10 contains two similar email strings relating to responses to patient complaints in Singapore. None of these emails were sent to Hill & Knowlton. All of the recipients of the email had a "need to know" legal advice that would be provided by the lawyer, in this case Mr. Eckman.

With respect to the first email string-BL 135539990-BL135539991-there is a clear request for legal advice, and reporting of information that a lawyer would find necessary in formulating a response to claimed injuries. Response to client complaints, and the possible litigation therefrom, is clearly in the nature of legal advice. See *Rossi v. Blue Cross & Blue Shield,* 73 N.Y.2d 588, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989) (communications to and from a lawyer in response to a complaint and threat of litigation are protected by the privilege).

*BL 135539990-BL135539991-privilege claim sustained.*

With respect to the second email string-BL134452241-BL134452245-these emails involve discussions about how to treat claims; even if these claims are not litigated, the processing of these claims clearly affects the legal position of the company as well as its strategy in defending litigated claims. Mr. Eckman is addressed directly and specifically, and provides legal advice. This email string is clearly privileged.

*BL134452241-BL134452245-privilege claim sustained.*

*Exhibit 11 (BL134431726-BL134431729; BL134431723-BL134431725; BL134431718-BL134431719 BL 134450577-BL134450578)*

Exhibit 11 contains four email chains discussing the arrangement for handling consumer returns of ReNu products. All of these emails were sent to employees of Hill & Knowlton and for reasons discussed above under Exhibit 3, these documents are not privileged.

**\*13** Investigation of Hill & Knowlton's contributions on these emails only fortifies the determination that Hill & Knowlton was not involved in furthering (much less necessary to providing) legal advice. In one email, Christina Cheang, an employee of Hill & Knowlton, suggests that optical shops should be used for redemptions, as a means of establishing good business relations with these shops. She has to be told, later on in the string (in an email from Arthur Ng dated February 28, 2006), that Bausch & Lomb cannot legally use optical shops for redemption. Clearly she is not necessary to providing legal advice-indeed she is providing business advice that is contrary to legal advice.

*Privilege claim denied.*

*Exhibit 12 (BL134431951-BL134431952)*

Exhibit 12 is a draft press release concerning Bausch & Lomb's consumer product returns for ReNu in Hong Kong. It was emailed to, among others, consultants for Hill & Knowlton. For reasons discussed above under Exhibit 3, the document is not privileged. I note that even if disclosure to Hill & Knowlton did not destroy the privilege, the draft would be protected only as to information not contained in the document published.

*Privilege claim denied.*

*Exhibit 13 (BL103867295-BL103867314; BL144531274-BL144531285; and BL144528650-BL144528652)*

Exhibit 13 is three versions of the same email string and discusses requests from the Hong Kong Department of Health. Part of the communications concern whether to obtain third-party verification of testing, and involvement of the Quantic Group. These email strings have been produced with redactions. My analysis will start at the beginning of the string.

*Redaction on BL 144528650-*Email from Alan Wilson to Cheng, Levy, et. al-there is no lawyer involved in this communication, but the redacted sentence clearly reports legal advice previously received. Everyone on the email has a "need to know." *Privilege claim as to redaction sustained.*

*Redaction on BL 144531283-*This is the same redaction on a different email string. All recipients have a need to know and the redacted information reflects legal advice. *Privilege claim as to redaction sustained.*

*Redaction on BL 144531275-*This is a specific request from Wilson for advice on a question that will have legal ramifications. All recipients have a need to know. Bob Bailey is copied and it is reasonable to assume that Wilson is seeking legal advice from Bailey and business advice from other corporate personnel. *Privilege claim as to redaction sustained.*

*Redactions on BL 1445311274-*There are two redactions on this page. The first in time is the body of an email from Jack Wong to Alan Horne, with Bob Bailey and others ccd. This is an explicit request for legal advice. All recipients have a need to know. *Privilege claim as to redaction sustained.*

The second redaction in time is an email from Bob Bailey to Jack Wong, Alan Wilson and others. It reports FDA and CDC statements about the decision to remove MoistureLoc from the market, and gives the urls for these statements. Despite the fact that a lawyer is directly involved in this communication, the reference to the public statements, along with web addresses, is not privileged. The lawyer is not giving legal advice, he is simply reporting information that any member of the public could know. See 2 Saltzburg, Martin & Capra, *Federal Rules of Evidence Manual* at 501-20 ("Where the attorney is merely acting as a conduit for information, i.e., as a messenger, the privilege is inapplicable."), and the cases cited therein.

