## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

TIMEBASE PTY LTD.,

                Plaintiff,

vs.

THE THOMSON CORPORATION,
WEST PUBLISHING CORPORATION,
and WEST SERVICES, INC.,

                Defendants.

**Civil No. 07-1687 (JNE/JJG)**

_____

## DEFENDANTS' RESPONSE TO

## PLAINTIFF'S CLAIM CONSTRUCTION BRIEF
_____

**TABLE OF CONTENTS**

**I.  INTRODUCTION** .................................................................................................. 1

**II.  CLAIM CONSTRUCTION** ................................................................................. 1

    **A.  Multidimensional Space** ............................................................................. 1

        **1.  TimeBase Ignores Its Original Construction** ............................. 1

        **2.  TimeBase Ignores the Overwhelming Intrinsic Evidence** ....................... 2

        **3.  TimeBase Acknowledges Movement** ........................................... 4

        **4.  TimeBase Misinterprets the Prosecution History** ..................... 5

        **5.  TimeBase's Claim Differentiation Argument Is Without Merit** ........... 6

    **B.  Linking Means** ............................................................................................ 8

    **C.  Link** ................................................................................................................ 8

    **D.  Each** ............................................................................................................. 10

    **E.  Attributes** .................................................................................................. 11

    **F.  Graphical Representation** ...................................................................... 11

    **G.  Displaying** ................................................................................................. 12

    **H.  Portion / Dividing / Predefined / Predefined Portion** ..................... 13

**III.  CONCLUSION** ................................................................................................. 14

I.  **INTRODUCTION**

West agrees with TimeBase on one overriding principle of claim construction: "Clarity is important." (TB Brief, at 2.) Yet in each of TimeBase's proposed constructions, TimeBase goes out of its way to avoid clarity and instead seeks ambiguity to confuse the finder of fact—here, a jury—on the key issues of infringement and validity of its two patents. Once the Court properly clarifies these terms, it will become apparent that the accused products do not infringe any claim of either patent because, among other things, the accused products lack the claimed "multidimensional space" and the claimed "links."

II.  **CLAIM CONSTRUCTION**

A. **Multidimensional Space**

   1. **TimeBase Ignores Its Original Construction**

TimeBase fails to mention that TimeBase itself first suggested that the multidimensional space "allows movement along different axes or pathways." (Dkt. 140-20, Tab. B, at 4.) TimeBase proposed this phrase just three months ago, in April 2010, after TimeBase had prosecuted both patents and after TimeBase had received "the benefit of the Patent Office's expertise" during reexamination. (TB Brief, at 1.)

Let there be no mistake: West does not oppose TimeBase's original phrase. (West Brief, at 18–19.) West agrees that either of the following constructions would be correct:

- An area not having boundaries and that is capable of, or involves, more than three dimensions, **and which allows movement along different axes or pathways** (TimeBase's original phrase), *or*

1

- An area not having boundaries and that is capable of, or involves, more than three dimensions, **where the dimensions are axes along which point-to-point movement is allowed** (West's proposed alternative).

### 2. TimeBase Ignores the Overwhelming Intrinsic Evidence

TimeBase argues that the multidimensional space does nothing more than *organize* pieces of text, that this organization of multidimensional space does not require any type of point-to-point movement, and that point-to-point movement is therefore merely an optional feature of some embodiments of the invention. (TB Brief, at 22–24.) The multiple flaws in this argument include: (1) without the ability to move along different axes or pathways, the multidimensional space has no organization; (2) the very purpose of the organization of the claimed multidimensional space is to allow such movement; and (3) the specifications never suggest that such movement is somehow optional. The requirement of allowing point-to-point movement along different axes or pathways is part of the fabric of the invention, as illustrated in the table below.

| Cite | Description | Confirms point-to-point movement along different axes or pathways? |
|---|---|---|
| '592, 7:26–27 | "**following one or more pathways** through the multidimensional space" | Yes |
| '592, 7:66–67 | "it is possible **to move easily between points** in the multidimensional space" | Yes |
| '592, 8:1–3 | "**a course** 320 through the information represented in the three-dimensional space 100 **can be easily plotted**" | Yes |
| '592, 8:3–5 | "The user begins the course 320 at node 302 and **progresses vertically downward** to the fourth node 304." | Yes |

