# Exhibit 9

Westlaw

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Florida,
in Admiralty.
Alan KALLAS, Diane Kallas, Julie Kallas individually and as next friend of Hailey Kallas, Deborah Lindquist, Tina Prichard, Quinton D. White, Donald Earl and Carol Earl, Plaintiffs,
v.
CARNIVAL CORPORATION, individually and d/b/a Carnival Cruise Lines, Inc., a foreign corporation, jointly and severally, Defendant.
No. 06-20115-CIV.

May 27, 2008.

Bradley Ryan Weiss, Benson, Mucci & Associates LLP, Coral Springs, FL, Kenneth J. Hardin, II, Hardin & Associates, Bingham Farms, MI, for Plaintiffs.

Curtis Jay Mase, Natasha K. Talib, Rachel Sherry Cohen, Joel Victor Lumer, Mase & Lara PA, Miami, FL, for Defendant.

**ORDER ON MOTION TO COMPEL BETTER RESPONSES TO SUPPLEMENTAL REQUEST FOR PRODUCTION TO PLAINTIFFS**

EDWIN G. TORRES, United States Magistrate Judge.

*1 This matter is before the Court upon the Defendant's Motion [D.E. 110] for entry of an order compelling Plaintiffs to produce additional documents in response to Defendant's Supplemental Request for Production to Plaintiffs. The case has been referred to the undersigned for disposition of all pretrial matters by the Hon. Federico A. Moreno. After review of the pending motion, Plaintiffs' response in opposition [D.E. 115], Defendant's reply [D.E. 119], and the arguments of counsel during two hearings conducted in response to the pending motion, the matter is ripe for disposition.

*I. BACKGROUND*

This case is based on claims filed by Plaintiffs and proposed class members for injuries arising from a spread of Norovirus aboard Defendant's vessel, Carnival Miracle, between the dates of January 23 and 30, 2005. The pending discovery dispute flows from supplemental discovery requests served by Defendant that relate to the Plaintiff's pending amended motion for class certification [D.E. 106]. In support of their numerosity and commonality arguments, Plaintiff's amended motion included two affidavits (the Sabaj and Orzechowski affidavits) that were prepared by employees working for Plaintiff's counsel that conducted a series of telephone interviews with passengers aboard the vessel during the cruise at issue. The affidavits were filed generally to show that numerous other persons on the vessel suffered symptoms associated with a spread of Norovirus who could be potential class members in this case.

For instance, paragraph 4 of the Sabaj affidavit states that "I have been personally involved in attempting to contact individuals listed on the passenger manifest for the subject cruse ... and in entering the information learned from them into Epi Info, a database for compiling epidemiological data." She adds in paragraph 5 that 314 passengers were contacted and asked (1) if they had experienced Norovirus symptoms, during, or immediately after, such cruise; (2) if they were ill, specific facts regarding their illness were noted, including whether they visited the ships infirmary; (3) if they were ill or not, whether they heard or observed any warn-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2
Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

ings regarding Norovirus or gastrointestinal illness during the subject cruise, on the television in their cabin or otherwise. Paragraphs 6 and 7 of the Sabaj affidavit states that 50 of the people interviewed reported symptoms of Norovirus, and of those thirteen visited the ship infirmary. Finally, paragraph 8 of the Sabaj affidavit states that all but one person contacted received no warning regarding Norovirus and gastrointestinal illness.

Defendant's discovery requests demanded production of documents related to that investigation and the method and manner by which the affiants conducted their interviews, the questions they asked, the documents they reviewed, and the answers they were provided. Defendant served its Supplemental Request for Production to Plaintiffs on February 14, 2008. Plaintiffs served their Responses to Defendant's Supplemental Request for Production to Plaintiffs on March 14, 2008. Defendant's first request for production sought all data and information contained in the Epi Info database referenced in the Sabaj affidavit, but Plaintiffs objected to production of those documents based on work product protection under Fed.R.Civ.P. 26(b)(3)(A) and (B). Plaintiffs provided only information regarding the specific items listed in the Sabaj affidavit, specifically the names of individuals with vomiting and/or diarrhea who went to the vessel's infirmary, individuals reporting vomiting and/or diarrhea whether or not they went to the infirmary, and the number of individuals who reported receiving no warning regarding gastrointestinal illness. Plaintiffs did not provide a privilege log as to any documents withheld from the production.

