IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

TIMEBASE PTY LTD.,                         )
                                           )
                    Plaintiff,             )      Civil Action Nos.  07-cv-1687 (JNE/JJG)
            vs.                            )
                                           )
THE THOMSON CORPORATION,                   )      **TIMEBASE'S MEMORANDUM IN**
WEST PUBLISHING CORPORATION,               )      **SUPPORT OF ITS MOTION FOR**
and WEST SERVICES, INC.,                   )      **SUMMARY JUDGMENT OF NO**
                                           )      **INVALIDITY**
                    Defendants.            )

Michael R. Cunningham
Gray, Plant & Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 632-3000
Fax:  (612) 632-4444
michael.cunningham@gpmlaw.com

Joseph N. Hosteny
Arthur A. Gasey
Niro, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733
Fax:  (312) 236-1138
hosteny@nshn.com
gasey@nshn.com

Attorneys for Plaintiff
TimeBase Pty Ltd.

# TABLE OF CONTENTS

**Page No.**

I.      Introduction ........................................................................................................................ 1

II.     The Defendants Have the Burden of Proof of Invalidity by Clear and
        Convincing Evidence ........................................................................................................ 5

III.    The Defendants Lack Support for Essential Elements ................................................. 7

IV.     The Defendants' Prior Art Statements do not Comply with the Law ..................... 9

        A.      The Defendants do not Comply with § 103 ....................................... 13

        B.      The Defendants do not Comply with § 102 ....................................... 16

V.      The Defendants' § 112 Defenses Lack Evidentiary Support ................................. 19

VI.     Summary Judgment is Warranted ......................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.,*
  796 F.2d 443 (Fed. Cir. 1986) .................................................................................................. 5

*Celotex Corp. v. Catrett,*
  106 S. Ct. 2548 (1986) ............................................................................................................. 7

*CNS, Inc. v. Silver Eagle Labs, Inc.,*
  No. 04-968, 2004 WL 3631121 (D. Minn. Nov. 29, 2004) ................................................ 1

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.,*
  471 F.3d 1369 (Fed. Cir. 2006) .............................................................................................16

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*
  424 F.3d 1276 (Fed. Cir. 2005) .............................................................................................. 8

*Finisar Corp. v. The DirecTV Group, Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008) .............................................................................................. 6

*Genzyme Corp. v. Transkaryotic Therapies, Inc.,*
  346 F.3d 1094 (Fed.Cir. 2003) .............................................................................................. 3

*Graham v. John Deere Co.,*
  383 U.S. 1 (1966) ................................................................................................................7, 15

*Impax Labs., Inc. v. Aventis Pharms. Inc.,*
  545 F.3d 1312 (Fed. Cir. 2008) .............................................................................................16

*In re Dossel,*
  115 F.3d 942 (Fed. Cir. 1997) ...............................................................................................20

*Johnston v. IVAC Corp.,*
  885 F.2d 1574 (Fed. Cir. 1989) .............................................................................................. 8

ii

*KSR Int'l Co. v. Teleflex Inc.,*
    127 S.Ct. 1727 (2007) ..................................................................................... 6

*Laitram Corp. v. Cambridge Wire Cloth Co.,*
    919 F.2d 1579 (Fed. Cir. 1990) ....................................................................... 8

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed.Cir. 1995), *affirmed*, 517 U.S. 370 (1996) ........................... 3

*National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.,*
    166 F.3d 1190 (Fed. Cir. 1999) ......................................................................19

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
    545 F.3d 1359 (Fed. Cir. 2008) ......................................................................16

*Northern Telecom, Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990) ........................................................................19

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.,*
    520 F.3d 1358 (Fed. Cir. 2008) ........................................................... 7, 15, 16

*SPX Corp. v. Bartec USA, LLC,*
    557 F.Supp.2d 810 (E.D. Mich. 2008) ............................................................20

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983) ....................................................................... 7

*Ultimax Cement Co. v. CTS Cement Mfg. Corp.,*
    587 F.3d 1339 (Fed. Cir. 2009) ......................................................................20

*VData LLC v. Aetna, Inc.,*
    No. 06-1701, 2006 WL 3392889 (D. Minn. Nov. 21, 2006) (Ericksen, J.,
    adopting report and recommendation) ........................................................... 2

**STATUTES**

35 U.S.C. §§ 102, 103 ............................................................................. 8, 10, 22

35 U.S.C. § 112, ¶ 1 ......................................................................................19

35 U.S.C. § 282 ........................................................................................5, 19

iii

Uniform Commercial Code..................................................................................................................12

