UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD.,<br><br>              Plaintiff,<br><br>vs.<br><br>THE THOMSON CORPORATION,<br>WEST PUBLISHING CORPORATION,<br>and WEST SERVICES, INC.,<br><br>              Defendants. | Civil No. 07-1687 (JNE/JJG)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

TimeBase's own words confirm that the Court should dismiss this case. The Court should grant summary judgment of non-infringement on the '592 patent because TimeBase concedes it cannot meet the Court's claim construction of "each." TimeBase admits that there "may be millions" of portions of text in Westlaw and that the requirement that "each" of those portions be encoded with linking means presents an impossible burden for TimeBase to overcome. (TimeBase Br. at 2.) The Court should grant summary judgment of non-infringement on the '228 patent because TimeBase intentionally applies the wrong construction of "displaying." TimeBase contradicts the Court's claim construction by asserting that "displaying means providing." (*Id.* at 36.) But the Court has held that "displaying" means "showing on an electronic video device" (Dkt. 219 at 25), and there is no evidence that defendants perform or control the act of showing on an electronic video device. Finally, on willfulness, TimeBase presents no evidence that defendants' non-infringement arguments are objectively unreasonable.

1

A.   **TIMEBASE HAS NO EVIDENCE THAT THE MILLIONS OF PREDEFINED PORTIONS OF TEXT IN WESTLAW ARE EACH ENCODED WITH LINKING MEANS.**

*TimeBase Cannot Rewrite the Claims.*  TimeBase admits that it is impossible to show that the millions of predefined portions of text in Westlaw are each encoded with linking means.  Faced with this "impossibility" (*id.* at 2), TimeBase seeks to convert the phrase "each predefined portion" into the phrase "each of a plurality (i.e., two or more) of predefined portions" (*id.* at 1).  The Court should reject TimeBase's attempt to rewrite the claims.

When TimeBase wanted to refer only to a plurality of predefined portions in the claims of the '592 patent, it knew how to do so.  Claim 1 specifies that "*said plurality* of predefined portions" are organized in a multidimensional space.  Claim 11 requires a first database comprising "*said plurality* of predefined portions."  And claim 17 requires that "each of *said plurality* of predefined portions" is a provision of legislation.  But for "linking means," all of the '592 patent's independent claims require that "*each predefined portion*" be encoded with linking means.  When some claims terms explicitly refer to a plurality, but others do not, those claim terms "are presumed to have different meanings."  *Bd. of Regents v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008); *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1379, 1382 (Fed. Cir. 2003) (construing the term "each field" to apply to all fields, but construing the term "each of a plurality of fields" to apply to two or more fields).

Both the Federal Circuit and numerous district courts have read similar claim terms as requiring proof that *every* item in the accused system meet the "each" limitation,

2

whether or not a plurality is referenced elsewhere in the claims.  These cases hold that if any item in the accused system or device does not meet the claimed "each" limitation, there is no infringement—every item in the system or device must satisfy the limitation.

| Case | Claim Language | Meaning |
| --- | --- | --- |
| *ResQNet.com* (Def. Br. 9; TB Br. 5-7) | "each field" | every field in the image |
| *Lucent Tech.* (Def. Br. 10; TB Br. 7) | "each successive iteration" | every successive iteration performed in the system |
| *LG Elec.* (Def. Br. 10; TB Br. 7) | "each read address" | every read address in the system |
| *Bd. of Regents* (Def. Br. 10-11; TB Br. 7-10) | "one or more pre-programmed codes, each pre-programmed code" | every pre-programmed code in the system |
| *In re Skvorecz* (Def. Br. 11; TB Br. 10-14) | "at least two … wire legs with each wire leg" | every wire leg of the device |
| *Mangosoft* (Def. Br. 11 n.3; TB Br. 14-15) | "a plurality of computers, each of said plurality of computers" | every computer in the system |
| *Seitz* (Def. Br. 12 n.3; TB Br. 15) | "a plurality of electrically powered heating elements each within the at least one compartment" | every heating element in the device |
| *Bed Bath & Beyond* (Def. Br. 12 n.3; TB Br. 15-16) | "a plurality of retail sites … each of said sites" | every retail site in the system |

The only case TimeBase cites to support its reading of the claims used the word "each" in close proximity to "plurality," unlike the '592 patent's "each predefined portion" language. *Bowers v. Baystate Tech., Inc.*, 320 F.3d 1317, 1330 (Fed. Cir. 2003) ("a plurality of groups, one group of each"). And *Bowers* departed from a plain reading of the claims for a very specific reason—reading the claims "strictly would exclude from claim scope the preferred embodiment." *Id.* at 1332. TimeBase has not shown that applying the "each predefined portion" language of the '592 claims would exclude the preferred embodiments, and there is no justification for departing from the clear language of the claims requiring *each* predefined portion to be encoded with linking means.

