IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMEBASE PTY LTD., | ) |
| Plaintiff, | ) Civil Action Nos. 07-cv-1687 (JNE/JJG) |
| vs. | ) |
| THE THOMSON CORPORATION, WEST PUBLISHING CORPORATION, and WEST SERVICES, INC., | ) **TIMEBASE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CLARIFY THE CLAIM CONSTRUCTION AS IT RELATES TO SUMMARY JUDGMENT** |
| Defendants. | ) |

The summary judgment oral argument on August 11, 2011, included a discussion of "each" and how that word bears upon infringement. Because of some of the remarks at the oral argument, TimeBase now moves for clarification.

TimeBase noted during argument that its earlier claim construction briefs expressed concern about the construction of "each." In those briefs, TimeBase said that the proposed construction of "each" was acceptable, so long as the construction was not abused:

> TimeBase will agree to that definition if the Court wants to give any instruction to the jury, so long as the jury is instructed that "each" does not apply to additional elements. (TimeBase's Opening Memo, pages 12-13).

(Document 155, pages 9-10).

The construction of a claim limitation could mistakenly be expanded to things outside the scope of the claim. (Document 142, page 12).

The additional elements outside the scope of the claims are any portions of text-based data that are in excess of the number required by claim 1, which recites "a plurality of portions of text-based data…." (Exhibit A to TimeBase's Response to Defendants' Motion for Summary Judgment, '592 patent, column 155, lines 3-4). The defendants have not disputed that "plurality" requires only two.

The Court's claim construction of "each" relied upon a dictionary definition of "each" that is consistent with the meaning of "plurality":

> Defendants' construction is consistent with the ordinary meaning of each: "[U]sed to refer to every one of two or more people or things," New Oxford American Dictionary 544 (Angus Stevenson & Christine A. Lindberg eds., 4th ed. 2010).

(Document 219, page 23). "Two or more" presents alternatives, because of the use of "or." Thus, the Court's definition of "each" is satisfied by two of something. That is the same as a "plurality." The Court's construction can be used, so long as it is not misused to make the claim require more than a plurality.

The defendants are, however, misusing the construction. They seek to make a term in the preamble – "system" – a claim limitation. They argue that every portion in the "system" must be encoded with a linking means.

But the defendants cannot make "system" into a claim limitation. Their claim construction briefs include no argument that the preamble is a limitation. (Document nos. 139 and 154). The defendants therefore conceded that the preambles are not limitations. Thus, a "system" (claim 1) and a "medium" (claim 20) are not claim limitations. For that reason alone, the claims cannot be construed as

2

the defendants wish. (This brief discusses claim 1, but the comments apply equally to independent claim 20 of the '592 patent).

Even if the preambles were limitations, the result would be no different, because the defendants' argument, that a system requires encoding of every portion in the system, is contradicted by the '592 patent. The Abstract on the first page of the '592 patent says the system includes a plurality:

> The present invention relates to a method, apparatus and system for publishing electronic information. The system includes a plurality of predefined portions of data with each predefined portion being encoded with at least one linking means. For each predefined portion, each predefined portion is stored and, where such predefined portion has been modified, each such modified predefined portion is stored. Further, the system has a plurality of attributes. Each attribute is a point on an axis of a multidimensional space for organizing the data. The plurality of predefined portions of the data may be encoded using Standard Generalized Markup Language (SGML) or XML.

(Exhibit A, '592 patent, first page).

The language quoted above says the system includes a "plurality." The same sentence says that each member of the plurality is encoded. Syntactically, the use of "with each" can only refer to the plurality. The next sentence says that each is stored. The next sentence says there is a plurality of attributes, terminology consistent with a plurality of portions. The final sentence says that the plurality may be encoded.

