UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TimeBase Pty Ltd.,

        Plaintiff,

v.

The Thomson Corporation, West Publishing Corporation, and West Services,

        Defendants.

Civil No. 07-1687 (JNE/JJG)
MEMORANDUM
**(FILED UNDER SEAL)**

---

Joseph N. Hosteny, Esq., Niro, Haller & Niro, and Michael R. Cunningham, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., appeared for Plaintiff TimeBase Pty Ltd.

David J.F. Gross, Esq., Calvin L. Litsey, Esq., Mary V. Sooter, Esq., and Timothy M. Sullivan, Esq., Faegre & Benson LLP, appeared for Defendants The Thomson Corporation, West Publishing Corporation, and West Services.

---

TimeBase Pty Ltd. brought this action for patent infringement against The Thomson Corporation, West Publishing Corporation, and West Services (collectively, Thomson-West). The patents in suit are U.S. Patent No. 6,233,592 (filed July 1, 1998) and U.S. Patent No. 7,293,228 (filed Oct. 12, 2000). The case is before the Court on Thomson-West's Motion for Summary Judgment, Thomson-West's Motion to Exclude Testimony of Dr. Ophir Frieder, and TimeBase's Motion for Summary Judgment of No Invalidity. Viewing the record, including Frieder's testimony, in the light most favorable to TimeBase, the Court concludes that no reasonable jury could find infringement of the patents in suit. Accordingly, the Court grants Thomson-West's Motion for Summary Judgment, denies as moot Thomson-West's Motion to Exclude Testimony of Dr. Ophir Frieder, and denies as moot TimeBase's Motion for Summary Judgment of No Invalidity.



## I. BACKGROUND

TimeBase alleges that a database created and provided to end users by Thomson-West infringes two patents owned by TimeBase, the '592 Patent and the '228 Patent. The '228 Patent is a continuation-in-part of the '592 Patent. The patents relate to systems and methods for publishing text-based data that is organized in a multidimensional space designed to allow an end user to display, navigate, and search the data. The patents' technology is computer software, and they include both method and apparatus claims. In an Order dated January 21, 2011, the Court gave the following description of the patented technology:

> The patented technology allows an end user to navigate and search text-based data that is constantly updated and amended. The embodiments disclosed in the specifications involve legislation. The specifications note, however, that the invention may be practiced with numerous other types of text-based data, including medical, scientific, and pharmaceutical data. The concept at the heart of the invention is that the text-based data is divided into predefined portions, and these portions are mapped in a multidimensional space. The data, of course, is not literally mapped or placed in a multidimensional space. Instead, the computer program stores the portions of data such that each portion may be conceptualized as occupying a point in a multidimensional space. The end user can navigate through the space and view the various predefined portions of data. As an example, consider the Federal Rules of Civil Procedure as the text-based data. The data set, the Rules, could be divided so that each rule is a predefined portion. Each predefined portion would then have a rule number associated with it. At this point, the predefined portions could be mapped in a one dimensional space, on a single axis, and the position of a particular predefined portion on that axis would correspond to an attribute, in this case, the rule number.
>
> A second dimension, say time, is easily visualized. The Rules have been modified over time so it is possible to consider amended versions of each rule, which the patents refer to as modified portions of text-based data. The effective dates of a particular portion could be a second attribute for a particular version of a particular rule. With this added complexity, it is possible to map the portions in a two dimensional space. The first dimension is, as in the one dimensional case, the rule number. The second dimension is time, namely, the dates when the particular portion was effective. An easy way to visualize this two dimensional mapping is to consider it as a chart with columns defined as rule numbers and rows defined as effective dates. The text of each version of each rule would be located inside each of the chart's cells so that each cell would contain a portion of text-based data. The patent teaches the use of a multidimensional space with

more than three dimensions. A space of more than three dimensions is a concept not easily visualized but may be likened to a mathematical function with more than three variables.

The technology taught in the patents goes beyond organizing the text-based data in a multidimensional space. The software allows an end user to navigate and search the text-based data. For example, the computer program might display the text of the current version of Rule 1. The program might also display buttons, labeled "next rule" and "previous version." Clicking "next rule" would change the display to the text of Rule 2, and clicking "previous version" would change the display to the text of an older version of the rule. Adding two more buttons that allow movement to the "previous rule" and the "next version" would allow a user to move in all four directions in the two dimensional example above and to navigate pathways to any cell. Note that these buttons would only allow movement parallel to the axes; that is, the user cannot change both version and rule number at the same time. Adding a button that allows the user to move to the next rule number and the next version with a single click would allow movement in a direction that is not parallel to either axis. The buttons in this simple example could be enabled by links (the '228 Patent) or linking means (the '592 Patent). The parties contest how the claims allow these links to be accomplished. They agree that the links are enabled using "a markup language," which is a type of programming language that allows code to be embedded in text-based data so that it is invisible to the end user but adds functionality to the text-based data. In the case of links, the added functionality would be connecting two portions, allowing navigation between the connected portions.