**\*14** While Bailey's reference to, and quotation of, the FDA/CDC statements is not privileged, there are two parts of the email that do reflect legal advice and are privileged: the second sentence of the body of the email, and the last two sentences of the email, immediately after the quotations. I note that under New York law, confidential communications from the lawyer involving legal advice are protected by the privilege even if they do not reflect client communications. See CPLR 4503 (extending the privilege to communications "between the attorney ... and the client"); *Rossi, supra* (explicitly providing protection to communications by the lawyer to the client). The redaction of this information is therefore proper. *Privilege claim as to redaction sustained in part and denied in part.*

*Redaction on BL103867311-*This is the same redaction as in BL 144528650. *Privilege claim as to redaction sustained.*

*Redactions on BL 103867302-*There are two redactions on this page. The first in time is the same as the redaction on BL 1445311275: An email from Alan Wilson to Bob Bailey and others, seeking legal advice. *Privilege claim as to redaction sustained.*

The second redaction in time is the same as the first one on BL 1445311274-the body of an email from Jack Wong to Alan Horne, with Bob Bailey and others ccd. This is an explicit request for legal advice. All recipients have a need to know. *Privilege claim as to redaction sustained.*

*Redactions on BL 103867301-*There are two redactions on this page. The first in time is an email from Arthur Ng to Alan Wilson and Jack Wong, ccd to Bob Bailey and Raymond Cheng. It asks for advice on how to respond to the Hong Kong Department of Health. This is an explicit request for legal advice from Bob Bailey, even though business advice is probably being sought from the others. As such it is privileged. *Privilege claim as to redaction sustained.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The second email in time (which actually begins on BL103867300) is from Raymond Cheng to James Barton and others. No lawyer is involved in this email. The email sends the prior email string and summarizes the issues on getting a third party endorsement. As such it seeks to implement legal advice and is privileged.. *See, e.g., [Santrade, LTD. v. General Electric Co., 150 F.R.D. 539, 543 (E.D.N.C.1993)](* ("documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately").*Privilege claim as to redaction sustained.*

*Redaction on BL 103867300*-This is an email from Tony Tan to James Barton and others. No lawyer is involved in this email. The first line of the email is not privileged as it simply states that Tan will not be able to join a conference call and "here's what I think we should expect ..." Then there are three numbered paragraphs. Paragraph one summarizes Alan Wilson's position on third-party testing. This reflects legal advice once removed, and is privileged. However, Tan's opinions in paragraphs 2 and 3 appear to reflect his beliefs only, with no reference to legal advice and no indication that legal advice will be sought. Therefore these paragraphs are not privileged. Consequently, the only permissible redaction in this email is for the first numbered paragraph. *Privilege claim as to redaction sustained in part and denied in part.*

**\*15** *Redaction on BL103867299*-Bausch & Lomb has redacted the entire body of an email from James Barton to Tony Tan, Alan Wilson and others. No lawyer is involved in this email. Most of it provides Barton's assessment on third party endorsement. Most of it neither reflects nor shows the desire to seek legal advice. However, the third paragraph of the email does note the need for obtaining legal advice in one specific respect. This paragraph is the only part of the email that either reflects or prepares information for legal advice. Accordingly, the redaction of the third paragraph is proper but the rest of the redaction is not justified. *Privilege claim sustained as to the third paragraph and denied as to the rest of the email.*

*Redactions on BL103867298*-There are three redactions on this page. The first email in time (which begins on BL103867298 and runs over to BL103867299) is an email from Brian Levy to a number of corporate officials-but no lawyers. It provides information concerning third party testing. This email does not reflect, nor does it prepare communications or information for obtaining, legal advice. The email must be produced unredacted. *Privilege claim denied.*

The second email in time is from Raymond Cheng to Brian Levy, ccd to others, but no lawyer. All it says is that it "is really great if we will soon have the 3rd party evaluation report." This in no way reflects legal advice, nor any interest in preparing information for the lawyer, and must be produced in unredacted form. *Privilege claim denied.*

The third email in time is from James Barton to Raymond Cheng, Brian Levy and others. No lawyers are involved. It refers to Quantec and notes the urgency of the situation. This in no way reflects legal advice, nor any interest in preparing information for the lawyer, and must be unredacted. *Privilege claim denied.*