2

| Cite | Description | Confirms point-to-point movement along different axes or pathways? |
|---|---|---|
| '592, 8:5–6 | "the **plotted course** 320 is flexible." | Yes |
| '592, 8:10–12 | "A first embodiment of the invention … **allows movement along different axes or 'pathways.'**" | Yes |
| '592, 10:25–27 | "**FIG. 4 provides an example** of how legal information **is navigated by** an end user." | Yes |
| '592, 10:56–59 | "In the six-dimensional case, **it is possible to move along each axis and at the points of intersection change direction** …." | Yes |
| '592, 10:63–64 | "The user then **follows a path** in the legislation …." | Yes |
| '592, 11:3–6 | "The user then selects Section 4 … by **moving to** node 410 (**along the X-axis**)." | Yes |
| '592, 11:7–10 | "The user can then **move to** other information … by **going to** nodes 412 and 414 for case and journal article information, respectively, **along the Z-axis**." | Yes |
| '592, 11:13–15 | "**Other more complicated and interrelated pathways** involving axes U, V and W are possible. For example, the user can **move to axis U** (jurisdiction) …." | Yes |
| '228, 20:4–6 | "The method then **allows for one of a number of potential axes … to be selected and subsequently navigated**." | Yes |
| '228, 20:14 | "any number of axes **may be displayed and navigated** …." | Yes |
| '228, 20:23–25 | "the user may then **move to** [a] second node on an orthogonal axis, being the Versions axis." | Yes |

3

| Cite | Description | Confirms point-to-point movement along different axes or pathways? |
|---|---|---|
| TimeBase's statement (Dkt. 140-8, at 16.) | "the multi-dimensional space of claim 1 may be displayed in a concrete form as an end-user interface (See, e.g., Figures 7–17). In this case, because of the predefined nature of the multidimensional space, **the pathways for navigating from one predefined portion to any other predefined portion are known**." | Yes |
| Examiner's statement (Dkt. 140-9, at 16.) | "By fixing one Dimension or two … **one can trace through the other coordinates or Dimensions** … and find the changes with respect to other variables." | Yes |

TimeBase runs away from this intrinsic evidence, and for good reason: Based on this evidence, a person of ordinary skill in the art would understand that the "dimensions" in the multidimensional space are either organized to "allow movement along different axes or pathways" or are organized as "axes along which point-to-point movement is allowed." (West Brief, at 19.)[1]

### 3. TimeBase Acknowledges Movement

TimeBase inadvertently acknowledges that the multidimensional space necessarily allows point-to-point movement. TimeBase states that "the attributes are used in conjunction with links, in order to '*travel*' in the multidimensional space to a desired location representing textual data." (TB Brief, at 6.) And TimeBase describes Figure 4

---

[1] TimeBase incorrectly argues that West ignores the second embodiment. (TB Brief, at 24.) The second embodiment is merely a four-paragraph variation on the first embodiment and does not in any way alter the patents' discussion elsewhere about the multidimensional space.

4

as illustrating how a user views a section of legislation and then "***moves to***" another section. (TB Brief, at 19–20.) Even TimeBase's analogy confirms point-to-point movement. TimeBase likens the multidimensional space to a neighborhood, suggesting that a piece of text is like a house, and the attributes of the text are like the house's address. (TB Brief, at 6.) Importantly, neighborhoods have *streets* on which one might travel, move, or navigate from one house to the next. Thus, TimeBase's analogy actually demonstrates the necessity of allowing point-to-point (*i.e.* house-to-house) movement.

### 4. TimeBase Misinterprets the Prosecution History

TimeBase argues that the prosecution history reveals that a multidimensional space organizes text into dimensions without allowing point-to-point movement along each dimension. (TB Brief, at 25–26.) During reexamination, however, the PTO made clear that the multidimensional space is *more than* "a sequential set of attributes with no organization and no relationship." (Dkt. 140-9, at 6.) The examiner described the additional feature of the multidimensional space as the ability to "trace through" one dimension while holding the others constant. (*Id.*) TimeBase also argues that "[t]he construction of the claims here must be consistent with the analysis in the reexamination of the '592 patent." (TB Brief, at 1.) During reexamination, the PTO interpreted the multidimensional space to require point-to-point movement. (Dkt. 140-9, at 6 ("By fixing one Dimension or two … one can trace through the other coordinates or Dimensions.").)

### 5. TimeBase's Claim Differentiation Argument Is Without Merit

TimeBase offers a misguided claim differentiation argument based on the terms used in certain dependent claims, such as the '592 patent claims 5, 24, and 44, which require a "means for searching … and for retrieving … predefined portions using said plurality of attributes." (TB Brief, at 23.) Searching and retrieving are alternative means of locating documents, so these dependent claims in no way contradict Thomson's proposed construction requiring the ability to navigate from point-to-point. Indeed, none of these dependent claims use the words "point-to-point movement" or "allows movement along different axes or pathways" or words to this effect.