*2 Defendant's second request for production sought all data and information inputted into the Epi Info database referenced in the Sabaj affidavit. The documentation sought in the this request was almost the same as the documentation sought in the first request for production, the difference being that the first request for production sought all information "contained" in the Epi Info data base and the second request for production sought all information "inputted" into the same data base by Jennifer Sabaj. Defendant's third request for production sought all documents, including but not limited to raw data, notes and/or calculations, relied upon in preparing the Sabaj affidavit. This request sought documents used or relied on by Jennifer Sabaj in preparing her affidavit that are not contained in the Epi Info data base, such as the completed questionnaires, interview notes, or any other documents that were generated by the surveys that lead to the factual statements in the affidavit. Plaintiffs objected to these requests as protected work product under Fed.R.Civ.P. 26(b)(3)(A) and (B).

Finally, Defendant's fourth request for production sought documents like raw data, notes and/or calculations that relied up on in preparing the Orzechowski affidavit. Defendant's fifth request for production sought all other information obtained during interviews of the passengers from the cruise at issue. Defendant stated that this was a catchall request for documentation concerning the telephone interviews addressed by the Sabaj and Orzechowski affidavits that fell outside the parameters of Request Nos. 1-4. And Defendant's sixth request for production sought the questionnaires or forms used to interview the passengers from the cruise. Plaintiffs also objected to all these requests as protected work product under Fed.R.Civ.P. 26(b)(3)(A) and (B).

In response to Defendant's motion to compel production of all these documents, based on the argument that any work product protection had been waived as to them after the filing of the Sabaj and Orzechowski affidavits, Plaintiffs argued that they were willing to provide information related to the preparation of the affidavits and the survey the affiants conducted that they believed did not invade their work product privilege. Plaintiffs offered to answer written interrogatories related to the affidavits or produce the employees for their depositions so long as the questions asked did not "tread"

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

into areas of attorney-client or work product privilege. Plaintiffs continued to object, however, to production of any documentation beyond that which they had already provided as attachments to the affidavits.

At the hearing conducted in response to the pending motion, Plaintiffs were willing to withdraw the subject affidavits in lieu of a ruling on the motion to compel, in exchange for additional time for Plaintiffs to provide affidavits from the passengers themselves relating to their experience during the subject cruise. Defendant objected to that process, however, citing the fact that this would unduly delay the class certification process that had been well on its way to completion, with the exception of the production of these documents and the taking of the depositions of Sabaj and Orzechowski. Defendant argued that it would be prejudiced by that delay as they had already conducted class certification discovery and were prepared to file their response to the amended motion for certification. Defendant requested that a ruling be entered on their pending motion.

## II. ANALYSIS

*3 "The attorney work-product privilege traces its roots to the recognition by the Supreme Court, in *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.' " *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir.1994), *opinion modified on reh'g on other grounds*, 30 F.3d 1347 (11th Cir.1994); *see also United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir.2001) ("The work-product doctrine reflects the strong 'public policy underlying the orderly prosecution and defense of claims.' "). That public policy has been codified and is now governed by the principles set forth in Federal Rule of Civil Procedure 26(b)(3) that reads in pertinent part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

A party must anticipate litigation *at the time* the documents were drafted for these protections to apply. *CSK Transp., Inc., v. Admiral Ins. Co.*, No. 930132-CIV-J-10, 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995). Materials or documents drafted in the ordinary course of business are not protected. *Id.* Ordinarily, therefore, one must focus on *when* the document was created, and *why* it was created. *See, e.g. In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir.1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.' "); *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp.*, 2003 WL 21146674, *14 (M.D.Fla. May 13, 2003) ("The testing question for the work product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omit-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

Page 4

ted).

Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product immunity. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company*, No. 6:04-CV-1838-Orl22JGG, 2006 WL 1733857 at *2 (M.D.Fla. June 20, 2006) (citing *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir.1998) ("the party asserting work product privilege has the burden of showing the applicability of the doctrine")); *Ameritrust Co., N.A. v. White*, 1993 WL 819124, *3 (N.D.Ga. Oct.20, 1993). "[t]he mere conclusory assertion that material sought is covered by ... work product privilege is not sufficient to render such material undiscoverable.").

*4 Here there is no question that the documents Defendant requested in the supplemental document request would ordinarily be protected work product. The telephone survey was conducted in preparation for the motion for class certification and long after the litigation was filed. The information was gathered and prepared by employees of the law firm of Plaintiffs' counsel, at the direction of counsel, for a litigation purpose. The results of the survey, and related documentation, would classically fall under the "fact work product" category. As fact work product, Defendant could not obtain that information in discovery absent a showing of substantial need and undue hardship under Rule 26(b)(3).

Moreover, counsel's internal documents evaluating or analyzing the results of the survey would also clearly fall into the "opinion work product category," that is almost entirely immune from discovery under the Rule. *See Cox*, 17 F.3d at 1422 ("Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.' ... '[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.' "); *Lake Shore Radiator, Inc. v. Radiator Express Warehouse*, 2007 WL 842989, *4 (M.D.Fla.2007) ("Opinion work product is absolutely immune from discovery."); *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 2008 WL 489016, *6 (N.D.Ga.2008) ("[T]he literal text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an attorney or representative.").

Defendant has not tried per se to show that the fact work product requested in the supplemental request for production should be produced based upon substantial need or undue hardship. That would be a difficult argument to make considering that the persons identified as potential class members through the telephone survey are equally available to Defendant as they were to Plaintiffs. Their names and addresses are well known to Defendant and thus Defendant's representatives or counsel could easily contact these people to make the same type of inquiry as Plaintiffs did. Moreover, these persons, having been identified as relevant witnesses/class members, could have been deposed to confirm whether or not they provided the information Plaintiffs relied upon, and the manner and method by which that information was provided to Plaintiffs. Consequently, the ordinary exception to work product protection under Rule 26(b)(3) does not apply here.

Defendant instead relies upon a separate principle that is also widely recognized. Work product is a "qualified privilege." It can thus be waived in a variety of ways. One example of a waiver is "when the covered materials are used in a manner that is inconsistent with the protection." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y.2002). Testimonial use of work product is a classic example of an inconsistent use of materi-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

als that belie continuing work product protection. Clearly a witness cannot offer testimony based on documents that he or she simultaneously claims are protected by the work product privilege. Thus, when the party claiming the privilege uses an investigator, or interviewer, as a witness and then attempts to prevent discovery of notes or other materials prepared by the investigator, or interviewer, on the subject of his or her testimony, it is settled that this waives the privilege. *See United States v. Nobles,* 422 U.S. 225, 239-40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

*5 In *Nobles,* a criminal defense counsel offered the testimony of his investigator to impeach the credibility of prosecution witnesses and the prosecution sought discovery of the report of the investigator that described his interviews with those witnesses. In rejecting the defense claim that the report was exempt from discovery as work product, the Supreme Court held:

The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony.14

FN14 What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances. Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