**OTHER AUTHORITIES**

Fed.R.Civ.P. 56(g) ............................................................................................................................22

Rule 1 of the Federal Rules of Civil Procedure...........................................................................18

Local Rule 7.1(d) ..............................................................................................................................18

Rule 30(b)(6) ..................................................................................................................................... 8

**TABLE OF EXHIBITS**

| Exhibit Tab | Description of Exhibit |
|:---:|---|
| A | TimeBase's U.S. Patent No. 6,233,592 B1, "System for Electronic Publishing" (filed as 2 parts). |
| B | Reexamination Certificate for TimeBase's U.S. Patent No. 6,233,592 C1. |
| C | Hosteny Declaration, Document No. 17-3 and Exhibits 14-16. |
| D | TimeBase's U.S. Patent No. '228, "System for Electronic Publishing"  (filed as 2 parts). |
| E | Defendants' Second Supplemental Answers to TimeBase's Interrogatories 2 and 3. FILED UNDER SEAL. |
| F | Rule 30(b)(6) Notices of Deposition to Defendants. |
| G | Letter of June 11, 2010 from Defendants to Plaintiff. |
| H | Defendants' Notice of Identification of Experts. |
| I | Expert Report of Michael Stonebraker, Ph.D. |
| J | MarkMam Order, Document No. 219, January 21, 2011. |
| K | Selected Pages of Deposition of Timothy Arnold-Moore, with Deposition Exhibits 1 and 8. |
| L | Chart of Alleged References. |

v

**TABLE OF DEFENDANTS' APPENDICES**

| Defendants' Appendix | Description of Defendants' Appendix to Defendants' Supplemental Prior Art Statement (TC772-TC779) |
|---|---|
| A | Defendants' Supplemental Prior Art Statement Reference List (TC780-TC789) |
| B | Defendants' Supplemental Prior Art Statement General Reference List (TC790-TC795) |
| C | Defendants' Supplemental Prior Art Statement Prior Art of Record (TC796-TC807) |
| D | Defendants' Supplemental Prior Art Statement '592 Patent (TC808-1199) |
| E | Defendants' Supplemental Prior Art Statement Motivation to Combine '592 Patent (TC1200-1239) |
| F | Defendants' Supplemental Prior Art Statement '228 Patent (TC1240-TC1964) |
| G | Defendants' Supplemental Prior Art Statement Motivation to Combine '228 Patent (TC1695-1749) |

Note:   Because of their size, TimeBase numbered the defendants' prior art statements. The defendants' original prior art statements begin at TC1. Their supplemental statements begin at TC772. TimeBase refers only to the latter in this memo because the supplemental statements include the content of the earlier statements, and add references.

I.    **Introduction**

When the defendants moved to stay these cases pending reexamination, they

urged the value of reexamination to simplify this case:

> Given the value that reexamination proceedings have in addressing
> patent scope and validity issues, courts have "adopted a liberal policy
> in favor of granting motions to stay proceedings pending the outcome
> of reexamination proceedings." *VData LLC v. Aetna, Inc.,* No. 06-1701,
> 2006 WL 3392889, at *4 (D. Minn. Nov. 21, 2006) (Ericksen, J.,
> adopting report and recommendation); *accord ASCII Corp. v. STD
> Entertainment USA*, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

(Doc. No. 35, page 7).

The defendants quoted one of the Court's decisions, *CNS, Inc. v. Silver Eagle

Labs, Inc.,* No. 04-968, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004):

> Furthermore, even in the unlikely scenario that the claims emerge
> unchanged from the reexam, 'input of the Patent Office will assist in
> shaping, refining, and guiding this case through the issues that will
> remain after reexamination.' *CNS*, 2004 WL 3631121, at *2; *accord, e.g.,
> Card Tech.,* 2007 WL 551615, at *4.

(Doc. No. 35, page 2).

The defendants said that the Court would be able to take advantage of the

Patent Office's expertise:

> In deciding to stay litigation pending reexamination, many
> courts cite to the PTO's expertise and the potential of eliminating a trial
> altogether:
>
> > One purpose of the reexamination procedure is to
> > eliminate trial of that issue [invalidity] (when the claim is
> > canceled) or to facilitate trial of that issue [invalidity] by

> providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).

*Gould,* 705 F.2d at 1342.