***TimeBase Has Presented No Evidence that the Millions of Predefined Portions Are Each Encoded with Linking Means.*** Recognizing that its expert did not present evidence showing that the millions of predefined portions of text within Westlaw are each encoded with linking means (TimeBase Br. at 18), TimeBase tries to create an issue of fact by pointing to documents and deposition testimony that it contends show that *some* portions are encoded, or associated with, linking means. (*Id.* at 18-32.) Yet TimeBase never explains through expert testimony or otherwise how *any* of these documents or testimony actually involve "linking means" as construed by the Court. More importantly, none of this evidence says that *every one* of the Westlaw portions is encoded with linking means. In fact, TimeBase concedes that showing this would be an "impossibility." (*Id.* at 2.) Without such evidence, there is no genuine issue of fact.

Finally, TimeBase does not come close to refuting defendants' specific examples of statutory sections within Westlaw that clearly are *not* encoded with linking means.

4

Rather than looking at the portions—as defined by TimeBase's own expert—to determine if they are encoded with linking means (which TimeBase's expert testified would appear as blue underlined text (Dkt. 233-1 at 143)), TimeBase instead misleadingly shows a *separate* window on the screen—not the window with the statutory portion—to assert that "[t]he blue underlined text is there, on the screen." (TimeBase Br. at 33.) Nowhere does TimeBase explain how this separate window demonstrates that this statutory portion is encoded with linking means.

Because TimeBase lacks any evidence that "each predefined portion" in Westlaw is encoded with linking means, and instead concedes that it would be impossible to do so, no reasonable jury could find infringement of the '592 patent, and summary judgment of non-infringement should be granted.

**B.    TIMEBASE CANNOT AVOID SUMMARY JUDGMENT BY REWRITING THE STEP OF "DISPLAYING" TO ONE OF "PROVIDING."**

***Displaying Does Not Mean Providing.***  Recognizing that summary judgment of non-infringement of the '228 patent is warranted because defendants do not perform the step of "displaying" as defined by the Court —"showing on an electronic video device"—TimeBase contradicts the Court's claim language. TimeBase instead asserts that "the claimed *displaying means providing* 'text based' data 'to the user' in a particular configuration." (*Id.* at 36 (emphasis added).) TimeBase then goes on to spend the next several pages of its brief trying to demonstrate who controls *what* is being *provided*, rather than establishing *who* is performing the step of *showing on an electronic video device*. TimeBase repeatedly argues that defendants provide a "format" of text-based

data to users.  (TimeBase Br. at 36, 39, 40, 42.)  But the inventors did not write this step of the claims of the '228 patent as "providing" formatted text-based data to users. Instead, they wrote the claims to require a party to actually perform the step—the act—of showing text on an electronic video device.  Although some of the '228 patent claims *also* require that text be configured or formatted in a particular way or contain particular content or links, that is not the step of "displaying" as defined by the Court.  TimeBase literally does not even mention the Court's construction of "displaying" in its brief, much less apply it.

***TimeBase Has No Evidence that Defendants Perform or Control the Step of Displaying.***  Because TimeBase rewrites the claims to substitute "providing" for "showing on an electronic video device," it has presented no evidence creating a factual issue over who performs the "showing" steps.  The uncontroverted evidence from defendants' expert, Dr. Stonebraker, establishes that it is the end users who perform the step of "showing on an electronic video device" by operating the hardware and software on their computers necessary to show the text provided by Westlaw.  (Dkt. 234-2 at 33.) TimeBase's expert, Dr. Frieder, does not even address the issue, noting only that text "is displayed" without offering any opinion on who performs or controls this step.  (Dkt. 233-3 at 85.)