The specification's Summary of the Invention is consistent with the Abstract. The Summary does not require "all" or "every." The Summary says that what must

be encoded are only those portions that are part of the plurality of predefined

portions:

> In accordance with a first aspect of the invention, there is provided a system for publishing electronic information, comprising:
>
> a plurality of predefined portions of data with each predefined portion being encoded with at least one linking means, and, for each predefined portion, the each predefined portion is stored and, where such predefined portion has been modified, each such modified predefined portion is stored; and
>
> a plurality of attributes, each attribute being a point on an axis of a multidimensional space for organising the data.
>
> In accordance with a second aspect of the invention, there is provided a recording medium for publishing electronic information, comprising:
>
> a plurality of predefined portions of data with each predefined portion being encoded with at least one linking means, and, for each predefined portion, the each predefined portion is stored and, where such predefined portion has been modified, each such modified predefined portion is stored; and
>
> a plurality of attributes, each attribute being a point on an axis of a multidimensional space for organising the data.
>
> In accordance with a third aspect of the invention, there is provided a method for publishing electronic information, comprising:
>
> providing a plurality of predefined portions of data with each predefined portion being encoded with at least one linking means, and, for each predefined portion, the each predefined portion is stored and, where such predefined portion has been modified, each such modified predefined portion is stored; and
>
> providing a plurality of attributes, each attribute being a point on an axis of a multidimensional space for organising the data.

(Exhibit A, '592 patent, column 3, lines 44-67 and column 4, lines 1-13).

Therefore, even if "system" had been construed to be part of the invention, further construing "system" to refer to all portions in a system or every portion in a system contradicts the specification. The defendants' argument is without merit.

The Court's construction of "portion" supports TimeBase's argument here. According to the Court's construction, a portion is "a part of the text-based data to be published." (Document 219, page 29). Thus, a portion is text-based data. Claim 1 has antecedent bases for the recitations of portions of text-based data:

> 1. A computer-implemented system for publishing an electronic publication using text-based data, comprising:
>
> a plurality of predefined portions of text-based data with each predefined portion being stored;
>
> at least one predefined portion being modified and stored;
>
> a plurality of linking means of a markup language, each predefined portion of said text-based data and said at least one modified predefined portion of text-based data being encoded with at least one linking means; and
>
> a plurality of attributes, each attribute being a point on an axis of a multidimensional space for organising said plurality of predefined portions and said at least one modified predefined portion of said text-based data.

"[S]aid text-based data" in the third limitation refers to its antecedent in the first limitation, that is, "text-based data" in the "plurality of predefined portions of text-based data." The references to portions after the "plurality of predefined portions of text based data" are consistent: (1) at least one predefined portion;" (2) "each predefined portion of said text-based data;" (3) "said at least one modified portion

5

of said text-based data," and (4) "said plurality of predefined portions…." The claim repeatedly recites pluralities, and the first limitation – not the preamble – is the antecedent.

The defendants' argument would create major inconsistencies in the claims, too:

- There are only a "plurality of attributes." Thus, if all portions in a system were a limitation, the attribute limitation would be inconsistent, because not every portion could have an attribute.

- If all portions in a system were a limitation in this claim, not every portion could be encoded, because the claim requires only a "plurality of linking means." Again, there would be an inconsistency in the claim. There would have to be linking means for all portions, otherwise all the portions in the system could not be encoded.

- If all portions in a system were a limitation in this claim, not all of them could be organized. As the claim says, only a plurality need be organized.

As the defendants would have it, claim 1 would require that every one of the millions of portions of text-based data in the Westlaw system must be encoded with a linking means. But claim 1 requires only a plurality (two) of linking means, and only a plurality (two) of attributes. With the defendants' construction, claim 1 is rendered nonsensical: The latter three limitations of the claim, reciting pluralities, would be inconsistent with the first limitation, as that limitation is interpreted by the defendants. If interpreted as the defendants wish, it would be impossible to have millions of <u>encoded</u> portions with only <u>two</u> linking means and only <u>two</u> attributes. It

6

would be impossible to organize more than two of the required millions of portions in multidimensional space.

Claims are invalid if they do not comply with § 112. The defendants' argument would likely render claim 1 indefinite or not enabled. Such an argument requires clear and convincing evidence, because each claim of a patent is presumed to be valid. 35 U.S.C. § 282. *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347-48 (Fed. Cir. 2005) held:

> In this regard it is important to note that an issued patent is entitled to a statutory presumption of validity. See 35 U.S.C. § 282 (2000). "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of validity and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Exxon Research & Engineering,* 265 F.3d at 1375 (citation omitted). In this way we also follow the requirement that clear and convincing evidence be shown to invalidate a patent. See *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1376 (Fed. Cir. 2001).
>
> See also, *S3 Inc. v. nVidia Corp.,* 259 F.3d 1364, 1367 (Fed. Cir. 2001). ("The claims as granted are accompanied by a presumption of validity based on compliance with, inter alia, § 112 ¶2. *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1376, 58 USPQ2d 1801, 1806 (Fed.Cir. 2001).").