## II. DISCUSSION

### A. Thomson-West's Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the

record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). In its response to Thomson-West's motion, TimeBase does not assert infringement under the doctrine of equivalents. The Court proceeds accordingly. *See id.*

1. *The '592 Patent's limitation that each predefined portion be encoded with a linking means*

All of the '592 Patent's independent claims recite a limitation requiring that each predefined portion of text-based data be encoded with a linking means. Claim 1 is representative:

> 1. A computer-implemented system for publishing an electronic publication using text-based data, comprising:
>
> a plurality of predefined portions of text-based data with each predefined portion being stored;
>
> at least one predefined portion being modified and stored;
>
> a plurality of linking means of a markup language, *each predefined portion of said text-based data and said at least one modified predefined portion of text-based data being encoded with at least one linking means*; and
>
> a plurality of attributes, each attribute being a point on an axis of a multidimensional space for organising said plurality of predefined portions and said at least one modified predefined portion of said text-based data.

'592 Patent col.155 ll.2-14 (emphasis added). Thomson-West asserts that all predefined portions of text-based data must be encoded with at least one linking means and that the record does not contain evidence that would allow a reasonable fact-finder to so find. TimeBase responds in two

4

ways. First, TimeBase contends that the claim language requires that each of a plurality of predefined portions be encoded with a linking means instead of every predefined portion being encoded with a linking means. Second, even if the claim language requires that every predefined portion be encoded with a linking means, TimeBase argues that the record contains evidence that would allow a reasonable fact-finder to so find.

In the January 21 Order, the Court construed "each" to mean "every one considered separately." Thus, the phrase "each predefined portion of said text-based data" means every predefined portion of said text-based data considered separately. TimeBase argues that the Court should read the claim language to mean every plurality of predefined portions considered separately. TimeBase bases its argument on the use of the word "said." It argues: "The independent claims of the '592 patent all refer to 'a plurality of predefined portions of text-based data.' The subsequent references in all of the claims use 'said,' which means that the reference refers to its antecedent, that is, 'a plurality of predefined portions of text-based data.'" In the language on which TimeBase relies, "each predefined portion of said text-based data," "said text-based data" refers to the text-based data that is used to publish an electronic publication. Claim 1, for example, recites: "A computer-implemented system for publishing an electronic publication using text-based data . . . ." "Said text-based data" does not refer to the previously described plurality of portions. When the drafters of the '592 Patent wanted to refer to the plurality of predefined portions, the drafters knew how to do so. For instance, claim 1 recites: "a multidimensional space for organising said plurality of predefined portions." Accordingly, the '592 Patent's reference to "each predefined portion of said text-based data" requires TimeBase to prove that every predefined portion in Thomson-West's database is encoded with a linking means.

5

The record does not allow a reasonable fact-finder to make such a finding. TimeBase argues that there is "ample evidence" supporting a finding that every predefined portion in Thomson-West's database is encoded with a linking means. To support this argument, TimeBase cites several examples of what it claims are linking means. For instance, TimeBase asserts that Thomson-West's "cite query" is a linking means. TimeBase also points to a series of slides produced by Thomson-West that describe the "links" used in Thomson-West's database. According to TimeBase, the slides describe how predefined portions are linked together with a structure that consists of a "target" and a "reference." TimeBase points to other slides indicating that Thomson-West used programs named ELVIS, STATMARK, and Bermuda to apply markups to create links. TimeBase argues that the markups contain seven fields of information, including a "normalized citation" that "is used to retrieve a document once 'a user selects a link.'" According to TimeBase, its expert, Ophir Frieder, "shows the existence of linking means" in his expert report. Frieder relies on Thomson-West's Rule 30(b)(6) witness, Darla Agard, in drawing this conclusion. In the testimony cited by TimeBase, Agard describes the seven fields used by Thomson-West to create a link. She testified that some of those fields are mandatory and others are not. TimeBase argues that two of those fields, a "target normalized citation" and a "target publication ID," make Thomson-West's seven-field link a linking means.

Even if everything TimeBase asserts about this evidence is correct, and a reasonable fact-finder could conclude that the cited structures are linking means, TimeBase has presented no evidence that every predefined portion is encoded with a linking means. TimeBase only points to evidence that Thomson-West uses linking means in its database. To survive summary judgment on this issue TimeBase must point to some evidence that every predefined portion is encoded with a linking means. It is not enough to simply cite evidence that some of the

6

predefined portions are encoded with a linking means or that every predefined portion examined by TimeBase was encoded with a linking means.