*Redactions on BL103867297*-There are three redactions on this page. The first email in time is from Alan Wilson to James Barton and others. The first sentence simply states that Wilson is on vacation and not able to patch in via phone. It is absolutely not privileged and this sentence must be produced unredacted. The second sentence specifically reflects the need for obtaining legal advice. It is therefore privileged. *Privilege claim denied as to the first sentence and sustained as to the second sentence.*

The second email in time is from James Barton, responding to Wilson's suggestion for seeking legal advice and copying Bob Bailey and providing him an update. This is an explicit request for legal advice and so clearly is privileged. All parties on the email have a need to know. *Privilege claim sustained.*

The third email in time is from Michael Santalucia to James Barton, copied to Bob Bailey and others. It implicitly seeks legal advice from Bailey on how to approach the Hong Kong Department of Health. All parties on the email have a need to know. *Privilege claim sustained.*

**\*16** *Redactions on BL103867296-*There are three redactions on this page. The first email in time is from James Barton to Michael Santalucia and others, copied to Bob Bailey, expressing Santalucia's opinion on the position of the Hong Kong Department of Health with respect to the third-party endorsement. Santalucia specifically asks for the opinion of Raymond Cheng and Jack Wong. He does not ask for Bailey's opinion. This email appears to be an expression of Barton's opinion and an explicit request for business advice. Simply copying the email to the lawyer does not gain a privilege. It's one thing to allow a corporate agent to seek legal advice from a lawyer and business advice from another corporate official in the same email. It's another for a corporate official to specifically ask for business advice in an email and route it to the lawyer. This email is not privileged and must be produced in unredacted form. *Privilege claim denied.*

The second email in time is from Raymond Cheng to James Barton and others, including Bob Bailey, asking if certain information can be released to the Hong Kong Department of Health. This is an implicit request for legal advice from Bailey and as such is privileged. Unlike the previous email, there is no indication that the lawyer is an afterthought. Everyone on the email has a need to know. *Privilege claim sustained.*

The third email in time starts on the previous page (BL103867295), and is from Alan Wilson to Raymond Cheng, et al, copied to Bob Bailey. This is definitely privileged as it seeks legal advice on whether certain should be released. All on the email have a need to know. *Privilege claim sustained.*

*Redactions on BL 103867295-*There are two redactions on this page. The first email in time is from Raymond Cheng to Alan Wilson. It explicitly states that he is waiting on Bob Bailey's input on the proper form on content of a disclosure. This is definitely privileged as it refers to the need for legal advice, and all on the email have a need to know. *Privilege claim sustained.*

The second email in time is from Alan Wilson to Raymond Cheng et al, copied to Bob Bailey. The first paragraph (two sentences) simply refers to the attachment "minus my notes and a picture or two (with pictures, it is too big for email)." This sentence involves no legal advice at all and must be produced unredacted. The second paragraph (one sentence) implicitly seeks legal advice on the proper form of a public presentation and is privileged. *Privilege claim denied as to first paragraph and sustained as to second paragraph.*

*Exhibit 14-BL000190357-BL000190363*

Exhibit 14 is an email string concerning a possible response by Bausch & Lomb officials in the Asia region to the withdrawal of ReNu with MoistureLoc manufactured at the Greenville facility from the worldwide market. The email string was produced with a number of redactions. These redactions are reviewed in reverse order-climbing up the email tree rather than down it seems to be a more effective way to determine what was sent out when.

**\*17** *Redaction on BL000190361-*Bausch & Lomb has redacted the entire body of an email from Venkteshwaran Suresh (Vision care marketing) to James Barton, and others, including an engineer

and another person involved in marketing. Some of these people seem fairly far down in the corporate chain (at least given the information presented to the Special Master). But the "need to know" test from *Glaxo, supra,* is not rigorous-it simply requires that "the contents of the documents are related generally to the employees' corporate duties." That test is met here. I note that the email was not distributed widely throughout the corporation, as was the case in *Coastal States Gas Corp. v. DOE,* 617 F.2d 854, 863 (D.C.Cir.1980) (confidentiality lost when organization "admitted that it does not know who has had access to the documents, and there is undisputed testimony that copies of the memoranda were circulated to all area offices"). Furthermore, the email explicitly reports advice of counsel and so is privileged even though it is not routed to lawyers. *Privilege claim sustained.*

*Redaction on BL000190360-*Bausch & Lomb has redacted the entire body of an email from Jack Wong to Suresh and others concerning testing in India. This email is a request to obtain advice from local counsel and so is privileged. *Privilege sustained.*