The patents explain that the dependent claims' features of searching and retrieving are depicted in, for example, Figure 16. ('592, 14:9–17.) Figure 16 depicts a computer screen that allows a user to enter search terms and retrieve all matching legislation:



Fig. 16

The patent specifications emphasize that this figure pertains to searching and retrieval, stating: "There is also the more direct approach of *searching for terms using text retrieval*. The screen shots in FIGS. 16 and 17 illustrate such searching provided by the first embodiment." ('592, 14:7–15 (emphasis added).)

In contrast, the patents make clear that other figures depict the point-to-point movement required by the multidimensional space, stating that the "screen shots in FIGS. 7 to 15 display a step-through or navigation-based way of locating information." ('592, 14:6–7.) Importantly, the inventors described the "previous" and "next" buttons in Figure 13 as *cycling through* versions of text, and not as "searching" that text. ('592, 13:51–54.) In short, point-to-point movement is not something added by independent claim language

of "searching … and retrieving," but is instead a required feature of the multidimensional space in the independent claims.

**B.     Linking Means**

TimeBase concedes that "linking means" is presumptively a means-plus-function term, and that the presumption can be overcome only if the claim language itself recites sufficient structure. (TB Brief, at 16–17.) Yet TimeBase does not even attempt to identify the structure in the claim language that would overcome this presumption. Notably, TimeBase does not argue that the phrase "of a markup language" is the necessary structure. That is because "markup language" is too vague to overcome the presumption. As the patents state: "There are a number of different ways to add markup to data." ('592, 8:50–51.) Similarly, TimeBase acknowledges that "[i]n actual use, many different and more complicated markups can be used." (TB Brief, at 18.) Hence, TimeBase's own admissions reveal that "markup language" provides only general guidance, but no specific structure. *See TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259–60 (Fed. Cir. 2008) (requiring the exact structure).

TimeBase also concedes that the court must identify the function and the structure for each means-plus-function term. (TB Brief, at 17.) Yet TimeBase fails to provide any support for its own proposed function or structure. The Court should therefore adopt the function and structure proposed by West. (West Brief, at 32–33.)

**C.     Link**

TimeBase downplays the true nature of the parties' disagreement about the construction of "link." (TB Brief, at 17.) The true disagreement is two-fold: (1) whether

8

the express definition of link found in the '228 claims—"defined by one of the plurality of attributes"—should be adopted by the Court, and (2) whether that "one … attribute" must be a unique identifier (*i.e.* "Reference ID") of the target document. (West Brief, at 35–36.)

TimeBase does not address the first point of disagreement because it cannot. The claims expressly define "link" as requiring "one of a plurality of attributes." ('228, claims 1,15,24,38.) Therefore, at a minimum, a link must be markup language consisting of "one attribute." If the Court were to end its analysis there, and define a link to be "a logical connection between a block of text-based data and another specific block of text-based data, where the logical connection is *markup language consisting of a single attribute*," that construction would be consistent with the intrinsic evidence. (West Brief, at 35.)

TimeBase fails to acknowledge that the specification confirms that the single attribute must be the unique identifier of the target document. (West Brief, at 33, 36.) The specifications repeatedly provide examples showing that this is what the patents meant to convey, (*id.*), and the specification "is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). Indeed, this is the *only* type of link described by the intrinsic evidence. (West Brief, at 33, 36.)

Rather than confront the intrinsic evidence, TimeBase resorts to another misguided claim differentiation argument. TimeBase argues that the "reference IDs" proposed by West are an attempt to read the "identification code" in dependent claims 7,

9

18, 30, and 41 of the '228 patent into the independent claims. (TB Brief, at 20.) That is incorrect because a "reference ID" is broader than an "identification code." The identification code refers to a descriptive, unique attribute (a "code"), which is created by stringing together various pieces of descriptive information. For example, column 123 of the '592 patent describes an identification code consisting of four pieces of information linked by hyphens. In contrast, the "reference ID" proposed by West can be *any* attribute that is a unique identifier. For example, it might be a random number, a file name, *or* an "identification code." Because the "reference ID" does not need to be a code created by stringing together descriptive information, it is broader than an "identification code," and does not read the narrower definition into the independent claims.