422 U.S. at 239.

Defendant can thus rely on the principle that, where investigative notes are needed to refute testimony offered by an adversary's investigator, those notes are not protected by the work product doctrine. *See, e.g., Petersen v. Wallace Computer Services, Inc.,* 984 F.Supp. 821, 826 (D.Vt.1997); *Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1099 (D.N.J.1996). Similarly, when a privileged document is used to impeach a witness on cross-examination, the work product privilege is waived because counsel had made testimonial use of the document. *E.g., United States v. Salsedo,* 607 F.2d 318, 320-21 (9th Cir.1979). And when a partial disclosure of work product is made during litigation the adverse party is entitled to related work product materials that may be used to counter the effect of that partial disclosure. *See Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.,* 200 F.R.D. 183, 193 (W.D.N.Y.2001); *In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 472-73 (S.D.N.Y.1996) (party cannot use work product as a sword and at the same time invoke the work product doctrine as a shield to prevent disclosure of the same or related materials); *Harding,* 914 F.Supp. at 1098 ("litigants must not manipulate the work product doctrine for their own benefit by attempting to selectively disclose their attorney's work product.").FN1

FN1. A related concept is based on implied waiver where fairness mandates disclosure of work product where a party's claims inherently are based on the substance of work product information. *See, e.g., Pitney Bowes, Inc. v. Mestre,* 86 F.R.D. 444 (S.D.Fla.1980); *Hollinger Int'l, Inc. v. Hollinger, Inc.,* 230 F.R.D. 508, 516

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

Page 6

(N.D.Ill.2005); *Granite Partners L.P. v. Bear Stearns & Co.,* 184 F.R.D. 49, 55 (S.D.N.Y.1999) (pre-litigation investigative report was partially the basis for lawsuit thus court ordered production of notes of witness interviews and supporting data because a "privilege may be impliedly waived where a party makes assertions in the litigation or 'asserts a claim that in fairness requires examination of protected communications.' "). That broader theory of subject matter waiver is not applicable here.

The affirmative use of work product materials in this case is readily clear when one reviews Plaintiffs' amended motion for class certification. To support their arguments in that motion, Plaintiffs chose to rely upon the investigative survey their counsel's agents conducted at counsel's direction. They could have obtained and filed affidavits from the persons that were interviewed, which would have generated no waiver of work product protection. Instead, they decided to file the affidavits of the investigators themselves, attaching as exhibits some of the information those investigators obtained from the witnesses. The investigators are testifying that the survey was accurate and that the results of the survey is as they are describing. That is clearly a testimonial use of what would have otherwise been work product protected information. Plaintiffs' counsel's strategic decision to use the paralegals in this manner opened the door to Defendant's request that they see the underlying materials relied upon by the paralegals to prepare their affidavits.

*6 This was the very same conclusion drawn in very similar circumstances by the federal district court in Montana, *Montana Land & Mineral Owners Ass'n, Inc. v. Devon Energy Corp.,* 2006 WL 1876859 (D.Mont. June 2, 2006). On a motion for class certification, the plaintiffs in that case relied upon two affidavits of paralegals employed by one of plaintiffs' law firms that testified as to the results of an investigation they conducted at counsel's direction. That investigation consisted of a review of documents produced by defendant that led to their preparation of a spreadsheet showing their analysis, which was attached to the affidavits. *Id.* at *1. The filing of these affidavits caused defendant's counsel to demand the production of the two paralegals for their depositions. Plaintiffs' counsel objected on the basis of the work product privilege, although notably the documents the witnesses relied upon to prepare their affidavits were produced. *Id.* A motion to compel was filed, however, for the production of the documents as well as the paralegals' testimony as to the method and manner by which the spreadsheet was prepared.

The district court agreed that limited production of the documents, without the depositions, was not enough in the face of a proper deposition notice, absent application of a privilege. And no privilege could apply to prevent the taking of the depositions because it had been waived by the testimonial use of the paralegals' affidavits and reliance upon their work product in support of the motion for class certification. *Id.* at *3-4. Specifically the court explained:

Plaintiffs have asked the Court to rely on the paralegals' summary in their motion for class certification.... They have placed the focus on the paralegals' analysis of the subject leases. Accordingly, having elected to use the paralegals' work product as an exhibit offered in support of their motion, Plaintiffs have waived work product privilege regarding the preparation of the paralegals' summary.