> The statutory reexamination procedure permits "the reexamination of patent validity in an impartial forum at almost 100 times less cost to the parties by people trained to understand the technologies described in patents." *Canady v. Erbe Elektromedizin GmbH,* 271 F. Supp. 2d 64, 68 (D.D.C. 2002) (citation omitted).

(Doc. No. 35, page 8).

> The defendants cited *VData* again, for the advantages to reexamination:
>
> 1.      The new prior art will have been first considered by the PTO, with its particular expertise.
>
> 2.      Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3.      In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4.      The outcome of the reexamination may encourage a settlement without the further use of the court.
>
> 5.      The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6.      Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7.      The cost will likely be reduced both for the parties and the court.

(Doc. No. 35, pages 11-12).

Now is the time to employ the results of that reexamination to realize the benefits described in *VData*: to take advantage of the PTO's expertise, to reduce the complexity and length of the trial, and to reduce costs for the parties and the court.

Examiners are quasi-judicial officials who are presumed to carry out their duties. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 986 (Fed.Cir. 1995), *affirmed*, 517 U.S. 370 (1996) ("Patent applications, unlike contracts, are reviewed by patent examiners, quasi-judicial officials trained in the law and presumed to 'have some expertise in interpreting the [prior art] references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.'") (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359, 220 U.S.P.Q. (BNA) 763, 770 (Fed.Cir. 1984)). An examiner's work cannot be challenged without evidence that the examiner erred. *Genzyme Corp. v. Transkaryotic Therapies, Inc.,* 346 F.3d 1094, 1103 n.3 (Fed.Cir. 2003) (the examiner is presumed to have done his job unless there is evidence to the contrary).

The '592 patent was examined twice, the second time because of the reexamination. The '228 patent application had been allowed and was about to issue when TimeBase learned of the reexamination of the '592 patent. TimeBase requested the Patent Office to withdraw the '228 from issue, so that the Examiner could specifically consider the references and arguments made in the reexam request for the '592 patent. The documents given to the '228 Examiner included:

3

the request; the order granting the request for the reexamination of the '592, where that Examiner gave his reasons why there was a substantial new question of patentability regarding the '592; the third-party observations filed in the European Patent Office; and several communications with the European Patent Office. (Exhibit C, Hosteny Declaration, Doc. No. 17-3, and Exhibits 14-16 referred to in ¶¶ 15-17 of that declaration).

The '228 Examiner considered those materials, and issued a new notice of allowance without making any changes to the claims of the '228. These references are cited in the '228 patent (Exhibit D) as well as in the '592 reexamination certificate (Exhibit B). The Patent Office's examinations were thorough and justify reliance on its expertise.

The defendants, however, complicate this case with over one hundred alleged prior art references, including many cited to the Examiners. They include entire web sites, documents dated after the first patent application was filed, confidential non-public materials, and unauthenticated foreign materials.  They have not pointed out how any Examiner erred. The defendants have not heeded their own arguments about the benefits of relying upon the impartial expertise of the Patent Office.

4

## II.     The Defendants Have the Burden of Proof
##          of Invalidity by Clear and Convincing Evidence

The '592 and '228 patents are presumed valid.  35 U.S.C. § 282.  "The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence."  *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.,* 796 F.2d 443, 446 (Fed. Cir. 1986).

Clear and convincing evidence of invalidity is required. *Creative Compounds LLC v. Starmark Laboratories* says:

> This court has long held that because "[u]nder 35 U.S.C. § 282, each claim of a patent shall be presumed valid[,] an accused infringer must prove invalidity by clear and convincing evidence." *Tokai Corp. v. Easton Enters.,* 632 F.3d 1358, 1367 (Fed. Cir. 2011) (citing *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1365 (Fed. Cir. 2004)); *see also Microsoft Corp. v. i4i Ltd. P'Ship,* 564 U.S.    , 180 L. Ed. 2d 131 at 147 (June 9, 2011) ("For nearly 30 years, the Federal Circuit has interpreted § 282 as we do today.").