With no evidence establishing that defendants perform the step of "showing on an electronic video device," TimeBase instead alleges that a contractual relationship demonstrating "a connection between Westlaw and its customers" is enough to create an issue of fact. (TimeBase Br. at 44.)  In making this argument, TimeBase contends that,

as a result of the Federal Circuit's vacating the *Akamai* and *McKesson* cases pending *en banc* review, the standard for demonstrating direct infringement of method claims is now "lower[]." (*Id.* at 42.) TimeBase is wrong on both counts.

Two Federal Circuit cases—*BMC Resources, Inc. v. Paymentech L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) and *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008)—establish the standard: Where a single party does not perform every step, a claim is directly infringed "only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party." *Muniauction*, 532 F.3d at 1329. The issue is "whether [defendant] sufficiently controls or directs other parties . . . such that [defendant] itself can be said to have performed every step of the asserted claims." *Id.* It is not enough to show a party "controls access" to or "instructs" others on how to use a system, *id.* at 1330, or that there is "arms-length cooperation," *BMC Resources*, 498 F.3d at 1381.

TimeBase does not discuss *BMC Resources* or *Muniauction* in its brief. Instead, TimeBase relies on an unpublished earlier district court decision—*Hill v. Amazon.com*, 2:02cv186, 2006 WL 151911 (E.D. Tex. Jan. 19, 2006)—to argue that a "vendor and customer" relationship between the operator of a website and an end user is sufficient to create an issue of fact. *Id.* at *3. But the Federal Circuit in *BMC Resources* and *Muniauction* made clear that the mere existence of a "vendor and customer" relationship is insufficient as a matter of law to establish that one party exercises control or direction over another. In *Muniauction*, the Federal Circuit held that an "arms-length" relationship, or controlling access to content on a system or instructing others on how to

7

use the system, "is not sufficient to incur liability for direct infringement." *Id.* at 1329-30.

TimeBase has not pointed to a single piece of evidence establishing that defendants control the step of "showing on an electronic video device" by contracting out the step to users, requiring them to perform the step, or controlling or directing their operation of the hardware, software, and video monitors required to show text from Westlaw.  In contrast, there is unrebutted expert testimony from Dr. Stonebraker that it is the users of Westlaw, not defendants,  who control and perform the step of showing on an electronic video device by supplying and operating the hardware and software necessary for this step.  Under these circumstances, there is no direct infringement as a matter of law, and summary judgment of non-infringement of the '228 patent should be granted.

**C.   TIMEBASE HAS NO EVIDENCE THAT DEFENDANTS' NON-INFRINGEMENT ARGUMENTS ARE OBJECTIVELY UNREASONABLE.**

TimeBase's response on the willfulness issue clutters the record with conclusory statements about defendants' alleged conduct without once addressing the first prong of the *In re Seagate* test.  That prong requires the patent holder to "show by clear and convincing evidence that the infringer acted despite an *objectively* high likelihood that its actions constituted infringement of a valid patent." 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added).  Neither the state of mind of the accused infringer, *id.*, nor evidence of copying, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011), are relevant to this objective prong.

Nowhere in its response does TimeBase attempt to show how any of the non-infringement defenses raised by defendants—all of which are supported by the expert testimony of Dr. Stonebraker—are objectively unreasonable.  TimeBase completely ignores this requirement.  Under these circumstances, TimeBase's allegations of willfulness fail as a matter of law.  (Defendants' Br. at 39.)

                                          Respectfully submitted,

Dated:  July 28, 2011              *s/Calvin L. Litsey*
                                          David J.F. Gross (# 208772)
                                          Calvin L. Litsey (# 153746)
                                          Mary V. Sooter (pro hac vice)
                                          Kevin P. Wagner (# 34008X)
                                          Katherine S. Razavi (#388958)
                                          Faegre & Benson LLP
                                          2200 Wells Fargo Center
                                          90 South Seventh Street
                                          Minneapolis, Minnesota  55402
                                          DGross@faegre.com;
                                          CLitsey@faegre.com;
                                          MSooter@faegre.com;
                                          KWagner@faegre.com;
                                          KRazavi@faegre.com

                                          **Attorneys for Defendants The Thomson Corporation, West Publishing Corporation, and West Services, Inc.**

fb.us.7092683.01