The defendants' argument -- that every one of the millions of portions in their system must be encoded with a linking means -- would destroy a claim that the experts in the Patent Office have twice reviewed and twice allowed. The defendants told this Court to rely upon the reexaminations by the Patent Office, because of its expertise. (See pages 1 and 2 of TimeBase's Memorandum in Support of its Motion for Summary Judgment of No Invalidity, document 246). The defendants should be

held to their reliance on the examiners, who twice approved the claims of the '592 patent.

The defendants' contention is at odds with "comprising" in claim 1. Claim 1 is written in open-ended form. "Comprising" in its preamble means that additional structure, in addition to that recited in the claim, is permitted. *Cias, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1359-61 (Fed. Cir. 2007) ("comprising" is open-ended and means including but not limited to). The additional structure is irrelevant to infringement. *Id.* The phrase "consisting of" is different; it is restrictive, meaning that the invention includes only what is recited in the claim. *Id*.

*Novartis Vaccines and Diagnostics, Inc. v. Wyeth,* 2011 U.S. Dist. Lexis 45643 (E.D. Tex. April 26, 2011) faced a claim construction issue that is instructive here. We first describe the case in some detail before showing how its reasoning applies.

The claim in *Novartis* was from its '620 patent, for a recombinant protein to treat hemophilia. The preamble of the claim recited in part:

> 74. A **host cell comprising** nucleic acid for expression of a recombinant protein . . . .

Claim 74 went on to recite in part:

> wherein said recombinant protein **consists of a first amino acid sequence which consists of an amino acid** sequence having at least 90% sequence identity with the contiguous amino acid sequence of amino acids 1 to 740 . . . .

> and a **second amino acid sequence which consists of** an amino acid sequence having at least 90% sequence identity with the contiguous amino acid sequence of amino acids 1649 to 2332 . . . .

2011 U.S. Dist. Lexis 45643, *4 (emphasis added). The claim recites "said" recombinant protein consisting of two amino acids, each of which consists of something distinct from the other amino acid. Note that "recombinant protein" appears in the preamble, and "said recombinant protein" appears in a limitation. Thus, a phrase in Novartis' preamble is a limitation, unlike "system" in the '592 patent.

Wyeth argued that the restrictive language "consists of" meant that the host cell had to contain two, and only two, amino acids. *Id.*, *17-18.

The court rejected Wyeth's contention:

> As with the previous claim term, Wyeth seeks to improperly add a limitation to the claim language. The claim language of claim 74 clearly calls out a "host cell comprising . . . a recombinant protein" and "wherein said recombinant protein consists of . . ." '620 Patent, 59:66-60-2 (emphasis added). Therefore, the "comprising" phrase is used in connection with the "host cell" and the "consists of" phrase is used with respect to the "recombinant protein." Wyeth is correct that the "consists of" phrase is a closed-ended transitional phrase and that excludes any elements, steps, or ingredients not specified in the claim. However, Wyeth's construction seeks to limit the "host cell," which is modified by the "comprising" transitional phrase, exclusively to the two amino acid sequences called out in the claim. Instead, it is only the "recombinant protein," which is modified by the "consists of" transitional phrase, that should be limited to the two amino acid sequences. Wyeth's construction replaces "comprising" (which follows the "host cell" in the claim language) with "consisting of." That is improper. Because of the "comprising" language, the "host cell" is not limited to only the recombinant protein containing the two amino acid sequences.

*Id.*, *19-20.

9

The host cell in *Novartis* is analogous to the system in the preamble of claim 1 of the '592 patent. The two amino acids consisting of specific things are analogous to the plurality of predefined portions of text-based data, though "consisting of" is more restrictive in meaning than "plurality." Here is a diagram comparing the two situations:



The system recited in the '592 claim 1 preamble cannot be confined to predefined portions of text-based data where every one of the portions in the system is encoded with a linking means. "Comprises" means that the system may include more, that is, portions which have no linking means whatsoever. Otherwise, the scope of claim 1 of the '592 would be contorted into the same meaning that Wyeth sought for the meaning of claim 74 in *Novartis*. "Comprising" with its open-ended meaning would be amputated from Claim 1 of the '592 patent. The system

would have to "consist of" only predefined portions of text-based data, every one of them being encoded with a linking means.