TimeBase must provide evidence that every predefined portion is encoded with a linking means. This evidence need not be of any particular form. It could be testimony that TimeBase's expert examined every predefined portion and always found a linking means. It could be testimony that its expert examined how Thomson-West's database works and determined that the nature of the database necessitates encoding each predefined portion with a linking means. Perhaps it could be testimony that its expert sampled a particular percentage of the predefined portions at random and determined that all of the randomly sampled predefined portions were encoded with a linking means. TimeBase does not direct the Court to any such evidence. Instead, TimeBase only cites evidence that some of the predefined portions in Thomson-West's database are encoded with linking means. This is not enough to allow a reasonable fact-finder to conclude that each predefined portion in the allegedly infringing database is encoded with a linking means.

The Court notes that Thomson-West pointed to evidence of predefined portions without linking means. Frieder testified, "[A]ll the linking means that I have seen I believe are--appear in--in blue underlined text." During Frieder's deposition, Thomson-West showed Frieder a screen shot of a section of a statute from Thomson-West's database. Thomson-West asked Frieder to circle the portion that corresponded to the predefined portion of text-based data. Using Frieder's indication as a guide to defining the predefined portions in its database, Thomson-West has produced numerous screen shots of its database where no blue underlined text is included within the predefined portion. According to Thomson-West, this indicates that no linking means is encoded in the particular predefined portion. Although one may speculate

7

that the blue underlined text displayed outside of a predefined portion could evince a predefined portion encoded with a linking means, there is nothing beyond speculation to support such a conclusion. Frieder does suggest that blue underlined text that reads "prior" and is displayed outside of the predefined portion is a linking means, but TimeBase points to nothing explaining how the predefined portion is encoded with the alleged linking means, let alone how every predefined portion considered separately is encoded with a linking means.

Viewing the record in the light most favorable to TimeBase, the Court concludes that no reasonable fact-finder could find infringement of the '592 Patent. The Court therefore grants Thomson-West's motion with respect to TimeBase's claim of infringement of the '592 Patent.

2. *The '228 Patent's displaying step*

The '228 Patent's independent claims recite a "displaying" step. In the January 21 Order, the Court construed "displaying" as "showing on an electronic video device capable of changing in real time in response to inputs, such as a CRT monitor, an LCD monitor, or a projector and screen." Arguing that end users perform the "displaying" step, Thomson-West moves for summary judgment on TimeBase's claim of infringement of the '228 Patent.

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product. For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007) (citations omitted). Nevertheless, "a defendant cannot . . . avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf." *Id.* at 1379. "Accordingly, where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d

8

1318, 1329 (Fed. Cir. 2008) (citing *BMC Res.*, 498 F.3d at 1380-81). *Muniauction* elaborated on the "control or direction" standard of *BMC Resources*: "Under *BMC Resources*, the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Id.* at 1330. In *Muniauction*, the court of appeals held that the defendant did not infringe because it "neither performed every step of the claimed methods nor had another party perform steps on its behalf, and [the plaintiff] has identified no legal theory under which [the defendant] might be vicariously liable for the actions of the bidders." *Id.*

Although the parties note that the Federal Circuit recently vacated two divided-infringement cases and will rehear the cases en banc, *see McKesson Techs. Inc. v. Epic Sys. Corp.*, No. 2010-1291, 2011 WL 1365548 (Fed. Cir. Apr. 12, 2011), *vacated and reh'g en banc granted*, 2011 WL 2173401 (Fed. Cir. May 26, 2011) (per curiam); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1320 (Fed. Cir. 2010), *vacated and reh'g en banc granted*, 419 F. App'x 989 (Fed. Cir. 2011) (per curiam), the parties acknowledge that *BMC Resources* and *Muniauction* provide the standard governing the issue of divided infringement. Accordingly, the Court applies *BMC Resources* and *Muniauction* here.

TimeBase asserts that Thomson-West performs the displaying step under two circumstances: (1) when Thomson-West employees demonstrate the allegedly infringing database to potential customers; and (2) when they use the database to familiarize themselves with it. To support the first proposition, TimeBase cites Agard's deposition testimony. To support the second, TimeBase cites the deposition of Mark Capaldini. Neither proposition is supported by the cited testimony. Agard testified that she did "versioning demos" and

"presentations" at AALL. TimeBase does not point to any evidence that explains what constitutes a "demo" or "presentation" at AALL. Without more, a reasonable fact-finder could not conclude that versioning demos and presentations included the displaying steps recited in the '228 Patent. The testimony of Capaldini to which TimeBase directs the Court contains no reference to Thomson-West's employees using a database. Instead, it addresses raising rates on existing customers. Accordingly, TimeBase has failed to point to evidence that would allow a reasonable fact-finder to conclude that Thomson-West performs the displaying step recited in the '228 Patent.