*Redactions on BL000190359-*This page contains two emails, the bodies of which are redacted in their entirety. (There is also a redaction that runs over from the previous page, that will be considered below). The first email in time is from David Hanlon to Amit Singhal, an engineer, discussing the methods that need to be employed for testing to prevent the generation of bad data. There is no lawyer involved in this email and it appears to be purely about science and proper scientific methods. There is no indication that Hanlon is implementing legal advice in suggesting a scientific protocol. There is no indication that the communication is to prepare information for counsel's use. Accordingly, Bausch & Lomb has not met its burden of showing that legal advice is being or has been sought. This email must be produced without redaction. *Privilege claim denied.*

The second email in time is from Amit Singhal to Dennis Fu and Jugesh Singh, the Managing Director of Office Administration in India. This email clearly relates advice of local counsel. So it is privileged in its entirety. *Privilege claim sustained.*

*Redactions on BL000190358-*This page contains three redacted emails, one of which runs over to the next page. The first email in time (which runs over) is from Dennis Fu to Amit Singhal and Jugesh Singh, expressing skepticism about certain testing and suggesting a proper procedure for testing by local labs. There is no lawyer on this email. Nothing in the email relates legal advice and there is no attempt to prepare information to obtain legal advice. None of the reservations expressed come from any lawyer. So it is not privileged and must be produced in its entirety. *Privilege claim denied.*

**\*18** The second email in time is from Dennis Fu to Amit Singhal and others. No lawyer is involved. There is a reference to advice of counsel, which is protected by the privilege, but Fu then expresses his own extra-legal concerns. It is apparent that Fu's expressed concerns involve scientific and not legal questions. It follows that a portion of this email must be unredacted: specifically, everything after the comma in the second sentence of the email must be produced in unredacted form. *Privilege claim sustained in part and denied in part.*

The third email in time is from Dennis Fu to Jugesh Singh and others. It is partially redacted. The redacted information refers to advice of counsel received and is accordingly privileged. *Privilege claim sustained.*

*Exhibit 15 (BL100089618-BL100089620)*

Exhibit 15 is an email string concerning the investigation of a Fusarium case in Italy. It was produced with a redaction of one of the emails-that email is from Giuliano Nannini (General Manage of Bausch & Lomb, Italy) to Bob Bailey and others. It apprises Bailey of legal developments and is at least

an implicit request for legal advice. All others on the email had a need to know. The redacted information is privileged. *Privilege claim sustained.*

*Exhibit 16 (BL107098171)*

After discussion with the Special Master, Bausch & Lomb commendably has agreed to withdraw its claim of privilege as to Exhibit 16 and has produced the document.

*Exhibit 17 (BL134452467-BL134452468; and BL134452538-BL134452539)*

Exhibit 17 contains two identical, redacted emails from Dwain Hahs (Senior V.P and President Asia) to all Singapore email users and to all Hong Kong email users. It is a litigation hold notice, which among other things identifies those who may be in possession of relevant documents and thus may be subject to the hold. Bausch & Lomb claims the work product protection for the redactions. Plaintiffs claim that the work product protection cannot apply because no lawyer is involved in the emails. But in fact the work product immunity protects material prepared by non-lawyers in anticipation of litigation. *See In re Cendant Corp. Sec. Litig., 343 F.3d 658, 666 (3d Cir.2003)* (noting that "the work product doctrine extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation"). Certainly compiling a list of those with relevant documents involves trial preparation, and disclosure of that list could reveal mental impressions concerning claims or defenses.

While work product protection is qualified and not absolute, plaintiffs have made no case for a need for the information contained in the litigation hold notice. *Accordingly, Bausch & Lomb's assertion of work-product immunity is sustained.*

*Exhibit 18 (BL100100417-BL100100422)*

Exhibit 18 is an email string, with the body of one email redacted. That email is from Ron Zarella to Ruth McMullin, Director of the Board of Directors, concerning a tax dispute. It appears that the redacted email is unrelated to the rest of the string. No lawyer is involved in the email and so it can be privileged only to the extent that it reflects advice of counsel or is prepared with the intent that information will be provided to counsel. *See Santrade, supra.*

**\*19** The first two sentences of the email provide Zarella's own opinion concerning the tax matter and states that there have been weekly meetings on the subject. These sentences do not reflect legal advice nor any attempt to obtain legal advice, and therefore they must be produced without redactions.

The third sentence relates a lawyer's legal opinion on the matter and is privileged.

The fourth and fifth sentences refer directly to legal advice and the need to obtain it, and are privileged.