**D.     Each**

TimeBase argues that if "each" is defined to mean "every one considered separately," as West proposes—and as this Court and others have often held—that definition will "work mischief" in the case. To the extent that adopting that widely accepted meaning of "each" might work mischief, that mischief was caused by the claim *drafting*, not claim *construction*. If TimeBase did not intend to require that "each" portion have a link or that "each" attribute be a point on an axis of a multidimensional space, then TimeBase should not have used the word "each." *See, e.g.*, *Mangosoft, Inc. v. Oracle Corp.*, No. Civ. 02-545-SM, 2004 WL 2193614, at *5 (D.N.H. Sept. 21, 2004), *aff'd*, 525 F.3d 1327 (Fed. Cir. 2008). In *Mangosoft*, the Court explained:

> Had Mangosoft intended the interpretation it advances here, it likely would have used language such as "comprising … a plurality of computers, *some of which* share the shared

10

>  addressable memory space." Alternatively, it might have said "a plurality of which" or "two or more of which" or "a subset of which" share the memory space. It did not. Instead, the '377 patent uses very specific language, which must be given meaning.

*Id.* (West Brief, at 38).

**E.    Attributes**

TimeBase fails to explain why the definition set forth in the patent specification, and adopted by the PTO—"characteristics or descriptors"—is not correct. (Dkt. 140-9, at 3 ("[A]dd to each piece of text, either expressly or implicitly, a number of attributes (characteristics or descriptors).").) To the contrary, TimeBase concedes that the definition "characteristics or descriptors" is "*not in*correct." (TB Brief, at 6.) In fact, TimeBase appears to have adopted this very definition when it said: "The attributes consist of information about some text." (TB Brief, at 5.) Consequently, the definition of attributes set forth in the specification (and emphasized by the PTO) should be adopted. (West Brief, at 39.)

**F.    Graphical Representation**

TimeBase argues that the '228 patent's Figure 19 is an example of a graphical display.



**Fig. 19**

Yet this figure is one of the same ones that TimeBase previously told the PTO was "*non-graphical.*" (Dkt. 140-14, at 28.) TimeBase does not explain this turnabout, and should now be precluded from arguing that Figure 19 *is* graphical. (West Brief, at 43.)

G.   **Displaying**

Contrary to TimeBase's assertion (TB Brief, at 10), the specification *never* discloses printers as an embodiment for displaying the system's text, links, and search results. Instead, the patents repeatedly emphasize that the "display" is on a "video

display" (*i.e.* computer screen). (West Brief, at 43–44.) While the patents do say that "output devices" (*i.e.* printers) "can be connected" to the system, they never imply that these output devices might perform the steps of "displaying," as required by every one of the '228 patent's independent claims. (*Id.*)

### H. Portion / Dividing / Predefined / Predefined Portion

TimeBase argues that these terms require someone to perform "an analysis of the nature of the information and knowledge of how the information will be used," and then use that analysis to decide the optimum size of a predefined portion of text-based data. (TB Brief, at 7–9, 26–31.) That construction is incorrect; it is TimeBase's attempt to read a limitation into the claims to avoid prior art. If TimeBase had wished to claim this data analysis, TimeBase could have tried to claim method steps of "analyzing the nature of the information, determining how the information would be used, and choosing a 'suitable' size of text." Similarly, TimeBase could have tried to claim "predefined portions of a size suitable for user access based on an analysis of the nature and expected use of the information." TimeBase should not be permitted to add these limitations now. (West Brief, at 47.)

TimeBase's constructions also remain impermissibly vague. TimeBase provides no guidance about how to determine whether a portion is "suitable." The patents do not even identify the most suitable portion size for Australian legislation—the application described in the patents. Instead, they say that the portions of Australian legislation are "preferably at the section, schedule level, *or* provision level." ('592, 7:12.) There is no right or wrong way to divide the text into portions. Instead, the suitability of a particular

13

portion size is a subjective decision, and should be rejected. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005) (holding that the claim term required subjective judgment, and was indefinite).

### III. CONCLUSION

Defendants respectfully ask that the Court adopt their concrete constructions of the disputed claim terms and reject TimeBase's vague and ambiguous definitions.

Dated:   July 9, 2010                              **FAEGRE & BENSON LLP**

By:  /s/ Katherine S. Razavi
David J.F. Gross #208772
Calvin L. Litsey #153746
Mary V. Sooter (*pro hac vice*)
Kevin P. Wagner #034008X
Katherine S. Razavi #388958
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
Fax:  (612) 766-1600
Email: dgross@faegre.com
Email: clitsey@faegre.com
Email: msooter@faegre.com
Email: kwagner@faegre.com
Email: krazavi@faegre.com

**Attorneys for Defendants The Thomson Corporation, West Publishing Corporation, and West Services, Inc.**