*Id.* at *4. The court thus granted the motion to compel the depositions, limited however to only those matters that had been set forth in the affidavits themselves and excluding disclosure of counsel's thought processes that were not the subject of the affidavits. Disclosure was compelled, however, as

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

Page 7

to all matters necessary to identify any inaccuracies or omissions in the paralegals' analysis. "The Defendants are entitled to know what work the paralegals performed in order to be able to understand the summaries and to challenge them if appropriate." *Id.* at *5.

Here, the same rule based on waiver through testimonial use of work product must be applied. Like the plaintiffs in *Montana Land,* the Plaintiffs here are relying upon paralegals' affidavits and their investigation to factually support Plaintiffs' theory for class certification. That has opened the door to Defendant's attempt to verify the accuracy of that investigation, to discover if the process used by the paralegals was somehow flawed, and to obtain if possible information that could impeach the paralegals' testimony. Plaintiffs have similarly waived the privilege when it comes to this particular investigation and these particular witnesses. Documents related to that investigation and relied upon by these witnesses must be produced. That also does not require the production of all work product that may have been generated from counsel's factual investigation or even this particular survey. The documents and testimony that must be provided relates to these witnesses' involvement in the survey, what documents they reviewed, and what documents they generated during the course of that survey.

*7 Accordingly, the court has reviewed *in camera* the documents responsive to the supplemental request for production to isolate those documents that must be turned over to Defendant. The Court has also examined the documents to identify pure opinion work product that should not be produced. Frankly, very little opinion work product was found. And to the extent that any opinion work product can be identified, the documents being produced in compliance with this Order do not include any such opinion work product.

Therefore, by noon on Wednesday, May 28, 2008, the following documents or categories of documents shall be produced and delivered to Defendants' counsel:

1. July 13, 2006 memo to file itemizing the questions that should be propounded to the interviewees; [FN2]

> FN2. This document was generated by a lawyer, but contains no work product because no mental impressions or evaluations are identified in the document. Moreover, the production of this document is required because the paralegal witnesses used this document in the scope of their survey. The production of this document *does not* require any disclosure by counsel as to how the questions were prepared or why these particular questions were chosen. The only relevant and discoverable fact is that these questions were relied upon by the paralegal witnesses.

2. Completed form questionnaires (specifying identification data and nine sets of questions) with handwritten notations used in the survey;

3. Memoranda or handwritten notations *generated by the affiants* during the course of the survey or thereafter to memorialize the factual information obtained during the survey.

Documents that need not be produced include notations related to the survey made by interviewers other than the two affiants, and the entire printout of the Plaintiffs' Epi Info database beyond those portions that Plaintiffs intend to rely upon and have been produced. The entire database is not responsive to the document requests in question and, to the extent it is, it retains its work product protection. The underlying relevant data-the names of the passengers and their symptoms-has been produced. The database is in part a by-product of the paralegals' work during the survey,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076
(Cite as: 2008 WL 2222152 (S.D.Fla.))

Page 8

but documents they relied upon in preparation or generated during the course of the survey are being produced.

The Court adds that these documents are being made available to Defendant in preparation for the taking of the affiants' depositions on May 30, 2008. During the course of those depositions, counsel may not object on the basis of work product privilege to questions related to the method and manner by which the paralegals conducted their work or synthesized their results. Questions that are specifically seeking attorney opinion work product (i.e. communications from Plaintiff's counsel as to impressions, evaluations or legal theories generated by the results of the survey) may be objected to and the witnesses may be instructed not to answer those questions. The questioning of the witnesses is generally limited to what they relied upon in preparation of the survey, what factual documents they generated from the survey, and what if any analysis the witnesses conducted based on the survey.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Compel Better Responses to Supplemental Request for Production [D.E. 110] is **GRANTED IN PART and DENIED IN PART.**

**DONE AND ORDERED.**

S.D.Fla.,2008.
Kallas v. Carnival Corp.
Not Reported in F.Supp.2d, 2008 WL 2222152 (S.D.Fla.), 2008 A.M.C. 2076

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.