__ F.3d __, 2011 U.S. App. LEXIS 12723, *10-11 (Fed. Cir. June 24, 2011). Testimony from one of skill in the art is required to carry this burden, and the burden of proof is harder to meet if the PTO has already considered the prior art. *Creative Compounds LLC* further held:

> Again, ***Creative failed to provide any testimony from one skilled in the art identifying each claim element and explaining how each claim element is disclosed in the prior art reference.*** *See Schumer*, 308 F.3d at 1315. "It is not the trial judge's burden to search through lengthy technologic documents for possible evidence." *Id*. at 1353. Conclusory statements simply mentioning the alleged prior art patent, relying on the same prior art considered by the PTO, and alleging

invalidity fail to raise a genuine issue of material fact. See *id.* at 1354 (finding that merely mentioning an allegedly invalidating, yet otherwise unexplained, prior art reference is insufficient to survive a summary judgment of no invalidity); *see also Tokai*, 632 F.3d at 1367 ("[A]lthough the standard of proof does not depart from that of clear and convincing evidence, ***a party challenging validity shoulders an enhanced burden if the invalidity argument relies on the same prior art considered during examination by the [PTO]").***

2011 U.S. App. LEXIS 12723, at *21-22 (emphasis added).

A defense that a claim is invalid under § 102 requires that the alleger prove that each element in a single claim is present in a single reference, arranged as in the claim:

Although § 102 refers to "the invention" generally, the anticipation inquiry proceeds on a claim-by-claim basis. See *Hakim v. Cannon Avent Group, PLC,* 479 F.3d 1313, 1319 (Fed. Cir. 2007). To anticipate a claim, a single prior art reference must expressly or inherently disclose each claim limitation. *Celeritas Techs. v. Rockwell Int'l Corp.,* 150 F.3d 1354, 1361 (Fed. Cir. 1998). But disclosure of each element is not quite enough--this court has long held that "[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*." *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548 (Fed. Cir. 1983) (citing *Soundscriber Corp. v. United States*, 360 F.2d 954, 960, 175 Ct. Cl. 644 (Ct. Cl. 1966) (emphasis added)).

*Finisar Corp. v. The DirecTV Group, Inc.,* 523 F.3d 1323, 1334-35 (Fed. Cir. 2008). (italics in original).

For a § 103 defense, the alleger must identify combinations under § 103, and the justifications for those combinations. See, for example, *KSR Int'l Co. v. Teleflex*

*Inc.,* 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983).

References cannot be combined under § 103 unless there is evidence -- not hindsight -- of reasons to combine them. *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.,* 520 F.3d 1358 (Fed. Cir. 2008) held that the teaching, suggestion and motivation (TSM) test still is applied:

> As this court has explained, however, a flexible TSM test remains the primary guarantor against a non-statutory hindsight analysis such as occurred in this case. *In re Translogic Tech., Inc.,* 504 F.3d 1249, 1257 (Fed. Cir. 2007) ("[A]s the Supreme Court suggests, a flexible approach to the TSM test prevents hindsight and focuses on evidence before the time of invention."). The TSM test, flexibly applied, merely assures that the obviousness test proceeds on the basis of evidence – teachings, suggestions (a tellingly broad term), or motivations (an equally broad term) – that arise before the time of invention as the statute requires. As *KSR* requires, those teachings, suggestions, or motivations need not always be written references but may be found within the knowledge and creativity of ordinarily skilled artisans.

520 F.3d at 1364-65.

## III.   The Defendants Lack Support for Essential Elements

A non-movant must support each essential element of its defense. *Celotex Corp. v. Catrett,* 106 S. Ct. 2548 (1986), makes clear that where the nonmoving party will bear the burden of proof at trial, a failure of proof concerning an essential element is grounds for a summary judgment. *Id.* at 2552-53.

The defendants' second supplemental answers to TimeBase's Interrogatory 2 is not verified by anyone. (Exhibit E). TimeBase sought testimony about the defendants' invalidity contentions. (Exhibit F, Rule 30(b)(6) notices of deposition, topics 9 and 35). The defendants declined to produce any fact witnesses with respect to their invalidity contentions. (Exhibit G, letter of June 11, 2010 from counsel for the defendants).

On January 5, 2011 the defendants identified their possible experts on invalidity. (Exhibit H). But two of the three never provided any expert report. The defendants' only expert report dealing with any invalidity issue says nothing about invalidity under §§ 102 or 103. (Exhibit I, Stonebraker Report).

The defendants therefore have no testimony, from either a fact or an expert witness, to support their contentions under §§ 102 and 103.

Attorney statements cannot create issues of fact. Bald attorney argument is no substitute for evidence. *Enzo Biochem, Inc. v. Gen-Probe, Inc.* 424 F.3d 1276, 1284 (Fed. Cir. 2005); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 919 F.2d 1579, 1583 (Fed. Cir. 1990) (counsel's unsworn fact statements are not evidence); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no substitute for evidence.").