In fact, claim 1 of the '592 uses "plurality," not "consisting of." There is, therefore, even less reason to artificially confine the system, and more reason to give weight to "comprising" in the preamble of claim 1.

The defendants misstate the law. The defendants' hearing slide show quotes page 1332 of *Bowers v. Baystate Technologies, Inc.*, 320 F.3d 1317, 1332 (Fed. Cir. 2003): "To read Bowers statements too strictly would exclude from claim scope the preferred embodiment of the '514 patent—a disfavored result." But the defendants did not include the Court's language preceding this conclusion. Here is the defendants' quote in context:

> During reexamination, Mr. Bowers noted that each group of the Keymaster template did not correspond to a main-menu item. With respect to those groups that did correspond to main-menu items, Mr. Bowers argued that those did not satisfy claim paragraphs c and d. Mr. Bowers thus admitted that a set of Keymaster template groups satisfy claim paragraph b, but he then distinguished them in view of paragraphs c and d. Specifically, Mr. Bowers stated: "Each of the groups of the Keymaster template does not correspond to one selectable item of the main menu of the Cadkey system." **Baystate would read this statement to mean that the claim's reference to a "plurality" of groups on the template encompasses all groups on the template. In other words, Baystate reads "each" in several of Bowers' statement to mean "all." The claim, however, uses the term "plurality," meaning "comprising, or consisting of more than one." The Oxford English Dictionary (2d ed. 1989). Thus, Bowers' references to "each" refers to the "at least two groups" required by the claims.** To read Bowers statements too strictly would exclude from claim scope the preferred embodiment of the '514 patent--a disfavored result.

11

*Bowers,* 320 F.3d at 1332 (emphasis added). The defendants have not fairly cited *Bowers.* It squarely supports TimeBase.

The defendants cited the wrong patent in *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374 (Fed. Cir. 2003). They rely on the '961 patent in that case, which does not use "plurality." TimeBase pointed to the other patent (the '608) in *ResQNet*, which does recite a plurality. The defendants ignored the '608 patent, probably because the CAFC said "This difference [between the two patents] is significant." The CAFC ruled that "each of a plurality of fields" means "each of at least two fields." *ResQNet,* 346 F.3d at 1382. The defendants' own case puts their claim construction and summary judgment argument in the dustbin.

The defendants cited *Board of Regents of the Univ. of Tex. Sys.v. BENQ Am. Corp.,* 533 F.3d 1362 (Fed. Cir. 2008), but that case relied on a specific estoppel in the prosecution history. *Id.,* at 533 F.3d 1369-70 . The defendants cited *Lucent Technologies, Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008). But that case did not involve use of "plurality" in the claim limitation in dispute, and the decision also relies upon prosecution history estoppel. *Id.,* 525 F.3d at 1213 and 1217-18. There is no prosecution history estoppel here.

The defendants cite *Mangosoft, Inc. v. Oracle Corp.,* 2004 WL 2193614 (D.N.H. 2004), but that decision said that "not all computers on a particular network must participate in the system described in the '371 patent." *Id.,* at *6.

The defendants cite *In re Skvorecz,* 580 F.3d 1262 (Fed. Cir. 2009). Skvorecz applied for reissue of his claim 1. *Id.*, 580 F.3d at 1265. The proposed reissue claim recites "a first rim" and "at least two wire legs" *Id.* Each wire leg must have "two upright sections." *Id.* The claim subsequently recites "a plurality of offsets located either in <u>said</u> upright sections of <u>said</u> wire legs or in <u>said</u> first rim." *Id.* (Emphasis added).

The "at least two wire legs" is the antecedent for "said wire legs." The "first rim" is the antecedent for "said first rim." The "two upright sections" is the antecedent for "said upright sections." The defendants ignore the antecedent relationship between two <u>claim limitations</u> in *Skvorecz*. His preamble ("A wire chafing stand comprising....") is not a limitation. The defendants likewise ignore the antecedent relationships between <u>claim limitations</u> in claim 1 of the '592. Instead, the defendants seek to make "each" in '592 claim 1 refer to the preamble, which is not a limitation, and therefore not an antecedent. *Skvorecz* supports TimeBase.

The defendants do not have one case holding that a plurality recited in a claim limitation necessarily includes everything in a system recited only in a preamble.