TimeBase also argues that the third-party end users display the Thomson-West database under Thomson-West's control or direction. TimeBase cites evidence supporting the conclusion that Thomson-West provides end users with computer code that determines nearly every aspect of how the database is displayed on their computers. For example, the code determines font size, font color, indentation format, and what selectable links will be displayed. TimeBase argues that "the selection of content and configuration of the display is controlled by [Thomson-West], not the user." Even if a reasonable fact-finder could find that code provided by Thomson-West "controls" how the database is displayed, this is not evidence of the control or direction required by *BMC Resources* and *Muniauction*. TimeBase points to no legal theory under which "the law would traditionally hold [Thomson-West] vicariously liable for the [displaying] acts committed by [an end user]." *Muniauction*, 532 F.3d at 1330. Here, like in *Muniauction*, Thomson-West controls access to its database and instructs on the database's use via, for example, computer code. That Thomson-West does so "is not sufficient to incur liability for direct infringement." *Id.*

The Court is not persuaded by TimeBase's citation of *Hill v. Amazon.com, Inc.*, No. Civ.A.2:02-CV-186, 2006 WL 151911 (E.D. Tex. Jan. 19, 2006), to support its argument that Thomson-West controls or directs the displaying performed by end users of the Thomson-West database. *Hill*, a district court opinion, was decided before both *BMC Resources* and *Muniauction*. The Court finds *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331 (S.D. Fla. 2008), *aff'd*, 318 F. App'x 908 (Fed. Cir. 2009) (per curiam), a case that issued after *BMC Resources* and *Muniauction*, more persuasive. In *Global Patent Holdings*, the patent required two individuals or entities to complete all of the method's steps, a remote computer user and the website server. *Id.* at 1335. The defendant in *Global Patent Holdings* was the operator of the website, and the plaintiff argued that the remote computer user, a third party, was under the direction or control of the defendant because the actions on the remote computer were "controlled" by computer code provided to the remote computer user by the defendant. The district court rejected this argument:

> Nevertheless, the Court does not believe this "control" is sufficient "direction or control" over the remote computer user. Plaintiff has, in no way, alleged that remote users are contractually bound to visit the website, it has not alleged that the remote users are Defendant's agents who visit the website within the scope of their agency relationship nor has it alleged any facts which would render Defendant otherwise vicariously liable for the acts of the remote user. Using Plaintiff's analogy, Defendant may give home users the keys to the truck, but home users have no obligation to use those keys to start the truck and drive away.

*Id.* The situation here is the same. TimeBase points to no evidence suggesting that end users are contractually bound to display the allegedly infringing database. It points to no evidence of an agency relationship. It points to no evidence that Thomson-West would be otherwise vicariously liable for the actions of an end user. It points to no evidence suggesting that end users act on Thomson-West's behalf when they use Thomson-West's database. In short, TimeBase points to

11

no facts supporting a legal theory under which Thomson-West would be vicariously liable for an end user's actions when he or she displays something from Thomson-West's database.

Viewing the record in the light most favorable to TimeBase, a reasonable fact-finder could not conclude that Thomson-West performs the displaying steps recited in the '228 Patent. Nor could a reasonable fact-finder conclude that end users act under Thomson-West's direction or control when they display material from Thomson-West's database. Accordingly, the Court grants Thomson-West's motion with respect to TimeBase's claim of infringement of the '228 Patent.

**B.     Thomson-West's Motion to Exclude Testimony of Dr. Ophir Frieder**

Having concluded that summary judgment in Thomson-West's favor is appropriate even if Frieder's testimony is not excluded, the Court denies as moot Thomson-West's motion to exclude Frieder's testimony.

**C.     TimeBase's Motion for Summary Judgment of No Invalidity**

TimeBase moved for partial summary judgment on Thomson-West's invalidity defense. Thomson-West did not oppose the motion. Having granted summary judgment in Thomson-West's favor on the ground of noninfringement, the Court denies as moot TimeBase's motion for partial summary judgment on the invalidity defense. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1481 (Fed. Cir. 1998).

### III.  CONCLUSION

In short, the Court grants Thomson-West's Motion for Summary Judgment. The Court also denies as moot Thomson-West's Motion to Exclude Expert Testimony of Dr. Ophir Frieder and TimeBase's Motion for Summary Judgment of No Invalidity. The Court will issue a separate order that is consistent with this Memorandum.

Dated: October 7, 2011

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