The sixth sentence provides Zarella's assessment of the matter and there is no indication that it is reflective of legal advice. So this sentence must be produced without redaction.

The seventh sentence concerns risk and it is reasonable to assume that it reflects the advice of a lawyer. So it is privileged.

The last sentence of the email is about scheduling and is not reflective of legal advice. It must be produced without redaction.

*Privilege claim sustained as to the third, fourth, fifth and seventh sentences of the email. Privilege denied as to the remainder of the email.*

*Exhibit 19 (BL105793320)*

Exhibit 19 is an email from Ron Zarella to Robert Stiles (General Counsel) and Steve McCluski (CFO) concerning an accounting update prepared

for a member of the Board of Directors. The attachment, which is the update, has already been produced. Bausch & Lomb claims privilege with respect to the body of the email, which contains Zarella's observations concerning the accounting update. These observations clearly involve legal matters, and are directed explicitly to the general counsel of the corporation, from whom legal advice is sought. As such, the redacted material is clearly privileged.

*Privilege claim sustained.*

Order

Defendant must produce the following documents, with the limitations stated, within five days:

*Exhibit 2 (BL105793290-318):* This document must be produced, but defendant may redact any statement or information that is not included in the document as finally published.

*Exhibit 3 (BL100101027):* Defendant must produce the email from Barbara Kelley dated May 11, 2006.

*Exhibit 5 (BL100879259):* The attachment to the email must be produced, but defendant may redact any statement or information that is not included in the document as finally published. (The three emails are protected by the privilege).

*Exhibit 6*

   BL 100089266-BL100089276: This document must be produced, but defendant may redact any statement or information that is not included in the document as finally published.

   BL 157420112-BL157420118: This document must be produced, but defendant may redact any statement or information that is not included in the document as finally published.

*Exhibit 7 (BL105792809):* This document must be produced in its entirety.

*Exhibit 8*

   BL122438503-BL122438503A: The attachments to the email must be produced, but defendant may redact any statement or information that is not included in the documents as finally published. (The redaction in the email is protected by the privilege).

   **\*20** BL105792872; BL105792873-BL105792878; BL105792879; and BL105792880-BL105792881: These documents must be produced, but defendant may redact any statement or information that is not included in the documents as finally published.

*Exhibit 9 (BL134450950-BL134450961):* This email string must be produced in its entirety.

*Exhibit 11 (BL134431726-BL134431729; BL134431723-BL134431725; BL134431718-BL134431719 BL 134450577-BL134450578):* These email strings must be produced in their entirety.

*Exhibit 12 (BL134431951-BL134431952):* This document must be produced in its entirety.

*Exhibit 13*

   *Redaction on BL 1445311274-*The email from Bob Bailey must be produced but defendant may redact the second sentence and the last two sentences of the email.

   *Redaction on BL 103867300-*The email from Tony Tan to James Barton and others must be produced but defendant may redact the first numbered paragraph.

   *Redaction on BL103867299-*The email from James Barton to Tony Tan and others must be produced but defendant may redact the third paragraph.

   *Redactions on BL103867298-*The first email in time (which begins on BL103867298 and runs

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

over to BL103867299), an email from Brian Levy, must be produced in unredacted form. The second email in time, from Raymond Cheng to Brian Levy and others, must be produced in unredacted form. The third email in time, from James Barton to Raymond Cheng and others, must be produced in unredacted form.

*Redactions on BL103867297*-The first email in time, from Alan Wilson to James Barton and others, must be produced, but defendant may redact the second sentence.

*Redactions on BL103867296*-The first email in time, from James Barton to Michael Santalucia and others, must be produced in unredacted form.

*Redactions on BL 103867295*-The second email in time, from Alan Wilson to Raymond Cheng and others, must be produced, but defendant may redact the second paragraph.

*Exhibit 14*

*Redactions on BL000190359*-The first email in time, from David Hanlon to Amit Singhal, must be produced in unredacted form.

*Redactions on BL000190358*-The first email in time (which runs over to BL00190359), from Dennis Fu to Amit Singhal and Jugesh Singh, must be produced in unredacted form. The second email in time, from Dennis Fu to Amit Singhal and others, must be produced, but defendant may redact the first sentence and the second sentence up to the comma.

*Exhibit 18 (BL100100417-BL100100422):* This email must be produced, but defendant may redact the third, fourth and fifth sentences.

SO ORDERED:

D.S.C.,2008.
In re New York Renu with Moistureloc Product Liability Litigation
Not Reported in F.Supp.2d, 2008 WL 2338552 (D.S.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.