There must be evidence supporting each element to be proved in an invalidity defense. *Creative Compounds LLC* held:

> According to Creative, a genuine issue of material fact exists as to whether the '373 Patent is invalid under §§ 102(g), (f), and (e). Starmark responds, and this court agrees, that there is an absence of evidence on at least one element in each of Creative's three invalidity theories, and, as such, Creative's conclusory attorney arguments fail to raise a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.").

2011 U.S. App. LEXIS 12723, at *15-16.

With the sole exception of the Stonebraker report, the defendants' interrogatory responses and prior art statements, discussed below, are argument by attorneys who are not persons of skill, and who cannot be witnesses. Those responses and charts do not come from one of skill in the art, and are not evidence.

## IV.     **The Defendants' Prior Art Statements do not Comply with the Law**

The defendants allege:

> 3.  The claims of the '592 and '228 patents are invalid for failure to comply with the patent laws, including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112.

(Doc. No. 112, Answer to Second Amended Complaint, page 11, paragraph 3).

TimeBase's Interrogatory 2 sought the defendants' invalidity contentions. The defendants said nothing about §§ 102 or 103 in their first response. (Exhibit E, pages 4-9). They said nothing about the '592 patent, on the ground that it was in reexamination. (Exhibit E, pages 5 and 7). The defendants' first supplemental

9

answer to Interrogatory 2 said both patents were invalid under §§ 102 and 103, but that "Thomson has not yet formed all of its specific contentions with regard to the prior art." (Exhibit E, page 10). The defendants said they would disclose these contentions in their prior art statements. *Id.* The statements were provided in late 2009, and supplemented in May, 2010.

A few days before discovery closed, and after all depositions were complete, the defendants supplemented their response to Interrogatory 2. (Exhibit E, pages 18-35). That supplement adopts the defendants' prior art statements, the "deposition testimony of Timothy Arnold-Moore relating to the EnAct system and Mr. Arnold-Moore's publications including but not limited to 'Databases of Legislation: The Problems of Consolidation' and 'Managing a Digital Library of Legislation.'" (Exhibit E, page 18).

The defendants' prior art statements include an extraordinary number of alleged references. Their Appendix A includes about one hundred and nine items. (TC781-789). There are fifty-six numbered items. Nos. 41 to 56 are groups which identify approximately fifty-three more items. (TC784-789). Nos. 48 to 56 are entire publications, such as the RIA OnPoint CD-ROM Tax Library," no. 50 (TC788-789), the "New Mexico Law on Disk," no. 52, or the Federal Rules of Civil Procedure no. 53. (TC788).

Many of the purported references have not been authenticated by anyone, or are from foreign countries, or both.  See, for example, no. 8, a magazine article (TC781), nos. 38-40, three articles from England (TC784), at least some of no. 43, the alleged EnAct system (TC785-786), no. 45, Documentum (TC787) and no. 46, Astoria (TC787-788).

The defendants' Appendix B, their general reference list of prior art includes about fifty more items. (TC790-95). There are 44 numbered items, and one is a open-ended group of "SIM Manuals," where the defendants say "SIM Manuals for example" and then cite eight manuals. (TC794). The reference is open-ended.

The defendants' Appendix C lists the art cited in the prosecution of the patents, and in the reexamination; that adds about two hundred more alleged references. (TC796-807). All of these, of course, were presented to the Examiners. (Exhibits A, B, and D).

The defendants' Appendix D, which purports to compare references to the claims of the '592 patent, is 391 pages long. (TC808-1199). Appendix D includes about forty-eight items according to our count.

The defendants' Appendix cites fifteen references that were already cited in the reexamination.[1] The defendants cite many items dated after the '592 patent was

---

[1] See in Appendix A: item nos. 3) Arnold-Moore 1994; 4) Arnold-Moore 1994-2; 5) Arnold-Moore 1995; 6) Arnold-Moore 1997; 8) Azaria; 13) Dolan; 15) Fay; 19) Kim;

filed.[2] They cite references without pointing to any particular page or drawing.[3] They provide incomplete references, preventing one from reading the reference as a whole, or determining its status as prior art.[4] They cite entire books and CD-ROMs.[5] They cite groups of documents; the groups in some instances include documents after TimeBase's patent application was filed.[6] One of their references is a entire website, www.westlaw.com, with an unspecified number of databases spanning fifteen years including four years after the patent application was filed. (Appendix A, TC784, under item 42).