A question arises whether a court can modify its claim construction. We do not have a transcript of the hearing, but the Court may have indicated that it did not have the ability to modify its construction, at least absent a motion by TimeBase. A court may indeed modify its claim construction. *Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.,* 599 F.3d 1308, 1316 (Fed. Cir. 2010) ("As this court has

recognized, 'district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'")(quoting *Pfizer, Inc. v. Teva Pharms., USA, Inc.,* 429 F.3d 1364, 1377 (Fed. Cir. 2005)); *see also Utah Med. Prods., Inc. v. Graphic Controls Corp.,* 350 F.3d 1376, 1381-82 (Fed. Cir. 2003) (holding that the district court did not err in amending its claim construction during oral arguments for pretrial motions nearly two years after the original construction). A court may also reserve construction until after evidence is heard. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1349 (Fed. Cir. 1998).

To remove any doubt, TimeBase moves that the Court modify its claim constructions to accord with those set forth in TimeBase's claim construction briefs, documents 142 and 155.

A linking means should be construed to include code as well as markup. To the extent the construction excludes anything but markup, the construction conflicts with claims such as claim 9 ("wherein said linking means is a code or markup"), claim 10 ("wherein said at least one linking means comprises an identification code for said predefined portion"). See claim 27 as well. Its reference to "wherein said linking means comprises **any piece of information additional to the body of the text-based data**" is broader than just markup. See pages 30 and 31 of TimeBase's Response to Defendants' Motion for Summary Judgment.

The defendants propose that any linking means must appear in blue underlined text within the window containing the block of text. That is incorrect. Claim 1 says "encoded with," not "encoded in," or "encoded within." Claims 8, 27 and 47 refer to "said linking means comprising information additional to the body of the text-based data." (Exhibit A, col. 155, ll. 37-39, col. 156, ll. 49-51, and col. 158, ll. 12-14).

TimeBase referred at the hearing to claim 8 and to the specification to the effect that markup need not be in the text itself. Rather, the markup can be separate, stored in its own field in a database, away from the field containing the text. The specification reference is at column 14, lines 23-50 of Exhibit A, the '592 patent:

> A relational database consisting of records consisting of fields can be created with one and only one record per suitable piece or block of text where the actual text of each suitable piece or block of text is the content of one field of the above record and where each item of the markup is assigned its own field in the above record.
>
> For example, a version of Section 6 of the Income Tax Assessment Act (ITAA) 1936 may be stored as a record in the above relational database. The first field of that record contains the actual text of that version of Section 6. The next field identifies it as Section 6 of the ITAA, the next field gives the date this version came into being, the next field contains the section of the amending act that created this particular version, the next field contains the day this version became superseded, another field contains the subject(s) this version addresses, another field contains the case(s) that have addressed this version of section 6 and so on. Storing the data in this way allows multidimensional database techniques to be applied to the data.

Databases are recited in claims 11, 12, 30, 31, 50 and 51. of the '592 patent (Exhibit A, col. 155, ll. 47-52, col. 156, ll. 62-64, and col. 158, ll. 22-27). In claims 11, 30, and

50, the "said plurality of predefined portions of said text-based data" is in a "first database." The attributes are in a different "second data base." The markup does not have to be in the portion. They can even be in separate databases.

TimeBase therefore moves that the Court adopt the constructions proposed by TimeBase or, at a minimum, clarify its constructions of "each" and "linking means" as follows:

Each: Applies only to the plurality of predefined portions of text-based data, not to every portion in the system as a whole, or to all portions in the system.

Linking means: Includes code as well as markup.

| | |
|---|---|
| August 18, 2011 | /s/ Joseph N. Hosteny<br>Joseph N. Hosteny<br>Arthur A. Gasey<br>Robert A. Conley<br>Niro, Haller & Niro<br>181 West Madison Street, Suite 4600<br>Chicago, IL  60602<br>Telephone:  312-236-0733<br>Fax:  312-236-3137<br>Email:  hosteny@nshn.com<br>Email:  gasey@nshn.com<br>Email:  rconley@nshn.com<br><br>Michael R. Cunningham<br>Attorney No. 20424<br>Gray, Plant, Mooty,<br>500 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br><br>Telephone: (612) 632-3000<br>Fax: (612) 632-4444<br>Email:  michael.cunningham@gpmlaw.com |