---

21) Liddy 1996; 26) Povilus 1995; 27) Promenshenkel 1995; 28) Sacks-Davis 1994; 36) Weinberg 1997; at least part of 43) EnAct System (Arnold-Moore 1999); and parts of 46) Astoria (Xsoft, A Division of Xerox, XSoft Premieres Astoria, and XSoft Astoria).

[2] See, for example, in Appendix A: item nos. 6, 7, 18, 23, 27, 36, 37, parts of 43, 44, parts of 45, and parts of 46.

[3] See, for example, in Appendix A: item nos. 41) a group, Pre-1997 Premise; 42) a group, Pre-1997 Westlaw/Westmate; 45) a group, Documentum/Interleaf; 47) Law Desk New York Official Reports; 48) NY Consolidated Law Service Beta; 49) Social Security Plus; 50) RIA OnPoint CD-ROM; 51) Core Materials on Legal Ethics; 52) New Mexico Law on Disk; 53) The Federal Rules of Civil Procedure; 54) Uniform Commercial Code, Disk #1; 55) Law Desk NY; and, 56) Law Desk United States Code Service.

[4] See in Appendix A: Ovum Documentum, Johnson 1991, Interleaf Workgroup 1995, Kimball 1996, and Interleaf 6 1996.

[5] See in Appendix A: item nos. 49-56.

[6] See, for example, in Appendix A: items 43 and 44, EnAct and ScalePlus.

A.      **The Defendants do not Comply with § 103**

Summary judgment of non-obviousness is warranted because none of the defendants' virtually unlimited number of prior art combinations meets the requirements to show obviousness under § 103. In their Appendix D, the defendants cite about forty-eight references, and purport that any combination of these forty-eight references renders the '592 patent obvious:

> Defendants further contend that each of the asserted claims in the '592 patent would have been obvious to one of ordinary skill in the art of the '592 patent (with the knowledge and common sense of one of ordinary skill in the art) in view of the references discussed above in Appendix D, either alone or in combination with other references mentioned above in Appendix D or the references mentioned in Appendix B or Appendix C.

(Appendix E, page TC1201). Appendix D does not identify any specific combinations, but instead leaves TimeBase guessing as to what combination of forty-eight references the defendants' allege invalidates the '592 patent. Those forty-eight references give rise to 1,128 different combinations of two references.[7] Assuming the defendants intend to combine three references, then Appendix D, by itself, provides 17,296 different combinations of three references. It provides 194,580 different combinations of four references.

---

[7] See *Fundamental Algorithms: The Art of Computer Programming*, 2d ed., Donald E. Knuth, Addison Wesley Publishing Co., Reading, Massachusetts, 1973, at p. 51.

Furthermore, Appendix D incorporated by reference Appendices B and C. By adding Appendices B and C to the mix, the number of combinations goes even higher. For one hundred references, there are 161,200 different possible combinations of three of the references. Even if there are only two references in a combination, there are 4,950 possible combinations. The defendants' references amount to thousands, and possibly tens of thousands, of different and unknown combinations. There are conceivably even more, because the defendants place no limit on the number in a combination, and suggest it may be even more. There are 3,921,225 combinations of four references in a set of one hundred references.

Similarly, in Appendix E and Appendix G, the defendants provide even more combinations, all of which are equally inadequate to show obviousness under § 103. Appendix E and Appendix G are the defendants' motivation to combine statements for the '592 and '228 patents, respectively. Both set forth boilerplate language again providing for an open-ended number of combinations. Additionally, Appendix E sets forth 462 specific combinations, none of which satisfy the prima facie case for obviousness under § 103. Appendix G specifically outlines 963 combinations alleging to invalidate claim 1 of the '228 patent; 498 for claim 13; 456 for claim 24; and 311 for claim 36. None of these combinations meet the requirements for showing obviousness under § 103.

14

Each of the defendants' plethora of alleged obviousness combinations is insufficient. The law requires that a defendant point to the differences between the prior art and a claim. In 1966, the Supreme Court laid out the basic test for obviousness that remains the law today. It held that

> under §103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Graham v. John Deere,* 383 U.S. 1, 17 (1966). The defendants have not addressed why all their references even constitute prior art. They have not addressed the differences. They have not provided the insight of a person of ordinary skill.

Whether and why one of skill in the art would combine given references must be addressed, too. *Ortho-McNeil Pharmaceutical, Inc.,* 520 F.3d at 1364-65 ("The TSM test, flexibly applied, merely assures that the obviousness test proceeds on the basis of evidence – teachings, suggestions (a tellingly broad term), or motivations (an equally broad term) – that arise before the time of invention as the statute requires.").

The defendants' arguments about why references would be construed under § 103 are just that: argument by lawyers, not evidence of what the person of

15

ordinary skill would know, believe, or do.  *Ortho-McNeil Pharmaceutical, Inc.*, 520 F.3d at 1364-65 discusses the Supreme Court's decision in KSR and makes clear that it is still the "knowledge and creativity of ordinary skilled artisans" that counts.

The defendants have not provided us with any reason to believe that a person of ordinary skill would make their thousands of combinations. They cannot fulfill their burden of proof, clear and convincing evidence, and their § 103 defense should be removed from the case.

### B.  <u>The Defendants do not Comply with § 102</u>

To anticipate under § 102, all of the elements of the claim must be found in a single reference, explicitly or inherently. *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.,* 471 F.3d 1369, 1375 (Fed. Cir. 2006). It must place the invention in the possession of the public. *Id.* The elements "must be arranged or combined in the same way as recited in the claims," *Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359, 1370 (Fed. Cir. 2008). The reference must "enable one of ordinary skill in the art to make the invention without undue experimentation." *Impax Labs., Inc. v. Aventis Pharms. Inc.,* 545 F.3d 1312, 1314 (Fed. Cir. 2008).

§ 102 has seven subsections. To apply as prior art to a claim, a reference must fit one of those subsections, for example, § 102(a) (known or used before the date of invention), or § 102(b) (printed publication, sale or use more than a year before the filing date). The defendants did not identify which section applies.

16

One of the defendants' alleged prior art references is EnAct, item no. 43 in Appendix A.  This item appears to be cited with respect to all limitations of all independent claims of the '592 patent, which suggests the defendants believe it to be applicable under § 102. (Exhibit L, chart of alleged references and claims). But item no. 43 actually is a citation to nineteen items purporting to be documents or web sites. The assemblage includes items that cannot be prior art because they post-date the '592 patent. Its effective filing date is January 31, 1997. (Exhibit A, first page). The first three items in the EnAct group, mentioning Arnold-Moore and others, are all dated in 1997 and 1998 (TC785). The item mentioning McGhie is dated in 1998 (TC785). At least two of the Tasmanian State Service items are dated in mid-1997 and 1998 (TC786). The item mentioning Wilkinson is dated in 1998 (TC786). One of the Tasmanian URLs, when read, says it was last modified on January 15, 1999 (TC786). These all post-date the '592 patent.

There are other problems. The defendants deposed Mr. Arnold-Moore, the author of a number of references. Regarding the alleged SGML Conference (the fifth bullet in item 43, in TC785), Mr. Moore noted the document was printed in June, 2010 by an unknown person. (Exhibit K, Moore Dep., pages 125-26 and Exhibit 1). Moore was unable to find a contemporaneous copy. (Exhibit K, Moore Dep., page 126). He couldn't find a one-page handout, and had no record or recollection of who might have received the handout. (Exhibit K, Moore Dep., page 126).

17

Moore said that Exhibit 8 to his deposition concerned EnAct. (Exhibit K, Moore Dep., page 128). But Exhibit 8, Moore agreed, was dated in 1999. (Exhibit K, Moore Dep., page 128). When asked when EnAct became available, Moore said "I believe it was in 1997." (Exhibit K, Moore Dep., page 128). In the next few pages, Moore gave varying dates in 1997, and said it was available to anyone as a website in 1998. (Exhibit K, Moore Dep., pages 128-131).

Moore said the first EnAct system was delivered in December, 1997. (Exhibit K, Moore Dep., page 142-43). He referred to a presentation in Philadelphia, but only on a date in 1997 that he could not recall. (Exhibit K, Moore Dep., page 132). EnAct is not prior art; the evidence confirms it.

Many of the defendants' other references are riddled with similar date, publication, and authentication problems. The defendants have cited so many references that it is impossible to address them all, even in a brief would that triple the limits of Local Rule 7.1(d). The Court's 2005 Patent Advisory Committee's Preface says that it recommended amendments to the Local Rules to "further the goals established in Rule 1 of the Federal Rules of Civil Procedure" and to "[d]iscourag[e] expensive and/or burdensome litigation procedures that do not substantially contribute to the resolution of patent cases." The defendants' invalidity allegations are too numerous and too vague to serve either of those goals.

18

## V.     The Defendants' § 112 Defenses Lack Evidentiary Support

35 U.S.C. § 112, ¶ 1 requires a specification having a written description that will enable a person of ordinary skill to make and use the invention. § 112, ¶ 2 requires that the specification conclude with one or more claims particularly pointing out and distinctly claiming the invention.

The presumption of validity includes an assumption of compliance with § 112. *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.,* 166 F.3d 1190, 1195 (Fed. Cir. 1999) ("Every patent is presumed valid. *See* 35 U.S.C. § 282 (1994). The presumption of validity includes a presumption that the patent complies with § 112."); *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 941 (Fed. Cir. 1990) ("Invalidity for lack of enablement is a conclusion of law and must be supported by facts proved by clear and convincing evidence, for the grant of the patent by the PTO carries with it the presumption of validity including compliance with § 112.").

The defendants' response to Interrogatory 2 asserted that the '592 and '228 patents were nevertheless invalid under § 112 because the claims were indefinite, because there was no adequate written description, and because the patents did not enable one of skill in the art to use the invention. (Exhibit E, pages 11-16). Their second supplemental response asserts that various terms in the '592 and '228 patent claims are indefinite, and that the patents did not enable. (Exhibit E, pages

19

25-33). Page 33 of the response asserts a failure of written description in the '228 patent because certain claim terms do not appear in the specification. The defendants did not withdraw any part of their earlier responses to Interrogatory 2.

The fact that a claim term does not appear in the specification is irrelevant to a § 112 inquiry. *In re Dossel,* 115 F.3d 942, 946-47 (Fed. Cir. 1997) (finding adequate structure for "means for reconstruction" even where "[n]either the written description nor the claims use the word 'computer,' nor do they quote computer code that may be used in the invention"); *SPX Corp. v. Bartec USA, LLC*, 557 F.Supp.2d 810 (E.D. Mich. 2008).

Some of the terms the defendants complain about in their interrogatory response (for example, predefined portions, links, linking means and dividing) were construed by the Court in its Markman order. (Doc. No. 219). Claim limitations that can be construed cannot be indefinite. *Ultimax Cement Co. v. CTS Cement Mfg. Corp.,* 587 F.3d 1339, 1351-52 (Fed. Cir. 2009) (only claim terms which are not amenable to construction or which are insolubly ambiguous are indefinite).

The defendants did not even ask for construction of a "graphical representation of multidimensional space." They conceded it did not require construction, and therefore used its plain and ordinary meaning to one of ordinary skill in the art.

Only one of the three invalidity experts the defendants identified offered any opinion about invalidity. Dr. Stonebraker's report of February 28, 2011 opines that a person of ordinary skill in the art would not find anything in the specification of the '228 patent that was a written description of the "graphical representation of multidimensional space" recited in some claims of the '228 patent. (Exhibit I, Stonebraker report, pages 22-23). He concludes only that independent claims 24 and 36 of the '228 patent do not satisfy the written description requirement of § 112. (Exhibit I, page 35).

Thus, the defendants have no support whatsoever for their § 112 defenses insofar as those defenses concern claim definiteness or enablement. Dr. Stonebraker says nothing about those subjects. The defendants have no support whatsoever for any written description defense other than with respect to the "graphical representation of multidimensional space" recited in claims 24 and 36 of the '228 patent. Even that defense has not merit given their failure to seek construction of the phrase. Dr. Stonebraker offers no opinion on any of the other claim limitations recited in the defendants' response to Interrogatory 2. He does not mention the '592 patent.

## VI.    <u>Summary Judgment is Warranted</u>

What we are left with is a monumental stack of paper. This mass is "analyzed" only by individuals who are not persons of ordinary skill in the art: the defendants'

21

counsel. That is not evidence. Much of it is unauthenticated, too. Summary judgment is necessary with respect to the entirety of the defendants' §§ 102 and 103 contentions, and with respect to all but the single § 112 contention addressed in Dr. Stonebraker's report.

Alternatively, TimeBase requests relief pursuant to Fed.R.Civ.P. 56(g).

Dated: July 1, 2011

/s/ Joseph N. Hosteny
Joseph N. Hosteny
Arthur A. Gasey
Niro, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL  60602
Telephone:  312-236-0733
Fax:  312-236-3137
Email:  hosteny@nshn.com
Email:  gasey@nshn.com

Michael R. Cunningham
Attorney No. 20424
Gray, Plant, Mooty,
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3000
Fax: (612) 632-4444
michael.cunningham@gmplaw.com